Budge & Heipt, PLLC
808 E. Roy St.
Seattle, WA 98102
(206) 624-3060

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE ESTATE OF CINDY LOU HILL, by and through its personal representative, Joseph A. Grube; and CYNTHIA METSKER, individually,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>NAPHCARE, INC, an Alabama corporation; HANNA GUBITZ, individually; and SPOKANE COUNTY, a political subdivision of the State of Washington,<br><br>                    Defendants. | No.<br><br><br>COMPLAINT<br><br>(JURY DEMAND) |

Plaintiffs, by and through the undersigned counsel, allege as follows:

## I. INTRODUCTION

1.     All pretrial detainees, no matter their station in life, are entitled to constitutionally adequate medical care when confined behind bars, as well as medical care that complies with the accepted standards of care. This is an action

COMPLAINT – Page 1

under 42 U.S.C. § 1983 and Washington law arising from the events and circumstances leading up to, surrounding, and causing the death of 55-year-old Cindy Lou Hill in the Spokane County Jail.

2.      Cindy Hill entered the jail on August 21, 2018. For the next four days, she was confined at the jail as a pretrial detainee. During her confinement, Ms. Hill grew exceptionally sick. Although a jail nurse learned that Ms. Hill was too ill to move, unable to stand, suffering from unbearable abdominal pain, curled up on the floor in a fetal position, screaming in agony, too unwell to be evaluated, and in such dire straits that another inmate literally had to drag her across the jail floor in a blanket, the jail nurse failed to call a medical doctor or higher level provider, failed to arrange for hospital transport, and failed to take other action to assist her. Instead, pursuant to the usual customs, practices, and policies of the jail's contract medical provider, Naphcare, Inc., and those of the Spokane County Jail, the nurse directed that Ms. Hill moved to a different section of the jail to be placed under the periodic "watch" of jail guards who had no training or expertise in monitoring, evaluating, or caring for seriously ill inmates. Ms. Hill remained in that cell for hours on end, with no medical care or evaluation of any kind or nature. And on the evening of August 25, 2018, Ms. Hill died from the consequences of an acute bacterial infection in her intestinal tract.

COMPLAINT – Page 2

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

3.      Ms. Hill's condition was treatable. Her death was preventable. And through their neglect, Defendants forced her to endure substantial pain and suffering, caused her death, and deprived her daughter, Cynthia Metsker, of the society, companionship, love, and other consortium of her mother. This action seeks damages for Defendants' violations of Ms. Hill's and Ms. Metsker's Fourteenth Amendment rights and for their violations of the accepted standards of care leading up to, surrounding, and causing Ms. Hill's death.

## II.  PARTIES

### A.    Plaintiffs

4.      Plaintiff, the Estate of Cindy Lou Hill, was formed in the King County Superior Court under Cause No. 20-4-05033-1SEA for the purpose of bringing this action and seeking redress for the violations of Ms. Hill's constitutional and state law rights, including those alleged herein. Plaintiff Joseph A. Grube is the court-appointed personal representative for the Estate. As personal representative, Mr. Grube is authorized to bring the current action and to assert all of the claims alleged herein on behalf of the Estate of Cindy Lou Hill and for the Estate's beneficiary, Cynthia Metsker, under Washington's wrongful death and survival statutes.

5.      Plaintiff Cynthia Metsker is Cindy Hill's sole surviving child and a resident of Washington State. She asserts an individual claim in this lawsuit for the

COMPLAINT – Page 3

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

loss of the society and companionship of her mother in violation of her rights under the Fourteenth Amendment to the United States Constitution.

**B.    Corporate Defendant**

6.    Defendant Naphcare, Inc. ("Naphcare") is a private, for-profit correctional healthcare corporation, incorporated in Alabama and having a principal street address at 2090 Columbiana Rd., Suite 4000, Birmingham, Alabama 35216. Its registered agent for service of process is Ken Schneider, 2015 33rd St., Everett, WA 98201. At all material times, Naphcare was doing regular and systematic business in Washington State.

