*The Estate of Cindy Lou Hill, by and through its personal representative, Joseph A. Grube; and Cynthia Metsker, individually vs. Naphcare, Inc., et al.*

Case No. 2:20-cv-00410-RMP

Declaration of Edwin S. Budge

Exhibit A



EXPERT WITNESS REPORT OF LORI E. ROSCOE, DNP, APRN, ANP-C, CCHP-RN
REGARDING Cindy Lou Hill

I have been retained to render opinions regarding the care and treatment of Cynthia Lou Hill during her incarceration at the Spokane County Jail from August 21, 2018 through her death on August 25, 2018. My opinions are based upon my knowledge, education, training and experience, and the health records, videos, and testimony I reviewed regarding this case.

EXPERIENCE AND QUALIFICATIONS:

I am an Advanced Practice Registered Nurse, certified as an Adult Nurse Practitioner. I have a bachelor's degree in Education, a bachelor's degree in Nursing, a master's degree in Public Administration with a healthcare concentration, a master's degree in Nursing, a Doctorate Degree in Healthcare Administration, and a Doctor of Nursing Practice degree. I am a Certified Correctional Health Professional and a Certified Correctional Health Professional – Registered Nurse, certified through the National Commission on Correctional Health Care. I am currently the principal of Correctional HealthCare Consultants LLC and The Correctional Nurse LLC, and I am a clinical nurse practitioner. I began in correctional healthcare in 1995, and have worked in various correctional healthcare roles, including as a correctional facility Health Services Administrator, a Regional Administrator, an Associate Program Director, an Executive Director of Clinical Services, a Registered Nurse, and an Advanced Practice Registered Nurse – Nurse Practitioner. I have an active Registered Nurse license in the states of Washington, Virginia, Florida, California, and Georgia. My Florida license is multi-state,

1

which enables me to practice through the Enhanced Nurse Licensure Compact in 34 states.  In addition, I am licensed as an Autonomous Advanced Practice Registered Nurse (nurse practitioner) in Florida, and an Advanced Practice Registered Nurse (nurse practitioner) in California, Georgia, Virginia, and Kentucky.

I have worked for private contractors, such as Correct Care Solutions and CorrectHealth, LLC, and state subcontractors, such as the Medical College of Georgia. In my administrative roles, I was responsible for policy and procedure development, staff supervision, staff education, Continuous Quality Improvement Programs, and fiscal management. I continue to provide these services to correctional health programs through Correctional HealthCare Consultants LLC.  I am a certified guest instructor for the Georgia Peace Officer Standards and Training Council in Inmate Medical, HIV/ Infection Control, Universal Precautions, and Excited Delirium.  I am a member of the national expert workgroup of the American Nurses Association that reviewed and revised *Correctional Nursing: Scope and Standards of Practice,* most recently published in 2020. I am the Accredited Provider Program Director for the Multi-Disciplinary Education Committee of the National Commission on Correctional Health Care. I am a member of the Editorial Board of the Journal of Correctional Health Care, and also a peer reviewer for that publication.  I am a member of the Board of Directors of the American Correctional Nurses Association, and I am also the Program Committee Chairperson. A complete listing of my education, training, and experience is set forth in my Curriculum Vitae, a copy of which is attached to this report as Exhibit A.

DOCUMENTATION REVIEWED:

    Initial Assessment of Cindy Hill (8/21/18);

    2018 NaphCare progress notes pertaining to Cindy Hill;

    Receiving Screening of Cindy Hill (8/21/18);

2018 COWS assessments of Cindy Hill;

Jail surveillance video of Nurse Gubitz' encounter with Ms. Hill in the morning of 8/25/18;

Jail surveillance video of Ms. Hill's arrival in Unit 2W on 8/25/18;

Medical watch form;

Sheriff's report;

8/26/18 e-mail from Hannah Gubitz;

NaphCare policy re: informed consent and refusal of treatment;

Jail incident reports;

NaphCare incident reports;

Log of access to Ms. Hill's health record;

Records from Providence Sacred Heart Medical Center (including EMT records);

Autopsy report;

Death Review by Dr. Steven Hammond;

Depositions of Gubitz, Feely, Rogers, Maple, Ordaz, Hooper, Millholland, Janke, Sparber, Hoschka, Byington, Titchenal, Wirth;

Spokane County Jail Inmate Safety Checks policy;

Spokane County Jail Watch Cells policy;

Hannah Gubitz' answers to Plaintiffs' initial discovery requests;

NaphCare Health Care Policy & Procedure Manual;

All NaphCare medical records pertaining to Ms. Hill (including records from previous periods of detention in 2016 and 2017);

NaphCare nursing assessment protocol regarding abdominal pain or injury;

National Commission on Correctional Health Care 2018 Standards for Health Services in Jails; and

Merriam-Webster Dictionary, *Merrium-Webster.com dictionary*

3

COMPENSATION AND PRIOR TESTIMONY:

I have attached to this report as Exhibit B a list of all cases in which I have testified by deposition or at trial in the last four years.  I currently receive compensation of $350 per hour for case review and expert report production, with an initial retainer of $5000 for up to 12 hours of work.  I receive $500 per hour compensation for deposition and court testimony with a four-hour daily minimum and travel time reimbursed at $250 per hour as applicable. Travel expenses are charged per actual cost.

CASE SUMMARY

On August 21, 2018, Cindy Lou Hill was admitted to the Spokane County Jail at approximately 1005 hours Pacific Time (PT).  At approximately 1257 hours PT a physical assessment was completed by registered nurse (RN) Wattenburger.  At that time, RN Wattenburger noted that Ms. Hill's oxygen saturation was very low at 86% and contacted the on-site provider, physician assistant (PA) Denae Paul, who ordered supplemental oxygen.  Ms. Hill's physical examination included diminished breath sounds,  wheezing and a history of Chronic Obstructive Pulmonary Disease.   After five minutes of supplemental oxygen, Ms. Hill's oxygen saturation rose to 97%, then stabilized at 94%. There is no notation that the wheezing was discussed or addressed. Her abdomen was unremarkable and there was a notation that Ms. Hill reported "stomach problems" without further details.

