*The Estate of Cindy Lou Hill, by and through its personal representative, Joseph A. Grube; and Cynthia Metsker, individually vs. Naphcare, Inc., et al.*

Case No. 2:20-cv-00410-RMP

Declaration of Edwin S. Budge

Exhibit S

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON


THE ESTATE OF CINDY LOU HILL, by      )
and through its personal              )
representative, Joseph A. Grube;      )
and CINDY METSKER, individually,      )
                                      ) No. 2:20-cv-00410-RMP
                   Plaintiff,         )
                                      )
              vs.                     )
                                      )
NAPHCARE, INC., an Alabama            )
corporation; HANNAH GUBITZ,           )
individually; and SPOKANE COUNTY,     )
a political subdivision of the        )
State of Washington,                  )
                                      )
                   Defendants.        )


         VIDEOTAPED DEPOSITION OF MICHAEL SPARBER

                    August 16, 2021

                   Via Videoconference











REPORTED BY:  Valerie L. Torgerson, CCR, RPR
              License No. 2036
```

```
 1                    MS. EHLERT:  Erin Ehlert for NaphCare.
 2                    MR. BALSON:  Hank Balson for the
 3      plaintiffs.
 4                    THE VIDEOGRAPHER:  Thank you.
 5          Will the court reporter please -- I'm sorry.  Did I
 6      miss someone?
 7          Will the court reporter please swear in the witness.
 8
 9      MICHAEL SPARBER,         having been first duly sworn
10                               by the Certified Court Reporter,
11                               testified as follows:
12
13                              EXAMINATION
14      BY MR. BUDGE:
15  Q   Good morning.  Could you please state and spell your name
16      for the record?
17  A   Good morning.  My name is Michael Sparber, S-p-a-r-b-e-r,
18      and I am a detention services director for both downtown
19      and Geiger.
20  Q   All right.  So you're the director of the Spokane County
21      Detention Services Department; is that correct?
22  A   That's correct.
23  Q   Were you the director of the Spokane County Detention
24      Services Department as of August 25th, 2018, which is the
25      date of Cindy Lou Hill's death?
```

1  Q  (By Mr. Budge)  Do you understand my question, and do you
2     understand the objection?
3  A  I do.
4  Q  Okay.  Can you tell me whether or not it's true from your
5     perspective that Spokane County Detention Services
6     anticipated the possibility of litigation arising from
7     the death of Cindy Lou Hill shortly after she died?
8                      MR. JUSTICE:  Same objection and
9     instruction.
10          Otherwise you can answer.
11 A  I'm sure -- well, my answer would be that any death or
12    anything that occurs in our jail is -- would be subject
13    to litigation.
14 Q  (By Mr. Budge)  And so does Spokane County Detention
15    Services basically anticipate as a practical matter with
16    all inmate deaths that there might well be litigation
17    arising from any such deaths?
18 A  Yeah.  Sure.
19 Q  As of the date of Cindy Lou Hill's death on August 25th,
20    2018, Spokane County Detention Services had that basic
21    understanding, correct, that her death, as with any other
22    death in the jail, might well result in civil litigation;
23    correct?
24 A  Correct.  That's why we talk to our attorneys and risk
25    management on any of those occasions.

1 Q Now, throughout your tenure as Spokane County Detention
2 Services director and before that as the assistant
3 director, has it always been your basic understanding
4 that any inmate death at the jail is reasonably likely to
5 result in civil litigation?
6 A Yes.
7 Q As of the date of Cindy Lou Hill's death on August 25th,
8 2018, did Spokane County Detention Services fully
9 understand that given the possibility of litigation it
10 was obligated to preserve all written and electronically
11 stored information pertaining to Cindy Lou Hill in its
12 possession, custody, or control?
13 A Yes.
14 Q As of the date of Cindy Lou Hill's death on August 25th,
15 2018, did Spokane County Detention Services fully
16 understand that preservation of written and
17 electronically stored information pertaining to Cindy Lou
18 Hill was necessary not only for purposes of possible
19 litigation but also to respond to any law enforcement
20 requests for information?
21 A Yes.
22 Q Now, Cindy Lou Hill died on the evening of August 25th,
23 2018. What was the earliest point in time that Spokane
24 County Detention Services understood that it was
25 obligated for purposes of potential litigation to