7.    Naphcare entered into a contract with Spokane County, through the Spokane County Detention Services Department, spanning the period of Cindy Hill's confinement, and at all material times was acting in its capacity as a contractor with Spokane County to provide healthcare services to inmates and detainees at the Spokane County Jail, including Ms. Hill. By virtue of its county contract and through its actual activities, Naphcare assumed the public function of providing jail healthcare services to county inmates and detainees, acted under color of state law, and was legally responsible to comply with all requirements of the United States Constitution with regard to providing adequate medical care to inmates and detainees. Naphcare is a "person" for purposes of 42 U.S.C. § 1983. Naphcare was responsible for hiring, training, and supervising nurses and other

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

healthcare professionals at the Spokane County Jail. It also was responsible for adopting, implementing, and enforcing customs, policies, and practices pertaining to medical care for Spokane County Jail inmates and detainees. Naphcare had a duty to ensure that the medical care provided to those inmates and detainees, including Ms. Hill, met the requirements of the United States Constitution and other legal standards.

8.      Naphcare was, at all material times, a "health care provider" under RCW 7.70.020(3) in that it was an entity employing persons licensed by the state of Washington to provide health care services, including nurses and others as set out in RCW 7.70.020(1).

**B.    Individual Defendant**

9.      Defendant Hanna Gubitz was, at all material times, a registered nurse and an employee of Naphcare who was acting in the course and scope of her Naphcare employment. At all material times, Defendant Gubitz was acting under color of state law in providing healthcare to Spokane County inmates and detainees. She had the duty to ensure that healthcare provided to inmates and detainees at the jail, including Ms. Hill, met the requirements of the United States Constitution and other legal standards. Defendant Gubitz is sued in her individual capacity.

COMPLAINT – Page 5

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE:  (206) 624-3060

10.    Defendant Gubitz was, at all material times, a "health care provider" under RCW 7.70.020(1) in that she was a registered nurse and licensed as such by the State of Washington.

## C.    **County Defendant**

11.    Defendant Spokane County is a governmental entity and political subdivision of the State of Washington. Through its Detention Services Department, Spokane County operates the Spokane County Jail. The Spokane County Jail is a correctional facility that houses and confines both pre-trial detainees and convicted prisoners. All pre-trial detainees confined at the Spokane County Jail are entitled to constitutional protections under the Fourteenth Amendment to the United States Constitution, including, constitutionally adequate medical care and humane conditions of confinement. Although Spokane County sought to privatize the provision of healthcare services to Naphcare, it cannot contract-away its constitutional obligations and is legally liable for the constitutional violations committed by Naphcare as alleged herein and/or for its own unconstitutional customs, policies and practices.

## III.  JURISDICTION AND VENUE

12.    This Court has original subject matter jurisdiction over Plaintiffs' civil rights claims under 28 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331 (federal

COMPLAINT – Page 6

question) and 28 U.S.C. § 1343 (civil rights). This Court also has supplemental jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1367(a).

13.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because all of the events that support the Plaintiffs' allegations occurred in this judicial district.

14.    This Court has personal jurisdiction over the named Defendants because all actions and omissions alleged in this complaint were committed by the Defendants in the State of Washington and in this judicial district. Moreover, each Defendant either resided in Washington, resides in Washington now, or did systematic and continuous business in Washington.

## IV.  SATISFACTION OF RCW 4.92 TORT CLAIMS NOTICE

15.    In compliance with RCW 4.96.020, the Estate submitted a tort claim form to the Spokane County Department of Risk Management. More than 60 days have passed since the submission of that claim, and all statutory prerequisites for filing state law claims in this lawsuit against Spokane County have been met.

## V.  FACTUAL ALLEGATIONS

16.    On August 21, 2018, Cindy Hill was arrested by a City of Spokane Police officer and charged with possession of a controlled substance. Following her arrest, she was transported to the Spokane County Jail. She was booked into

COMPLAINT – Page 7

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE:  (206) 624-3060

the jail shortly thereafter on that same day. For the balance of her life, she remained confined in the jail as a pretrial detainee.