On August 22, 2018, Ms. Hill was seen by charge RN Karen Contabile in the court holding cell at the request of custody.  Ms. Hill disclosed that she used heroin daily, and the assessment completed indicated that she was beginning to show signs of withdrawal. STATCARE was emailed and corporate nurse practitioner (NP) Casey Gladney ordered the initiation of COWS assessments with clonidine as needed, dosed per the COWS

4

score; encourage po fluid intake; and low bunk for safety.  The first COWS assessment was completed at that time, and it was scored 5.

On August 23, 2018, at approximately 0805 hours PT, Ms. Hill's COWS score was 12 (minimal withdrawal per the COWS form). On August 24, 2018, at approximately 0838 hours PT, Ms. Hill's COWS score decreased to 10 (minimal withdrawal per the COWS form).

On August 25, 2018, at approximately 0843 hours, charge RN Gubitz went to Ms. Hill's cell to complete the COWS assessment but was unable to do so because of Ms. Hill's extreme pain.  RN Gubitz documented on the COWS assessment sheet that Ms. Hill was lying on the floor, naked from the waist up, requesting assessment but too sick to move. Because policy prohibited RN Gubitz from entering the cell with only one officer because Ms. Hill had a roommate, the roommate rolled Ms. Hill onto a blanket, and dragged her across the floor to the door to be evaluated by RN Gubitz.  RN Gubitz described Ms. Hill as lying next to the toilet, on the floor, screaming.  Ms. Hill's roommate stated that Ms. Hill had been experiencing severe abdominal pain and she suggested that Ms. Hill was having a problem with her appendix. RN Gubitz documented that Ms. Hill was lying in a fetal position on the floor.  She allowed a minimal assessment of her abdomen and RN Gubitz stated that she was barely able to check vitals. RN Gubitz documented an assessment that included observation and palpation and revealed that Ms. Hill had no bruising, swelling, redness or masses.  Ms. Hill was described as screaming even louder when approached by RN Gubitz, even before she was touched, that RN Gubitz was hurting her.  Ms. Hill did not answer questions about her pain level, when the pain began or what were its characteristics, but she did identify that the pain was in her right lower quadrant.  RN Gubitz documented that Ms. Hill screamed in pain with gentle palpation

5

of her entire abdomen and back. RN Gubitz documented incomplete vital signs (no temperature) and that Ms. Hill was so irritable/anxious that participation in the assessment was difficult. RN Gubitz made the decision to place Ms. Hill on a Medical Watch, and she was transported via wheelchair to 2 West at approximately 0910 hours PT.

In deposition, RN Gubitz testified that Medical Watch was for patients needing acute medical monitoring, and healthcare staff relied on the officers to inform them if there were changes in the patient's health condition. RN Gubitz testified that she assumed the officers interacted with each person on medical watch to ascertain their condition at the time. She also testified that every individual on a Medical Watch should have a medical assessment completed each shift by nursing staff. Per the testimony of the officers deposed, including Officers Millholland, Hoschka, Wirth, Titchenal, Byington and Lieutenant Hooper, the Medical Watch checks were basically the same as what they would do on any floor, except that they documented the check on a log. They were not conducting medical assessments, only looking for signs of life, and they were not necessarily required to interact with the individual to inquire how he/she/they were if it was obvious they were alive. There was no training regarding how to conduct a Medical Watch check, and no training about the "Examples of Important Changes to Report to Medical" list of conditions on the top of the form. There was no specific policy or procedure regarding Medical Watch, and the policies and procedures that were in place for Inmate Safety Checks and Watch Cells did not address how to identify situations when medical staff must be called to evaluate the watched individual.

Ms. Hill's log included "awake", "sleeping", and "refused lunch". No medical staff person went to check on Ms. Hill's condition until approximately 1500 hours PT, when

RN Gubitz went to complete a COWS assessment.  It is notable that in testimony RN Gubitz  stated that the encounter could have occurred anywhere between 1300 hours and 1500 hours PT, but the statement she gave during the Sheriff's investigation hours after the death included that she returned to the cell at 1500 hours PT.  RN Gubitz testified that Ms. Hill refused the assessment at that time, but there is no signed refusal in Ms. Hill's health record.  RN Gubitz testified that her usual practice was to obtain a signed refusal per the policy, and she had no explanation for not obtaining one in this instance.  There is a brief encounter note in the health record documenting the refusal at approximately 1610 hours PT.  There is no video footage available for this time period to verify when RN Gubitz attempted to conduct the COWS assessment on the afternoon of August 25th and how long the encounter lasted.

On August 25, 2018, at approximately 1626 hours PT Officer Millholland was distributing the evening meal and left one at Ms. Hill's food slot. His incident report included that Ms. Hill groaned when he told her to get up.  At approximately 1724 hours PT Officer Millholland was picking up the trays and noticed that Ms. Hill had not taken her food.  He knocked on the cell door, and, receiving no response, called for medical. They entered the cell and found Ms. Hill pulseless and not breathing, and cardiopulmonary resuscitation was initiated.  The Automated External Defibrillator (AED) was used, with no shock indicated.  Medical staff administered Narcan and inserted an oral airway.  They attempted to establish intravenous access without success. Fire Rescue arrived and obtained a pulse and assumed care of Ms. Hill. After transport to Providence Sacred Heart Medical Center, Ms. Hill was pronounced dead at 1831 hours PT.  There was no documentation in the health record of the resuscitation efforts, including the administration of Narcan and the attempted intravenous access.