```
 1         preserve all written and electronically stored
 2         information pertaining to her confinement in the jail?
 3                        MR. JUSTICE:  Object to the form.
 4              You can answer.
 5    A    Okay.  I don't know the date or the time approximately,
 6         but I -- on any of these circumstances we collect all of
 7         the evidence, including video and anything else that we
 8         can collect.
 9    Q    (By Mr. Budge)  And so as of the date of Cindy Lou Hill's
10         death, as of that very evening, is it accurate to say
11         that Spokane County Detention Services knew and operated
12         pursuant to the understanding that it was obligated to
13         preserve all video and other electronically stored
14         information?
15    A    Again, I wasn't in the building at the time, but I
16         would -- there -- I would assume that the sergeants and
17         the lieutenants on scene would have collected all of that
18         up.
19    Q    Right.
20    A    Yeah.
21    Q    My question is slightly different.  I just want to
22         establish for purposes of the record that Spokane County
23         Detention Services knew as a general matter promptly
24         following Ms. Hill's death that it was obligated to
25         preserve all video and electronically stored information
```

1 surrounding her confinement; correct?
2 A Yes.
3           MR. JUSTICE: Object to the form.
4 A Yes.
5           MR. JUSTICE: Go ahead.
6 Q (By Mr. Budge) Now, as of August 25th, 2018, the usual
7    and ongoing understanding and custom was that Spokane
8    County Detention Services would preserve for purposes of
9    civil litigation all written and electronically stored
10   information, including videos, pertaining to the
11   confinement of a deceased inmate; is that right?
12          MR. JUSTICE: Objection. Asked and
13   answered.
14     You can answer.
15 A Yeah. That's correct. We --
16 Q (By Mr. Budge) Okay. I'm going to show you now
17   Exhibit 3 to your deposition, and this, as you'll see, is
18   a document titled "Cindy Lou Hill Death Review."
19     And I'll just go ahead and give you the opportunity
20   to scroll through that, if you would, and just tell me if
21   you recognize that.
22 A I recognize that as the document that Dr. Hammond
23   prepared.
24 Q Okay. So this was the written death review conducted by
25   Dr. Hammond at the request of Spokane County Detention

1          know what the policies say, and the policy says that you
2          will go up to their windows; you will peer in the
3          windows.  You'll make sure that you have signs of life,
4          sight and sound, like I just said, or try to engage them
5          in conversation, unless you see something out of the
6          ordinary, and then -- in which case they would do more.
7   Q      Was there any type of training program or training that
8          was specifically given to the officers at the Spokane
9          County Jail as of August of 2018 on exactly what they
10         were supposed to do when their duties included medical
11         watch of inmates?
12  A      Yes.  We have an FTO program, which is a program that
13         they're trained by a seasoned officer to go through, and
14         they also receive training from the Washington State
15         Criminal Justice Training Center.  At the time it was a
16         four-week academy.  Now it's -- or a six-week academy.
17         Now it's ten weeks, I guess.
18  Q      Have you reviewed the deposition transcripts of any of
19         the officers who were charged with monitoring Cindy Lou
20         Hill on the date of her death?
21  A      I have not.
22  Q      If you look at Exhibit No. 6, which is the medical watch
23         form for Cindy Lou Hill, do you see that in the lower
24         part of the form that there are handwritten entries at
25         10:15, 11:09, 11:23, 12:07, 12:40, and then continuing