17.    Ms. Hill was assigned to a general population cell in the jail. On August 22nd, the day after her arrest and booking into the jail, Ms. Hill was seen by a jail nurse in a holding cell. She told the nurse that she used heroin. As a result of her heroin use and withdrawal symptoms she was experiencing or might begin to experience, Ms. Hill was placed on a monitoring protocol called the Clinical Opiate Withdrawal Scale (COWS). The purpose of the COWS scale was to assess the stage and/or severity of opiate withdrawal by monitoring Ms. Hill on a regular basis. In addition, the jail medical staff ordered the following medications for Ms. Hill: Albuterol Sulfate (to be given four times per day), Aluminum-Magnesium Simethicone (to be given twice per day), Ondansetron (to be given twice per day), Ibuprofen (to be given twice per day), Loperamide (to be given twice per day) and Dicyclomine (to be given twice per day). In addition, an electrolyte solution was ordered (to be given three times per day).

18.    On August 23 and 24, Naphcare nurses periodically came to Ms. Hill's cell to evaluate her for signs and symptoms of opiate withdrawal. Sometimes, the Naphcare nurses performed the COWS assessment. At other times they did not. When the nurses did perform the COWS assessments, Ms. Hill's withdrawal symptoms were generally mild or moderate. Despite the medication

COMPLAINT – Page 8

orders indicated above, Naphcare nurses failed to administer many of the ordered doses. They never gave Ms. Hill Albuterol Sulfate. They never gave her Aluminum Magnesium Simethicone. They only gave her Ondasetron once per day instead of twice. They only gave her Ibuprofen once per day instead of twice. They gave her no Loperamide on August 23 or 24. They only gave her Dicyclomine once. And they only gave her the electrolyte solution twice.

19.    By the morning of August 25, Ms. Hill had been in the jail for nearly four full days. By this time, any signs or symptoms associated with heroin withdrawal would have been decreasing, and any reasonable nurse would have known that Ms. Hill had passed the peak period of heroin withdrawal.

20.    Sometime before 9:30 a.m. on the morning of August 25th, Defendant Gubitz went to Ms. Hill's cell. Upon arriving at Ms. Hill's cell, it was immediately evident to Defendant Gubitz that Ms. Hill was suffering from a serious and potentially life-threatening medical condition. When Defendant Gubitz arrived at the cell, Ms. Hill was naked above the waist. She was lying on the floor of her cell. She complained that she was too sick to move. As a result, Ms. Hill's cellmate was forced to roll her onto a blanket and drag the blanket across the floor closer to Defendant Gubitz. Ms. Hill lay on the floor screaming in pain. Her cellmate told Defendant Gubitz that Ms. Hill had been suffering from severe abdominal pain and might have a problem with her appendix. Ms. Hill was curled up into a fetal

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

position on the floor. Due to the extent of her pain, Defendant Gubitz could not conduct an adequate assessment of her abdomen. When Defendant Gubitz attempted to touch her abdomen, Ms. Hill screamed louder in pain and stated that the pain was most acute on her right lower abdomen. Ms. Hill repeatedly screamed that she was sick. Ms. Hill was in such pain that no adequate medical assessment could be done by Defendant Gubitz.

21.    Any reasonable registered nurse would have appreciated from the foregoing information that Ms. Hill was suffering from a serious and potentially life-threatening medical emergency and that Ms. Hill was at a high degree of risk of death or serious complications without prompt medical care, evaluation, and treatment by an appropriate provider. Particularly given that further diagnosis was neither feasible nor within the scope of her licensure as a registered nurse, Defendant Gubitz should have taken steps to secure immediate medical care for Ms. Hill from a higher level provider. The available options to her included ordering Ms. Hill transported to the emergency department of the nearby hospital, calling a physician or other higher level provider with the skill, experience and knowledge to see and evaluate Ms. Hill, or, at a minimum, seeking the immediate advice of medical doctor or other higher level provider. Indeed, Defendant Gubitz's role as a medical gatekeeper required that she take prompt and

COMPLAINT – Page 10

appropriate action to ensure that Ms. Hill received the evaluation and care that she desperately needed.