7

On August 26, 2018, after Ms. Hill died, RN Gubitz authored an email to her supervisors, Health Services Administrator (HSA) Jesus Ordaz and Director of Nursing (DON) Ian O'Neill, outlining in great detail Ms. Hill's presentation the day before when she evaluated Ms. Hill.  She included additional information about her evaluation, including that she did not do a full neurological exam and that she had no cause to suspect "spine involvement" since Ms. Hill was moving her legs.  She also reminded them that "a lot of our detox patients complain of stomach, abdominal, or low back pain, and except for the intermittent screaming there were not any symptoms to indicate differently."  RN Gubitz' email continued with a much more detailed description of Ms. Hill's presentation and the condition of her cell witnessed during the second encounter on August 25, 2018, when Ms. Hill allegedly refused an evaluation.  She noted that Ms. Hill's cell was the cleanest she had seen any cell in some time. Her observations of Ms. Hill included her being forthcoming; not screaming; sitting up; indicating that she wanted to be assessed; and later stating that, while her stomach still hurt, she did not want to be checked, and lying back down.  Because Ms. Hill "appeared in no acute or immediate distress we ended the conversation and assessment."  HSA Ordaz testified that he had not requested any additional information or explanation from RN Gubitz; this email was unsolicited.

An autopsy conducted on August 27, 2018, determined that Ms. Hill died from acute bacterial peritonitis secondary to ruptured duodenal-liver adhesions with perforations of the duodenum.

Dr. Steven Hammond, a former Chief Medical Officer of the Washington Department of Corrections was asked to review Ms. Hill's care and treatment, and his completed report was submitted in the Fall of 2019.  In it, he determined, in part, that there were missed opportunities for clinical intervention and significant lapses related to care delivery that,

had they been properly addressed, may have prevented or significantly delayed death. These included misattributing worsening symptoms on August 25, 2018 to opioid withdrawal; failure to respond more definitively to her worsening status both on the morning of August 25th and in the afternoon when she did not take her dinner tray; and failure to check Ms. Hill for a full hour after the food was delivered.

OPINIONS

On August 25, 2018, when RN Gubitz evaluated Ms. Hill, she documented several significantly abnormal findings, including Ms. Hill's being too sick to move; her lying in a fetal position; her screaming in pain generally and then screaming louder when RN Gubitz came close to do the abdominal palpation; her screaming with light palpation of the abdomen and back; and that the pain was in her right lower quadrant, that required a consultation with a provider, but RN Gubitz failed to do so. Instead, RN Gubitz made the independent decision to place Ms. Hill on a Medical Watch. RN Gubitz testified that she "briefly considered" calling the local on-call provider, but because Ms. Hill presented with "no gross abnormalities," she knew that the "providers at the time would not have necessarily given any orders after the first assessment." A patient screaming in severe right lower quadrant abdominal pain on the floor in a fetal position who is too sick to move is definitely a patient with gross abnormalities.

NaphCare's Nursing Assessment Protocol for Abdominal Pain or Injuries requires the nurse to "notify provider and begin treatment" if the patient is in "acute distress." However, NaphCare and the Protocol do not define "acute distress," and so the nurse is left to interpret that condition. Dr. Maple was asked about acute distress during his deposition. He did not define "acute distress," but testified that acute distress is indicated by abnormal vital signs, altered mental status and/or signs of shock. I do not

9

disagree that these three characteristics may be indicative of acute distress, but they are not inclusive of all situations of acute distress.  Merriam-Webster defines distress as "pain or suffering affecting the body, a bodily part, or the mind: trouble; a painful situation: misfortune;  a state of danger or desperate need"  and acute as " very serious or dangerous, requiring serious attention or action characterized by sharpness or severity of sudden onset; felt, perceived, or experienced intensely: acute distress [Merriam-Webster. n.d. Distress. In *Merrium-Webster.com dictionary*. Retrieved November 29, 2021, from https://merrium-webster.com/dictionary/distress; Merriam-Webster. n.d. Acute. In *Merrium-Webster.com dictionary*. Retrieved November 29, 2021, from https://merrium-webster.com/dictionary/acute].  RN Gubitz' assessment of Ms. Hill, that she was too sick to move; was lying in a fetal position; was screaming in pain generally and then screaming louder when RN Gubitz came close to do the abdominal palpation; was screaming with light palpation of the abdomen and back; and had pain in her right lower quadrant, clearly indicated that Ms. Hill was in acute distress, and even RN Gubitz testified that Ms. Hill was in acute distress. Unfortunately, RN Gubitz chose to ignore Ms. Hill's acute distress and not contact a provider, and not monitor Ms. Hill, and instead placed her on a Medical Watch where only untrained non-medical persons were looking in on her.

RN Gubitz' presumption that a provider presented with Ms. Hill's condition would do nothing is egregious, and in essence, denied Ms. Hill the access to healthcare her very serious medical condition required and a proper diagnosis.  The failure of RN Gubitz to contact a provider for Ms. Hill significantly deviated from the standard of nursing care. By deciding, without consulting with a provider, that no orders would be given to diagnose and/or treat Ms. Hill's critical condition, RN Gubitz practiced very much beyond her scope of practice as a registered nurse, which is illegal.

More than six hours later on August 25, 2018, RN Gubitz went to Ms. Hill's cell on 2 West to complete a COWS monitoring assessment.  She noted that Ms. Hill refused to allow the assessment, but she failed to have Ms. Hill sign a refusal form indicating this. In deposition, RN Gubitz  stated that it was her usual practice to obtain informed refusals, and she did not have a reason for not doing it for Ms. Hill.  She also wrote a brief note documenting the refusal, with no description of Ms. Hill's condition or behavior.  The failure of RN Gubitz to obtain an informed refusal from Ms. Hill deviated from the standard of nursing care.