```
 1      13:10, 13:43, 13:58, 14:30, 15:00, and 15:20?
 2  A   I do.
 3  Q   Can you think of any way to verify that these checks
 4      actually occurred?
 5  A   I do.
 6  Q   And what way would that be?
 7  A   As I stated earlier, the sergeants review them.  Now they
 8      review them, but also through video -- they would be able
 9      to monitor them through video.
10  Q   Okay.  So we could review the video from the hallway
11      located outside cell 2 West 27; right?
12  A   If the camera angle is -- yeah -- is appropriate, yes.
13  Q   And the video surveillance from that camera angle looking
14      down the hall would tell us whether the checks occurred
15      at the documented times, who was at the cell door, and
16      how long the corrections officer paused at the cell door,
17      if they in fact went?
18  A   Correct.
19  Q   Would it have been appropriate for Spokane County
20      Detention Services to destroy or fail to preserve or
21      allow to be destroyed the video from the hallway outside
22      cell 2 West 27 for the period of time from 9:15 a.m. to
23      4 p.m., a time period that would have encompassed all of
24      the supposed checks following the death of Ms. Hill?
25                    MR. JUSTICE:  Object to the form.
```

1    You can answer.
2  A  Well, number one, do you have the videotape from that
3     period of time?
4  Q  (By Mr. Budge)  Answer my question, sir.  Would it have
5     been appropriate for Spokane County Detention Services to
6     destroy or fail to preserve that portion of the video?
7               MR. JUSTICE:  Object to the form.
8     You can answer.
9  A  It would not have been appropriate.  However, our system
10    has a purging system, an automatic purging system, and
11    I'm not sure if this took place when that was in place.
12 Q  (By Mr. Budge)  But if the Spokane County Detention
13    Services had 60 days following the death of Ms. Hill to
14    preserve all video relating to her confinement, will you
15    agree with me that it would not have been appropriate for
16    Spokane County Detention Services to allow all of the
17    video from the afternoon of her date of -- date of her
18    death that could have been used to verify the nature and
19    the existence of these checks to be destroyed?  Would you
20    agree?
21 A  I agree, within the 60 days.
22 Q  Are you aware, as you sit here today, whether or not the
23    video from the hallway outside cell 2 West 27 from 9:15
24    all the way through 4:00 in the afternoon was preserved
25    or alternatively allowed to be destroyed?

1  A  I'm not sure.

2  Q  Can you think of any good reason why Spokane County
3     Detention Services would have allowed that portion of
4     video from 9:15 a.m. to 4:00 in the afternoon to be
5     destroyed and failed to preserve it, assuming that it had
6     60 days to do the necessary preservation?
7                 MR. JUSTICE:  Object to the form.
8        You can answer.
9  A  I see no reason for it to be destroyed.
10 Q  (By Mr. Budge)  Are you aware of any written policies
11    from Spokane County Detention Services on the subject of
12    what corrections officers were supposed to do when they
13    were charged with the duty of medical watch?
14                MR. JUSTICE:  Objection.  Asked and
15    answered.
16       You can answer.
17 A  I haven't reviewed the policy on that portion for a
18    while, so I would want to, you know, review it, but off
19    the top of my head, I think it's covered in doing their
20    rounds, yes, not specifically for medical watches.
21 Q  (By Mr. Budge)  Right.
22 A  Okay.  For watches.
23 Q  Okay.  My question is, for medical watch are you aware of
24    any specific written policy from Spokane County Detention
25    Services that's designed to explain to the guards who

```
 1  STATE OF WASHINGTON  )      I, Valerie L. Torgerson, CCR, RPR,
                         ) ss  a certified court reporter
 2  County of Pierce     )      in the State of Washington, do
                                hereby certify:
 3
 4
         That the foregoing deposition of MICHAEL SPARBER was
 5  taken before me and completed on August 16, 2021, and
    thereafter was transcribed under my direction; that the
 6  deposition is a full, true and complete transcript of the
    testimony of said witness, including all questions, answers,
 7  objections, motions and exceptions;
 8       That the witness, before examination, was by me duly
    sworn to testify the truth, the whole truth, and nothing but
 9  the truth, and that the witness reserved the right of
    signature;
10
         That I am not a relative, employee, attorney or counsel
11  of any party to this action or relative or employee of any
    such attorney or counsel and that I am not financially
12  interested in the said action or the outcome thereof;

13       That I am herewith securely sealing the said deposition
    and promptly delivering the same to Edwin S. Budge.
14
         IN WITNESS WHEREOF, I have hereunto set my signature on
15  the 23rd day of August 2021.

16

17

18                                    [signature]
19                                    _____
                                      Valerie L. Torgerson, CCR, RPR
20                                    Certified Court Reporter No. 2036
                                      (Certification expires 09/3/21.)
21

22

23

24

25
```