22.    Defendant Gubitz took none of the foregoing steps and took no other action reasonably necessary to abate the risk to Ms. Hill.

23.    Instead, Defendant Gubitz, without seeking the advice or consultation of a higher-level medical provider, decided to transfer Ms. Hill to a different section of the jail. Ms. Hill was placed in a wheelchair and moved to cell 27—in a section of the jail known as 2-West, which called the "medical housing unit."

24.    Despite its name, the "medical housing unit" is not adequate to address the needs of inmate-patients suffering from acute or potentially life-threatening medical conditions. The medical housing unit is not remotely equivalent to a hospital or an infirmary, and it is insufficient to meet the needs of inmates suffering from the kinds of symptoms from which Ms. Hill was suffering. In essence, the medical housing unit is a section of the jail designed for the convenience of the jail's medical personnel when they have decided to monitor the needs of inmates who have routine illnesses.

25.    The Spokane County Jail was insufficiently equipped to handle, anywhere in its facility, the needs of inmate-patients suffering from urgent, emergent, acute or potentially life-threatening medical conditions.

COMPLAINT – Page 11

26.    At 9:30 a.m. on August 25th, Defendant Gubitz placed Ms. Hill on a 30-minute "Medical Watch" in the so-called "medical housing unit." The term "medical watch," as used by Naphcare and Spokane County at the Spokane County Jail, is a misnomer. In practice "medical watch" at the Spokane County Jail did not actually involve "medically watching" the inmates placed in the medical housing unit. Rather, the usual practice, custom, and policy of Naphcare and Spokane County was that inmates placed on "medical watch" would receive no regular watch at all by medical professionals. Rather than being periodically watched or evaluated by a nurse or other medical professional, inmates placed on "medical watch" were instead only supposed to be looked at periodically by the jail's guards. These guards were not medically licensed or trained and lacked the qualifications, schooling, skill or experience to evaluate inmates' medical conditions. The jail's "medical watch" guards could not take vital signs, evaluate symptoms, make medical diagnoses or evaluations, ask medically-oriented questions or otherwise engage in any kind of actual medical evaluation. Especially given her serious and acute symptoms, placing Ms. Hill on a 30-minute "medical watch" was grossly inadequate and put her at substantial risk of serious harm.

27.    Consistent with the usual customs, practices, policies, and procedures of Naphcare and the Spokane County Jail, Ms. Hill remained in cell 27 for at least

COMPLAINT – Page 12

the next 6 and ½ hours with no medical visit, assessment, or evaluation by a medical professional.

28.    Late in the afternoon on August 25th, Defendant Gubitz finally went to Ms. Hill's cell. Despite seeing her lying in the cell, Defendant Gubitz did not medically assess or evaluate Ms. Hill. She did not take a single vital sign. She did not ask her a single question of Ms. Hill or, if she did, she did not receive any verbal response. She did not palpitate her abdomen, feel her skin, assess her pain level, evaluate her level of consciousness, check her pupil size, determine whether she was able to ambulate, or describe her physical appearance. Indeed, she did not even enter Ms. Hill's cell or have Ms. Hill brought out of her cell. Although she claimed in a chart note that Ms. Hill "refused assessment," this term was commonly used by Naphcare *not* to indicate a conscious and informed refusal but, rather, to indicate when an inmate does not get up and come to the door for evaluation—often because they are too sick to do so. Following her non-assessment, and despite knowing what she knew of Ms. Hill's condition from that morning, Defendant Gubitz left Ms. Hill without taking any further action relative to her care.

29.    At 5:24 p.m. on August 25th, having received no further medical assessment, evaluation or care of any kind, an officer came to Ms. Hill's cell. Noticing that she had not touched a meal that had been delivered to her cell earlier,

COMPLAINT – Page 13

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

he knocked on the cell door and received no response. Shortly thereafter, officers and another nurse entered the cell, found Ms. Hill to be unresponsive on the floor and noticed a pool of blood and vomit. Outside aid was immediately summoned, and responding medics attempted resuscitation efforts. However, these attempts were unsuccessful. Ms. Hill was dead.