As stated previously, the standard of nursing care required RN Gubitz to contact a provider about Ms. Hill's condition when she was presented with being too sick to move; lying in a fetal position; screaming in pain generally and then screaming louder when RN Gubitz came close to do the abdominal palpation; screaming with light palpation of the abdomen and back; and pain in her right lower quadrant.  When she failed to do so and instead placed Ms. Hill on Medical Watch on the morning of August 25th, the standard of care required that RN Gubitz  complete a reassessment of her abdominal pain, to have occurred many hours prior to the attempted COWS monitoring that afternoon.  Prudent nursing care for a patient screaming in severe right lower quadrant abdominal pain, who was lying in a fetal position on the floor and could not move because of the pain dictates that a reassessment is done within one to two hours to determine if the patient is improving, staying the same, or deteriorating. After the reassessment was completed, RN Gubitz should have contacted the provider to report Ms. Hill's condition at that time. Although Ms. Hill was placed on Medical Watch, where purportedly she would be checked every thirty minutes, that did not substitute for the required nursing physical reassessment.   The failure of RN Gubitz to return timely to Ms. Hill and conduct a reassessment of her pain and general condition significantly breached the standard of

nursing care.

The day after Ms. Hill died, RN Gubitz authored an email to her supervisors, unsolicited, that went into greater detail about her two encounters with Ms. Hill than was documented in the health record.  She never went back into the health record and added any of this information as a "late note," but she should have. She did go in on August 26, 2018 at 0521 hours PT and note that Ms. Hill was no longer on Medical Watch. All known medical information about a patient, especially a patient who is critical or has died, should be included in the health record. The failure of RN Gubitz to document important information about her patient in the health record significantly deviated from the standard of nursing care.

It is notable that the description RN Gubitz shares of Ms. Hill in the afternoon encounter (sat up, responsive and forthcoming, not screaming at all, and laid back down) when she refused the COWS monitoring is inconsistent with the expected presentation of a patient who has a perforated duodenum and peritonitis and is dead within a few hours of the encounter. In her statement, RN Gubitz wrote that "Justin CMA and CO Janke" accompanied her in the afternoon of August 25th when she noted that Ms. Hill's presentation was unremarkable.  However, CMA (certified medical assistant) Rogers and Officer Janke testified in deposition that each did not remember this encounter. Unfortunately, the video footage from the Medical Watch unit that afternoon no longer exists, so it is not possible to confirm whether or not the encounter occurred as RN Gubitz claims.  If the encounter did not occur, then RN Gubitz not only grossly deviated from the standard of nursing care by failing to reassess Ms. Hill, but she also falsified health records, which is a flagrant ethical violation and a crime in many states.

Per the incident reports, the emergency response by healthcare and custody staff was appropriate. However, none of the actions were documented in the health record, and they should have been. The failure of healthcare staff to document the resuscitation attempt for Ms. Hill in her health record deviated from the standard of nursing care.

Notable in this matter are the Medical Watch procedures and the understanding of staff as to what constitutes a Medical Watch and the type of patients placed on Medical Watch. RN Gubitz testified that individuals transferred to Medical Watch were those needing "acute medical monitoring." She further testified that officers interacted with patients on Medical Watch to ascertain their medical status. While the implication was that patients would receive more frequent monitoring for their medical/mental health conditions under a Medical Watch, in fact, the rounds were conducted by officers with no additional health training, who were merely checking the patients for signs of life, as they did in other housing units. The officer might have done more frequent rounds on patients on Medical Watch if the medical staff ordered them, but more often than not the rounds were conducted on the same schedule as the "regular" housing units – every 30 minutes. Officers detailed their observations on a paper log that did have an area at the top that included medical symptoms for which the officer should be watching, and if noted, should prompt the officer to contact medical staff, but the officers deposed in this matter, including Officers Millholland, Hoschka, Titchenal, Byington and Wirth testified they had no training in the assessment of these symptoms and there were no written guidelines or algorithms to assist with these judgment calls. They did not routinely interact with the patients to see how they were feeling.

By placing patients like Ms. Hill in a Medical Watch unit that provided no real health monitoring as their condition required, NaphCare and its staff were exposing their

patients to a substantial risk of serious harm.  NaphCare should have identified that there was no Medical Watch policy and procedure and worked with Spokane County Administration to develop one that would reasonably keep their patients safe.  NaphCare should have identified that officers did not have the medical training necessary to identify the symptoms articulated on the Watch Log and should have included more frequent and formalized rounds in the unit by health staff.  It also should have provided additional training for the officers to include the identification of emergency situations and abnormal findings that must be reported to health staff.  The failure of NaphCare to work with Spokane County Jail Administration to develop a policy for Medical Watch that considered the primacy of patient safety deviated significantly from the applicable standard of care.

The reliance by NaphCare and its staff on the officers to round on their patients who were placed on Medical Watch because their conditions warranted close monitoring and identify abnormal and serious changes in their patients' conditions was reckless and significantly deviated from the applicable standard of care.  In essence, NaphCare placed the care of patients already identified as needing "acute medical monitoring" in the hands of laypersons with no medical training who, for the most part, were not even aware that medical watch rounds included more thorough checks, patient engagement, and additional monitoring.  Under these circumstances, it is foreseeable that any deterioration in condition would not be identified timely.  NaphCare had a responsibility to Ms. Hill and all its patients to ensure that they were monitored by qualified staff and their healthcare needs were addressed, and it failed.  This failure significantly deviated from the applicable standard of care.

My opinions and findings are made to a reasonable degree of nursing, provider and

administrative certainty and are based upon the records reviewed. I hereby reserve the right to amend, supplement, or withdraw my opinion based upon future discovery and depositions of the relative parties that may be provided to me.

Respectfully Submitted on November 30, 2021.

*Lori E Roscoe*

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

# Curriculum Vitae

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
404-805-9502

---

## PROFILE

---

An innovative Healthcare Manager, certified as an Advanced Practice Registered Nurse, a Correctional Health Professional, and a Correctional Registered Nurse, with 26 years of experience in Correctional Health Care and 32 years of Registered Nursing experience. An expert on National Commission on Correctional Health Care and American Correctional Association standards, and policy and procedure development and compliance.   An educator of both nurses and correctional officers.   A seasoned Continuous Quality Improvement professional.  An experienced correctional health expert legal witness, including case review, expert report authoring, and deposition/trial testimony.