30.    Ms. Hill died from a bacterial infection of her gastrointestinal tract. Her death was the foreseeable result of the negligence and deliberate indifference alleged in this complaint.

31.    Defendant Gubitz acted with deliberate indifference to Ms. Hill's serious medical needs. She made intentional decisions regarding Ms. Hill's care that subjected her to a substantial risk of suffering serious harm and death. She failed to take available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved (making the consequences of her conduct obvious), thereby causing Ms. Hill's suffering and death and depriving Ms. Metsker of the society and companionship of her mother.

32.    Defendant Gubitz acted with at least reckless disregard for Ms. Hill's constitutional rights.

33.    Defendant Gubitz caused the continued suffering and death of Ms. Hill by failing to follow the accepted standards of care.

COMPLAINT – Page 14

34.    Defendant Naphcare caused the continued suffering and death of Ms. Hill by failing to follow the accepted standards of care.

35.    Defendant Naphcare maintained constitutionally deficient policies, practices, or customs that subjected jail inmates and detainees like Ms. Hill to a substantial risk of serious harm and that were a moving force in causing the harms alleged in this lawsuit. These included, but were not limited to: (1) a practice, policy, or custom of having its nurses place acutely ill inmates on "medical watch," when, in fact, such inmates were only looked at periodically by jail's guards who lacked the qualifications, training, skill, licensure, schooling or experience to evaluate inmates' medical conditions; (2) deficient customs, practices, policies, and procedures for recognizing and responding appropriately to jail inmates' and detainees' urgent medical needs, including situations in which a confined person's illness was so severe that he or she needed to be transported to a hospital for higher level care instead of remaining in the jail were higher level care was not feasible; (3) a policy, practice, or custom of allowing jail inmates with serious health needs to go untreated or to receive treatment that was so inadequate as to be constitutionally infirm; and (4) a policy, practice or custom of failing to ensure that nurses adequately fulfilled their gatekeeper roles by communicating inmates' and detainees' acute medical needs to higher level providers and otherwise taking

COMPLAINT – Page 15

BUDGE＆HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

action to ensure that such individuals were adequately evaluated and treated by medical professionals with the skill, training, experience, and licensure to do so.

36.    Defendant Naphcare failed to adequately train and/or supervise its personnel in providing constitutionally adequate care to jail inmates and detainees. This includes inadequate training and supervision regarding (1) recognizing and responding appropriately to jail inmates' and detainees' serious medical needs, including situations in which a confined person's illness was so severe that he or she needed to be transported to a hospital for higher level care instead of remaining in the jail where higher level care was not feasible and where inmates and detainees were therefore unfit to remain confined, (2) communicating with other healthcare providers regarding serious inmate-patient needs, (3) communicating with jail staff regarding serious inmate-patient needs and ensuring that inmates with serious illnesses were evaluated and treated in a manner that would not cause their condition to deteriorate, and (4) ensuring compliance with the duty to provide inmates and detainees with constitutionally adequate healthcare.

37.    The constitutional deficiencies outlined above have led to an alarming number of deaths and poor outcomes in the Spokane County Jail since May 2016—when Naphcare was awarded the contract to provide jail healthcare services. According to public investigative reporting, Cindy Hill was the *seventh* inmate to die in the year 2018 alone. In the wake of her death, the Spokane County

BUDGE✦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

Human Rights Task Force chairman expressed concerns about what he characterized as "an alarming trend of inmate deaths" at the Spokane County Jail. He described the spate of deaths as a pattern that "should profoundly concern all of us."

38.    Many of the deaths were preventable and resulted directly from unconscionable delays in emergency medical care. For example, on June 13, 2018, just over two months before Ms. Hill's death, a 31-year-old inmate named Shane Carson died after showing multiple signs of illness and medical distress, including difficulty breathing, shaking, and profuse sweating. According to witnesses, Mr. Carson was screaming for help in the hours before his death. Other inmates alerted jail guards and medical staff, but their pleas for assistance went unheeded. Had Mr. Carson been taken to the hospital, his life could have been saved.