---

## EDUCATION

---

**Doctor of Nursing Practice**
University of Alabama, 2017

**Master of Science in Nursing, Adult Nurse Practitioner**
South University, 2014

**Doctor of Health Care Administration**
Madison University, 2006

**Master of Public Administration, Health Care concentration**
University of Hartford, 1994

**Bachelor of Science in Nursing**
University of Connecticut, 1989

**Bachelor of Science in Education, Secondary Education and Sociology majors**
Southern Connecticut State University, 1978

---

## AWARDS

---

High Honors - South University - 2014

Award for Academic Excellence – University of Hartford 1994

Woodruff Fellow 1992 – 1994 – University of Hartford

---

EXPERIENCE

---

**Correctional HealthCare Consultants LLC**

    January 2007 – present – Managing Member

        **Marion County, KY – Jailer J. Barry Brady** – (2018-present) Healthcare program transitional and ongoing consultation services

        **Boone County, KY – Jailer Jason Maydak** – (2018-present) Healthcare program development, transition services and consultation services

        **Laurel County, KY – Jailer Jamie Mosley –** (2017-present) Healthcare Program Evaluation, ongoing program development, and consultation services

        **Preceptor for MSN Nurse Practitioner students from Georgia State University – (**2016 – 2017) Semester of Nurse Practitioner experience in a correctional setting

        **CorHealth Solutions, LLC – Dr. D. Brent Cherry** – (2016) Correctional Health Program Development and contract initiation consultation- Somerset, KY

        **National Commission on Correctional Health Care Multi-Disciplinary Education Committee** (2019 – present) – Accredited Provider Program Director  and **Nurse Advisory Council** (2016 – present) **-**  Chairperson and Lead Nurse Planner

        **Journal of Correctional Health Care,** Editorial Board member and peer reviewer (2019 – present)

        **University of Connecticut School of Nursing** (2014 - 2016) – Expert Nurse panelist for a research study regarding the Correctional nurse and stress being conducted by Dr. Denise Panosky.

        **American Nurses Association** (2012-present) **–** Member of the Correctional Nursing workgroup responsible for reviewing and editing the *Correctional Nursing*: *Scope and Standards of Practice* – latest version published November 2020.

        **The Correctional Nurse Educator** (2010-present) – Developed and maintain an online educational site where nurses can earn continuing education credits in topics specifically related to correctional nursing. Accredited as a Provider by the California, Florida, Georgia, South Carolina and other Boards of Nursing.

        **Medical Association of Georgia** (2007-2017) – Accreditation auditor for the Corrections Division.

        **Legal casework** (2007-present) - Multiple cases for both Defendants and Plaintiffs.

        **American Correctional Health Services Association –** Executive Director – 2011-2012

        **Correct Health, LLC –** DeKalb County Jail (2008-2009) - Operational review, Management staff mentoring, CQI Program expansion and Annual Review, Procedures and Post Order development, nursing staff mentoring and education.

        **Comprehensive Nursing Care, Inc.** (2007 - 2009) **–** Development of successful bid proposal for Medical Nursing Services at Hall County Jail – continued association to develop and execute a complete Nursing orientation program, written procedures for staff, Nursing Assessment Protocols, corresponding Nursing Treatment Notes and Blood Borne Pathogen Exposure Plan, CQI Program and ongoing Staff and Management mentoring.

**The Community Health Center, West Palm Beach, FL**

    July 2018 – present – Nurse Practitioner

        Nurse Practitioner volunteer provider at this Free Clinic – evaluate, diagnose and treat patients presenting to the clinic with a wide range of illnesses and injuries, including chronic illnesses such as diabetes, hypertension, seizure disorder and hyperthyroidism; women's health issues;

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

mental illness; and acute conditions like infections; sprains and minor injuries. Preceptor for Nurse Practitioner, Physician Assistant, Medical and RN students.

**Correct Care Solutions, Nashville, TN**

September 2014 – January 2018 – Nurse Practitioner, Georgia

In collaboration with the Medical Director, provision of the full range of medical services for the patients at the facility, including sick call, urgent/emergent and chronic care.  Interpretation of lab results and diagnostic studies ordered through the facility.

**CorrectHealth LLC, Atlanta, Georgia**

January 2013 – June 2013 – Director of Clinical Support

Responsible for Clinical Services Education, Infection Control, Continuous Quality Improvement, and Accreditation.  Daily clinical practice and staff contact. Exclusively responsible for the clinical education of staff at 33 sites, which included working side-by-side with staff, conducting needs assessments and evaluations, and the research of evidence based practices and guidelines to ensure staff were adhering to nationally approved standards of care.

January 2012- January 2013 – Executive Director of Clinical Services

Responsible for all aspects of Clinical Services, including Education, Infection Control, Continuous Quality Improvement, Health Information and Accreditation.  Policy and Procedure review and development.  Responsible for nursing and ancillary staff.  Visited sites and interacted with clients on a regular basis.

July 2009 – December 2011 – Director of Special Projects

Participated in projects with the Georgia Department of Corrections; Project Coordinator and Lead Surveyor for an audit of all healthcare services for the Maricopa County Jail, Phoenix, Arizona; Developed projects and procured funding for the CorrectHealth Community Development Center (non-profit); Project Manager for a Special Study for the Wyoming Department of Corrections regarding healthcare access, medical cost and potential efficiencies; internal operations auditing and staff development.  Within CorrectHealth, major responsibility for the clinical education of staff, including nurses, providers and ancillary staff. This included working side-by-side with staff, conducting needs assessments and evaluations, and evidence based practices and guidelines research to ensure staff adherence to nationally approved standards of care.