39.    Naphcare had a pattern of failing to secure medical care for inmates with obviously serious medical conditions. In October 2016, for instance, a 25-year old pretrial detainee named Bryan Monnin spent 40 days in the Spokane County Jail, in excruciating pain from a badly broken arm. NaphCare staff knew about the injury, which had been confirmed by hospital X-rays. They also knew that ER doctors had prescribed the young man pain medication and referred him to an orthopedic surgeon. Yet, despite his repeated pleas for help, NaphCare did not give him his prescription medication and never took him for his surgery.

COMPLAINT – Page 17

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

40.     Naphcare's failure to secure medical care for inmates with serious medical needs was driven, in part, by constitutionally impermissible financial considerations. In the Spokane County Jail, Naphcare is contractually obligated to pay for inmates' medications and off-site services, such as hospital visits and ambulance runs, up to $15,000 per inmate. The contract gives Naphcare broad discretion to determine what is "medically necessary" for inmates. According to former jail nurses, the company had a custom of putting profits over the medical wellbeing of inmates—a practice that commonly caused inmates to languish and suffer.

41.     Indeed, inmates often had to wait weeks after requesting medical care for obvious medical problems. As the vice president of the Spokane county nurse's union put it, "You'd get a kite for a toothache; by the time you go to triage it, it's a full-blown abscess."

42.     Under NaphCare's practices, any visits to an outside physician requires approval from corporate headquarters in Birmingham, Alabama. Likewise, the company requires that prescription orders and other treatment recommendations must be approved by the Birmingham office. According to former jail nurses, the company routinely made decisions that put the medical wellbeing of inmates at substantial risk of serious harm. This includes rejecting requests to transport inmates for outside medical care and rejecting requests for

COMPLAINT – Page 18

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

medication. The corporate office also had a practice of replacing inmate medication with less expensive alternatives—even when the cheaper drug was not in the patient's best interest.

43.     Staffing shortages have also been a persistent problem in the Spokane County Jail. In fact, staffing shortages led to several of the constitutionally deficient practices outlined above. This is one of the reasons why the jail fails to take inmates to the hospital, even when they are suffering from life-threatening medical needs. When an inmate is taken to the hospital, it requires a guard to be posted by the inmate's room. If the jail has staffing shortages, it cannot afford to lose the manpower it would lose if an inmate is hospitalized. Well documented nursing shortages have similarly caused predictable harm to many inmates in the years and months leading up to Ms. Hill's confinement and played a substantial role in her suffering and death.

44.     All acts and omissions of Naphcare were done under color of state law and committed with at least reckless disregard for Ms. Hill's rights under the Fourteenth Amendment. Naphcare's acts and omissions caused Ms. Hill to suffer significant pre-death pain and suffering during her confinement, caused her death, and deprived the individual Plaintiff, Cynthia Metsker, of the loss of her mother's society and companionship.

COMPLAINT – Page 19

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

45.     Under the non-delegable duty doctrine, the unconstitutional acts and omissions of Naphcare are imputed to and become those of Spokane County.

46.     In addition, Spokane County is liable in negligence for unreasonably countenancing, approving and participating in the practice of allowing the jail's guards, who were not medically licensed or trained and lacked the qualifications, training, skill or experience to evaluate inmates' medical conditions or otherwise engage in any kind of actual medical evaluation, to monitor inmates with serious medical needs.

## V.  CLAIMS FOR RELIEF

### 42 U.S.C. § 1983: Violations of Fourteenth Amendment

39.     As a result of the conduct alleged in this complaint, Defendant Gubitz is liable under 42 U.S.C. § 1983 for violating Ms. Hill's rights under the Fourteenth Amendment to the United States Constitution by denying her constitutionally-required medical care and treatment and subjecting her to inhumane conditions of confinement. As a direct and proximate result of Defendant Gubitz's unconstitutional acts and omissions, Ms. Hill suffered extreme physical pain, severe mental and emotional anguish, and the loss of her life. These claims, actionable through Ms. Hill's estate, are asserted on her behalf by and through the Estate's personal representative. In addition, as a direct and proximate result of these Defendants' unconstitutional acts and omissions, Plaintiff Cynthia

COMPLAINT – Page 20

Metsker suffered the loss of her mother's society and companionship, in violation of her own Fourteenth Amendment rights.