**Correctional Medical Services, St. Louis, Missouri**

2004 - 2006 - Health Service Administrator - DeKalb County Jail (GA)

2004 - Utilization Management Nurse (interim) - New Jersey Department of Corrections contract

2000 - 2002 - Associate Program Director – New Jersey Department of Corrections contract

1996 - 1998 - Associate Program Director – Massachusetts Department of Corrections contract

1995 - 1996 - Health Services Administrator - Framingham Women's Prison (MA)

**Georgia Correctional Health Care, Georgia Department of Corrections**

2006 - 2007 – Staff Nurse/PRN - Georgia Diagnostic and Classification Prison

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

PRESENTATIONS/LECTURES

**"How to Achieve Success as a Correctional Nurse Manager"** a series of 4 webinars for the National Commission on Correctional Healthcare by the Nurse Advisory Council – Lead Nurse Planner and presenter week 3, Clinical Processes, held August 3rd, 10th, 17th and 24th 2021.

**"Professional Practice in Our Post-COVID World: A Correctional Nurse Conversation"** presented at the Virginia Department of Correction Nursing Conference Keynote speaker July 13, 2021.

**"Honoring Our Practice in a Post-COVID World: A Correctional Nursing Conversation"** presented at the Wisconsin Department of Correction Health Services Administrators' meeting June 17, 2021.

**"How APRNs Can Add Value to Your Correctional Healthcare Operation"** presented at the National Commission on Correctional Health Care Spring 2021 Virtual Conference.

**"Patient Advocacy for the Correctional Nurse"** and **"Skin Assessment for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Ft. Lauderdale, FL.  October 2019.

**"Clinical Decision Making in Correctional Nursing"; "Advanced Practice Registered Nurses in Corrections:  Roundtable"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN.  April 2019.

**"Clinical Judgment for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Las Vegas, NV, October 2018 and in Atlanta, GA, May 2017.

**"A Seizure Disorder Primer for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN, April 2016.

**"A Hypertension Primer for the Correctional Nurse"** and **"The Nurse's Role in Chronic Care Management"** presented at the National Conference of the National Commission on Correctional Health Care in Dallas, TX, October 2015.

**"A Diabetic Primer for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in New Orleans, LA, April 2015.

Guest Expert Panelist, American Association of Legal Nurse Consultants webinar **"Civil Rights Litigation"** held nation-wide on October 30, 2014.

**"The Nurse's Role in Chronic Care Management"** presented at the National Conference of the National Commission on Correctional Health Care in Atlanta, GA, April 2014.

Guest Expert panelist, Omnisure webinar **"The Unscheduled Encounter: Reducing Liability and Risk"**, held nation-wide on December 4, 2013**.**

**"The New ANA Scope and Standards of Practice for Correctional Nurses: Implementation Standard", "The New ANA Scope and Standards of Practice for Correctional Nurses: Communication Standard"** and **"The Essentials of Nursing Leadership: Capstone Presentation"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN, October 2013.

**"Unscheduled Encounters:  Managing the Nursing Curbside Consult"** and **"The New ANA Scope and Standards of Practice for Correctional Nurses: Implementation Standard"** presented at the National Conference of the National Commission on Correctional Health Care in Denver, CO, April 2013.

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

4

**"Unscheduled Encounters:  Managing the Nursing Curbside Consult"** presented at the National Conference of the National Commission on Correctional Health Care in Las Vegas, NV, October 2012.

**"Children and Prescription Drug Abuse" –** CHAMPS Instructor School, Georgia Sheriff's Association, June 2012.

**"Con Games: Inmate Manipulation"** presented at the Nursing Forum, American Correctional Health Services Association's National Conference in San Antonio, TX, April 2012.

**"HIV Awareness", "Universal Precautions"** and **"Inmate Medical Services"** at the DeKalb County Sheriff's Office 111th Jail Academy, February 2011 through the 124th Jail Academy, August 2014.

**"Crisis Intervention Training"** co-presenter at the American Correctional Health Services Association Georgia Conference, Savannah, Georgia, November 2009.

**"Nursing Forum: Legal Parameters and Best Practice"** at the American Correctional Health Services Association National Conference, Orlando, Florida, March 2009.

**"Dilemmas in Correctional Nursing"** at the American Correctional Health Services Association National Conference, Reno, NV, June 2007.

---

## LICENSES AND CERTIFICATIONS

Advanced Practice Registered Nurse/Nurse Practitioner – Florida (Autonomous Practice APRN9485060), California (95006810), Georgia (RN179490), Kentucky (3012955) and Virginia (0024178346).

Certified Adult Nurse Practitioner – American Academy of Nurse Practitioners National Certification Board (A0614010 – expiration June 2024)

Registered Nurse licensure  - Multi-state and individual license in Florida, Washington, California, Georgia

Certified Correctional Health Provider – Certified Correctional Registered Nurse –

   National Commission on Correctional Health Care

Certified Provider of Continuing Education – California Board of Registered Nursing

Certified Guest Instructor - Georgia Peace Officer Standards and Training Council

BLS Healthcare Provider

---

## MEMBERSHIPS

Founding Member and Member-at-Large Board Member - American Correctional Nurses Association

Member – American Association of Nurse Practitioners

Member – American Nurses Association

Member – American College of Correctional Physicians

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

Member – South East American Correctional Health Services Association

Member – Academy of Correctional Health Professionals

Member – American Correctional Association

Member- American Jail Association

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

# Legal Cases-Depositions/Trial

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2017 - 2021**

**Mark Krudys,** The Krudys Law Firm, PLC
**Richmond, VA**

Carolyn Mae Sams, Plaintiff vs. Armor Correctional Health, et al.
*Plaintiff - **ongoing litigation***

**Charles Tatum, Esquire and Seth Diamond, Esquire**
**Jasper, AL**

Lashunna Wilson, as Administrator and personal representative of the Estate of William Henry Harris, Jr., deceased
*Plaintiff - **trial October 2021***

**David S. Fried, Fried. Bonder, White, LLC**
**Atlanta, GA**

Torrey Griffen, Individually, as the legal guardian of the minors, RWR, ABG, and DRR and as the  representative of the Estate of Shannon Rewis, deceased, Plaintiffs, vs. Coffee County, Coffee Regional Medical Center, Inc, et al.
*Plaintiff - **ongoing litigation***