40.    As a result of the conduct alleged in this complaint, Defendants Naphcare and Spokane County are liable under 42 U.S.C. § 1983 for violating Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution by maintaining unconstitutional polices, practices, and customs that resulted in the denial of Ms. Hill's constitutional right to adequate medical care and treatment and subjected her to inhumane conditions of confinement. As a direct and proximate result of these Defendants' unconstitutional acts and omissions, Ms. Hill suffered extreme physical pain, severe mental and emotional anguish, and of the loss of her life. These claims, actionable through Ms. Hill's estate, are asserted on her behalf by and through the Estate's personal representative. In addition, as a direct and proximate result of these Defendants' unconstitutional acts and omissions, Plaintiff Cynthia Metsker suffered the loss of her mother's society and companionship, in violation of her own Fourteenth Amendment rights.

## State Law Claims: RCW 7.70 et seq. and Negligence

41.    As a result of the conduct alleged in this complaint, Defendants Gubitz and Naphcare are liable under RCW 7.70 et seq. for proximately causing suffering and death to Ms. Hill by failing to follow the accepted standards of care. As a

BUDGE❖HEIPT,PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

direct and proximate result of these Defendants' failures to follow the accepted standards of care, Ms. Hill suffered extreme physical pain, severe mental and emotional anguish, and the loss of her life. These claims, actionable through Ms. Hill's estate, are asserted on her behalf by and through the Estate's personal representative for the benefit of her beneficiary, Cynthia Metsker, under Washington's wrongful death and survival statutes, RCW 4.20.010-20, RCW 4.20.046 and RCW 4.20.060.

42.     As a result of the conduct alleged in this complaint, Defendant Spokane County is liable in negligence for proximately causing suffering and death to Ms. Hill. As a direct and proximate result of Spokane County's negligence, Ms. Hill suffered extreme physical pain, severe mental and emotional anguish, and the loss of her life. These claims, actionable through Ms. Hill's estate, are asserted on her behalf by and through the Estate's personal representative for the benefit of her beneficiary, Cynthia Metsker, under Washington's wrongful death and survival statutes, RCW 4.20.010-20, RCW 4.20.046 and RCW 4.20.060.

## VI.  JURY DEMAND

43.     Plaintiffs demand a trial by jury.

## VII.  REQUEST FOR RELIEF

Plaintiffs ask the Court to order the following relief:

COMPLAINT – Page 22

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

A.      All compensatory damages authorized by law to the Estate of Cindy Hill, including but not limited to all available damages for Ms. Hill's mental, physical, and emotional pain and suffering leading up to her death and the loss of the value and enjoyment of her life;

B.      All compensatory damages authorized by federal law to Ms. Hill's daughter, Cynthia Metsker, for the loss of her mother's society and companionship and all damages authorized to her under state law, as actionable the Personal Representative of the Estate of Cindy Lou Hill, pursuant to Washington's wrongful death and survival statutes;

C.      Punitive damages against Defendants Gubitz and Naphcare;

D.      Attorneys' fees and litigation costs under 42 U.S.C. § 1988; and

E.      Such other relief as the Court deems just and proper.

DATED this 4th day of November, 2020.

**BUDGE & HEIPT, PLLC**

__*/s/ Edwin S. Budge*_____
Edwin S. Budge, WSBA #24182
Erik J. Heipt, WSBA #28113
808 E. Roy St.
Seattle, Washington 98102
ed@budgeandheipt.com
erik@budgeandheipt.com
(206) 624-3060
Attorneys for Plaintiffs

COMPLAINT – Page 23