**Jackson Pahlke,** Connelly Law Offices, PLLC
**Seattle, WA**

Roxanne Smith, Individually and as Administrator of the Estate of Britney H. Smith, Decedent; Plaintiff, v. Cowlitz County, and WellPath, LLC
*Plaintiff - **settled 2021***

**Edwin Budge and Erik Heipt,** Budge & Heipt, PLLC
**Seattle, WA**

Jennifer Louise Jenkins, Administrator ad Litem of the Estate of Sterling Higgins, Plaintiff, vs. Obion County, Union City, TN, et al, Defendants
*Plaintiff - **ongoing litigation***

**Chris Hammons,** Laird, Hammons, Laird, PLLC
**Oklahoma City, OK**

Patricia Thompson, as personal representative of the Estate of Marconia Lynn Kessee, vs. Norman Regional Medical Center, et al
*Plaintiff - **ongoing litigation***

**Mark Krudys,** The Krudys Law Firm, PLC
**Richmond, VA**

James W. Smith, Administrator of the Estate of Victor Rhea Fountain, Deceased, vs. WellPath, LLC, et al.
*Plaintiff - **ongoing litigation***

# Legal Cases-Depositions/Trial

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
### 2017 - 2021

**W. David Carter,** Carter Mercy
**Texarkana, TX**
> Jones vs.  Southwestern Correctional, LLC et al.
> *Plaintiff - **trial April 2021***

**Vincent Colianni II,** Colianni & Colianni LLC
**Christiansted, VI**
> Kelly Anderson, Plaintiff vs.  St. Francois County Sheriff's Department, et al.
> *Plaintiff - **ongoing litigation***

**Mark Bullman, Esquire, Hillary Hunter, Esquire, & Mel Hewitt, Esquire,** Isenberg &
**Hewitt, PC**
**G. Brian Spears, Esquire,** Spears & Filipovits, LLC
**Atlanta, GA**
> Brigette Minton, Administrator of the estate of William Jeffrey Minton and Stephanie
> Minton v. William Bradley, Jarvis Culver, Katherine Elizabeth Eubanks, Corrcare, Inc,
> Paul Buczynsky, Valerie Harper, Crystal Bell and Micki Harrison
> *Plaintiff - **ongoing litigation***

**Jeffery Storms, Esquire & Paul Dworak, Esquire,** Newmark, Storms Dworak Law Office;
**and Jeffrey Montpetit, Esquire,** Sieben Carey
**Minneapolis, MN**
> Dawn Brenner and Kathy Brenner, co-trustees for the heirs and next of kin of Dylan
> Brenner v. Danielle Asfeld, Christina Leaonard, Jannell Hussein, Todd Leonard,
> Rebecca Lucar, Russell Denny, Wes Graves, James Rourke, MEnD Correctional Care
> and Sherburne County
> *Plaintiff - **ongoing litigation***

**Ryan McGraw, Esquire,  and Konrad Kircher, Esquire,** Rittgers & Rittgers
**Cincinnati, OH**
>  Karla Howell, as Administratrix of the Estate of Cornelius Pierre Howell v. NaphCare,
> Inc and Christina Jordan and Pierette Arthur and Jim Neil, Matthew Collini and Daniel
> Erwin.
> *Plaintiff - **ongoing litigation***

**C. Scott Johnson,** Spears, Moore, Rebman & Williams, P.C.
**Chattanooga, TN**
> Eden, et al vs. Bradley County, TN, et al.
> *Plaintiff - **ongoing litigation***

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2017 - 2021**

<u>**Matthew Garmon,**</u>  **Morris Haynes, Attorneys at Law**
**Birmingham, AL**
> Hunter vs.  Advance Correctional Healthcare, et al.
> *Plaintiff - **ongoing litigation***

<u>**Paul Dunphy, Esquire,  and Michael Cerjak, Esquire,**</u> **Canon & Dunphy, S.C.**
**Brookfield, WI**
> Madden vs.  Milwaukee County, et al.
> *Plaintiff - **ongoing litigation***

<u>**Vincent Colianni II,**</u>  **Colianni & Colianni LLC**
**Christiansted, VI**
> William James, Jr., et al., vs.  St. Francois County Sheriff's Department, et al.
> *Plaintiff - **settled 2021***

<u>**Laura Landenwich,**</u>  **Adams, Landenwich, Walton, PLLC**
**Louisville, KY**
> *Janice Sweet, As Personal Representative and Administrator of the Estate of*
> *Christopher R. Sweet, et al, Plaintiffs, vs. Sheriff  Jamey Noel, Clark County Sheriff's*
> *Dept., Charlestown Primary Care, LLC, William Hoke, M.D., et al.*
> *Plaintiff - **settled 2020***

<u>**William Bird,**</u> **Bird Law Firm and** <u>**Michelle Carpenter,**</u> **Kranitz, Sadoun & Carpenter, PC**
**St. Joseph, MO**
> *Ashten Haylee Surritte, et al. vs. Advanced Correctional Healthcare Inc, et al.*
> *Plaintiff - **settled 2020***

<u>**William Bird,**</u> **Bird Law Firm** <u>**and Michelle Carpenter,**</u> **Kranitz, Sadoun & Carpenter, PC**
**St. Joseph, MO**
> *Amanda Thomas, et al. vs. Advanced Correctional Healthcare,Inc, et al.*
> *Plaintiff - **settled 2020***

<u>**S. Luke Largess,**</u>  **Tin, Fulton, Walker & Owen, PLLC**
**Charlotte, NC**
> Mary McNeilly, Administrator of the estate of Archie K. McNeilly, Jr., Plaintiff v. Southern
> Health Partners, Inc., et. al, Defendants
> *Plaintiff - **settled 2020***

<u>**Derek Franseen,**</u> **Walsh and Franseen**
**Edmond, OK**
> Craig Shipp, Plaintiff vs CorrectCare Solutions, LLC; Dr. Lorene Lomax, et al,
> Defendents
> *Plaintiff - **closed 2020***

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2017 - 2021**

**<u>Hank Balson and Edwin Budge,</u> Budge & Heipt, PLLC**
**<u>Seattle, WA</u>**

> The Estate of Marc A. Moreno, by and through its personal representative, Miguel Angel Moreno; Miguel Angel Moreno, individually;   and Alicia Maga-Mendez  individually, Plaintiffs,  vs. Correctional Healthcare Companies, Inc.; Correct Care Solutions, LLC.; Our Lady of Lourdes Hospital at Pasco, Inc.; Ashley Castenada, individually; and Anita Valee, individually  Defendants.
> *Plaintiff - **settled 2020***

**<u>Michael Fairhurst,</u>  Killmer, Lane & Newman, LLP**
**Denver, CO**

> Estate of Marciano Briones;  Marc Briones, et al, Plaintiffs, vs. Adams County; Correct Care Solutions, Correctional Healthcare Companies, et. al, Defendants
> *Plaintiff - **settled 2020***

**<u>Daniel R. Shaffer,</u> Matthew S. Martin**
**Grand Junction and Glendale, CO**

> Estate of Daniel Allard, Aanda Slocum, as Personal Representative of the Estate of Daniel Allard, deceased, vs Corizon Health, Inc., Sarah Richardson, LPN, in her individual capacity; and Deborah Kinder, in her individual capacity, Defendants.
> *Plaintiff - **ongoing litigation***

**<u>J. Timothy Smith,</u> Elliott and Smith**
**Fayetteville, AK**

> Kathy Jordan, as guardian of the Person and the Estate of Lindsey B. Jordan, an incapacitated person Plaintiff vs. Southern Health Partners, Inc.; Leah Branyan, RN; Tyranny D. Ray, LPN; Benton County, Arkansas, et al., Defendants.
> *Plaintiff - **settled 2020***

**<u>Andrew McNulty,</u> Killmer, Lane & Newman, LLP**
**Denver, CO**

> Estate of Tomas Beauford, Tiffany Marsh, personally and as a representative of the Estate of Tomas Beauford, Deceased, Plaintiffs, vs. Mesa County, Colorado, a Government Entity; et al., Defendants.
> *Plaintiff - **ongoing litigation***

**<u>William Bird,</u> Bird Law Firm and Michelle Carpenter, Kranitz, Sadoun & Carpenter, PC**
**St. Joseph, MO**

> Brenda Davis, et al. vs. Buchanan County, et al.
> *Plaintiff - **ongoing litigation***

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2017 - 2021**

**Anna Holland-Edwards,** **Erica Grossman, Holland, Holland-Edwards & Grossman**
**Denver, CO**
>  Estate of Jeffrey Scott Lillis, et al. vs. CorrectCare Solutions, LLC, et al.
>  *Plaintiff - **settled 2019***

**Erik Heipt and Edwin Budge,** **Budge & Heipt, PLLC**
**Seattle, WA**
>  Teresa Sabbie, individually, as personal representative of the Estate of Michael Sabbie,
>  et al, Plaintiffs v. Southwestern Correctional, LLC d/b/a Lasalle Corrections, LLC and
>  Lasalle Southwest Corrections, et al. Defendants
>  *Plaintiff - **settled 2019***

**Francis "Brink" Hinson IV,** **FINKEL LAW FIRM LLC**
**Columbia, SC**
>  Robert Kenneth Hilliard, Plaintiff v. Southern Health Partners, Inc, Charles A. Bush,
>  M.D., and Marlboro County, Defendants
>  *Plaintiff - **trial June 2019***

**Reid Allison, Darold Killmer,** **Killmer, Lane & Newman, LLP**
**Denver, CO**
**Roy A. Jacobson,** **Jacobson Law Offices**
**Jackson, WY**
>  Steven M. MIllward and Riley J. Millward v. Teton County Board of Commissioners, et al.
>  *Plaintiff -  **settled 2020***

**Anthony Marchetti, Jr.,** **Marchetti Law, PC**
**Cherry Hill, NJ**
>  Webster v. State of New Jersey, et al.
>  *Plaintiff -  **settled 2019***

**Cherie Wade, ADA; Tony Lawrence, DA,** **State of Mississippi**
**19th District Court**
>  State of Mississippi v. Carmon Sue Brannan
>  *State of Mississippi - **trial 2018***

**Alan Lassetter**, Shuttlesworth Lassetter, LLC
**Birmingham, AL**
>  Timothy Hays, as the personal representative of the Estate of Brandon
>  Lee Hays, Plaintiff, vs. Shelby County, Alabama, et al.,
>  *Plaintiff -  **settled 2018***

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2017 - 2021**

**Vincent DeSalvo,** The Law Offices of Vincent DeSalvo
**Baton Rouge, LA**
>  Brandie Melton, et al v. East Baton Rouge Sheriff's Office.
>  *Plaintiff -* **settled 2020**

**David Damick,** **Law Offices of David N. Damick**
**St. Louis, MO**
>  Jacob Benoit and Zachary Benoit, Plaintiffs v. Lindell Riffle, et al.
>  *Plaintiff -* **settled 2018**

**Trent Lowry,** **Griffith, Lowry & Meherg, LLC**
**Cullman, AL**
>  Steven C. Smith, as conservator for Brandon Jeffries v. Travis Turner, et al,
>  *Plaintiff -* **settled 2018**

**Cameron Kuhlman,** **The Claiborne Firm, PC**
**Troy Rafferty and William Cash III,** **Levin, Papantonio Thomas, Mitchell Rafferty and Proctor, P. A.**
**Mark O'Mara,** **O'Mara Law Group**
>  Soloman Oludamisi Ajibade and Adenike Hannah AJjibade, as natural parents of Mathew Ajibade, and the Estate of Mathew Ajibade and Chris Oladapo, its Executor, Plaintiffs, vs. John Wilcher, in his official capacity as Chatham County Sheriff, et al., Defendants
>  *Plaintiff -* **settled 2019**