Budge & Heipt, PLLC
808 E. Roy St.
Seattle, WA 98102
(206) 624-3060

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

THE ESTATE OF CINDY LOU HILL, by
and through its personal representative,
Joseph A. Grube; and CYNTHIA
METSKER, individually,

                Plaintiffs,

vs.

NAPHCARE, INC, an Alabama
corporation; HANNAH GUBITZ,
individually; and SPOKANE COUNTY,
a political subdivision of the State of
Washington,

                Defendants.

No. 2:20-cv-00410-MKD

PLAINTIFFS' OPPOSITION TO
SPOKANE COUNTY'S MOTION FOR
SUMMARY JUDGMENT[1]

Noted for consideration on
March 7, 2022

---

[1] Defendant's motion is moot if the Court grants Plaintiffs' pending Rule 37(e)

Motion for Default Judgment. ECF No. 28.

PLAINTIFFS' OPP'N TO COUNTY'S MOT. FOR
SUMM. J.

# TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................... 1

II.  STATEMENT OF FACTS ......................................................... 2

III.  ARGUMENT............................................................................. 2

    A.  Summary Judgment Standard ............................................ 2

    B.  Spokane County is liable for relying on untrained jail guards
       to medically monitor seriously ill inmates. ........................ 3

        1.  The County violated the Fourteenth Amendment by
           establishing a "medical watch" practice that created
           a substantial risk of harm to vulnerable inmates. ................. 3

           (a)  Cindy Hill was deprived of her constitutional right
               to adequate medical care.................................... 4

           (b)  Spokane County has a longstanding practice of relying
               on untrained corrections officers to monitor patients with
               acute medical needs. ...................................... 8

           (c)  Spokane County's medical watch practice reflects
               deliberate indifference to detainees' serious medical
               needs. ............................................................. 10

           (d)  The County's medical watch practice was the moving
               force behind Ms. Hill's death. ........................... 14

        2.  The County negligently caused Ms. Hill's death by making
           non-medically trained jail guards responsible for
           monitoring her when she was suffering from an acute and
           serious illness. ....................................................... 17

    C.  Spokane County is liable for the negligent and unconstitutional
       practices of NaphCare and Nurse Gubitz. ........................ 19

BUDGE⬥HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

**IV.    CONCLUSION** ..................................................................................20

PLAINTIFFS' OPP'N TO COUNTY'S MOT. FOR
SUMM. J.

BUDGE❦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

# I. INTRODUCTION

Cindy Hill died on the floor of her Spokane County Jail cell roughly eight hours after a nurse ordered that she be placed on a twice-hourly "medical watch" due to her extreme abdominal pain. She died an agonizing death, ultimately succumbing to overwhelming sepsis caused by a rupture in her intestine that allowed gastric fluid to leak into her abdomen, inciting profound shock and eventual cardiac arrest. Ms. Hill was a victim of a longstanding practice at the jail of relying on corrections officers with no medical training to "monitor" inmates with serious and acute medical needs. During the excruciating eight-hour period prior to her death, instead of being attended by qualified medical professionals who could diagnose and treat her condition, Ms. Hill was left alone in one of the jail's "medical watch" cells, where officers would walk by periodically, peer into her cell, and simply note whether she appeared to be awake or asleep.

Defendant Spokane County is not entitled to summary judgment. Testimony from the County's own witnesses confirms the existence and nature of the jail's "medical watch" practice, which subjects seriously ill persons in the County's custody to a substantial risk of harm and was the moving force behind Cindy Hill's suffering and death. The County is liable for the harm caused by its unconstitutional and negligent procedures for medically monitoring acutely ill patients at the jail.

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

Furthermore, because the County cannot contract away its legal duty to provide adequate medical care to the persons confined in its jail, it remains liable for the unconstitutional and negligent acts committed by its co-defendants, Nurse Hannah Gubitz and NaphCare, Inc. The County wholly ignored this independent ground for relief in its motion, precluding summary judgment on that basis alone.

## II. STATEMENT OF FACTS

The facts supporting Plaintiffs' opposition to Spokane County's summary judgment motion are set forth in Plaintiffs' Statement of Disputed Material Facts and Statement of Facts in Opposition to Summary Judgment.

## III. ARGUMENT

Spokane County's longstanding practice of relying on corrections officers with no medical training to monitor acutely ill patients was both negligent and deliberately indifferent to the constitutional right of County detainees to receive adequate medical care. Because the County's unconstitutional "medical watch" practice was the moving force behind Cindy Hill's suffering and death, it is liable for the losses suffered by her estate and her surviving daughter. The County is also liable for the unconstitutional and negligent acts of its co-defendants.

### A. Summary Judgment Standard

"Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law."

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

*Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 677 (9th Cir. 1984). In considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008).

**B.     Spokane County is liable for relying on untrained jail guards to medically monitor seriously ill inmates.**

Spokane County has a duty under both state and federal law to provide adequate medical care to the individuals in its custody. *J.K.J. v. City of San Diego*, No. 20-55622, 2021 U.S. App. LEXIS 33778, at *16 (9th Cir. Nov. 15, 2021); *Shea v. Spokane*, 17 Wn. App. 236, 242, 562 P.2d 264, 268 (1977). The County violated those duties by relying on untrained custody officers to medically monitor patients with serious medical needs, a practice that led to Ms. Hill's death.

**1.     The County violated the Fourteenth Amendment by establishing a "medical watch" practice that created a substantial risk of harm to vulnerable inmates.**

To establish liability against Spokane County for violating the Constitution, Plaintiffs must show (1) that Cindy Hill was deprived of a constitutional right, (2) that Spokane County had a longstanding practice or custom, (3) that the practice or

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

custom was deliberately indifferent to a substantial risk of serious harm, and (4) that the practice or custom caused harm to Plaintiffs. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073-74 (9th Cir. 2016) (en banc). "Whether a policy or custom exists, as well as whether it created a substantial risk of serious harm, is generally a question of fact for the jury." *Fricano v. Lane Cty.*, No. 6:16-cv-01339-MC, 2018 U.S. Dist. LEXIS 96521, at *30 (D. Or. June 8, 2018) (citation omitted).

      **(a)    Cindy Hill was deprived of her constitutional right to adequate medical care.**

The Fourteenth Amendment guarantees the right to adequate medical care for jail detainees who, like Ms. Hill, have not been convicted of a crime. *Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003). A jail official violates that right when (1) she makes an intentional decision with respect to the detainee's conditions of confinement; (2) those conditions put the detainee at substantial risk of suffering serious harm; (3) the jail official does not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would appreciate the high degree of risk involved, making the consequences of the official's conduct obvious; and (4) by not taking such measures, the official causes injury to the detainee. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "With respect to the third element, the [jail official's] conduct must be

BUDGE⬥HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (citations omitted).

Ms. Hill was deprived of her constitutional right to adequate medical care when Nurse Gubitz responded to her extreme and unexplained abdominal pain by transferring her to another unit of the jail—where she would receive no medical attention whatsoever for at least the next five hours—rather than sending her to a hospital ER or referring her to a higher-level medical provider. That decision put Ms. Hill at substantial risk of serious harm. Ex. V (Roscoe expert report) at 13-14 ("By placing patients like Ms. Hill in a Medical Watch unit that provided no real health monitoring as their condition required, NaphCare and its staff were exposing their patients to a substantial risk of serious harm.").

Nurse Gubtiz' decision to leave Ms. Hill suffering in acute, severe pain— pain that caused her to scream upon the lightest touch and to curl into the fetal position—for several hours, rather than arranging for her to receive prompt attention from a medical provider capable of diagnosing and treating the cause of her pain, was objectively unreasonable. According to Dr. Emily Feely, NaphCare's chief medical officer at the time of Ms. Hill's death, it is not acceptable to leave a patient to suffer without doing anything to treat such pain. Ex. W (Dep. of Dr. Emily Feely) at 48:14 – 49:21. Nurse Gubitz did not doubt that Ms. Hill was suffering severe abdominal pain in the morning of August 25, 2018. Ex. F (Dep. of

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

Hannah Gubitz) at 61:8-25. However, she did nothing to help alleviate it. Balson decl. ¶ 32. Instead, she left Ms. Hill to suffer in excruciating pain for the next several hours until she died. This alone constitutes deliberate indifference, even under the more demanding standard of the Eighth Amendment. *See Watson v. Wash. Dep't of Corr.*, No. C17-5968-BHS-TLF, 2018 U.S. Dist. LEXIS 220412, at *11-12 (W.D. Wash. Nov. 15, 2018) ("[W]e have long held that the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.") (quoting *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003)).

Nurse Gubitz knew that the kind of extreme abdominal pain with which Ms. Hill presented was symptomatic of multiple life-threatening conditions requiring urgent medical attention, none of which she was able to rule out. Ex. F at 20:5 – 23:3, 66:19 – 68:3. Nonetheless, she decided not to refer Ms. Hill to higher-lever care to diagnose and treat the cause of her pain. Instead, she transferred Ms. Hill to a "medical watch" unit, where she would receive no medical attention for several hours.

Nurse Gubitz' actions violated NaphCare's own written policy. At the time of Ms. Hill's detention, NaphCare had a policy that required nurses to use "nursing assessment protocols" when providing clinical care. Ex. X. The protocols expressly required nurses to "NOTIFY [the] Provider and begin treatment" when a patient

PLAINTIFFS' OPP'N TO COUNTY'S MOT. FOR
SUMM. J. – Page 6

BUDGE HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

with abdominal pain was in "acute distress." Ex. Y at 3 (emphasis in original).

Nurse Gubitz knew Ms. Hill was in acute distress. Ex. F at 166:5-13. Yet she failed

to notify a provider or begin treatment, as required.

Lori Roscoe, Plaintiffs' correctional nursing expert, explains how Nurse

Gubitz acted unreasonably in her response to Ms. Hill's severe pain:

> The standard of nursing care required RN Gubitz to contact a provider about Ms. Hill's condition when she was presented with being too sick to move; lying in a fetal position; screaming in pain generally and then screaming louder when RN Gubitz came close to do the abdominal palpation; screaming with light palpation of the abdomen and back; and pain in her right lower quadrant. When she failed to do so and instead placed Ms. Hill on Medical Watch on the morning of August 25th, the standard of care required that RN Gubitz complete a reassessment of her abdominal pain, to have occurred many hours prior to the attempted COWS monitoring that afternoon. Prudent nursing care for a patient screaming in severe right lower quadrant abdominal pain, who was lying in a fetal position on the floor and could not move because of the pain dictates that a reassessment is done within one to two hours to determine if the patient is improving, staying the same, or deteriorating. After the reassessment was completed, RN Gubitz should have contacted the provider to report Ms. Hill's condition at that time. Although Ms. Hill was placed on Medical Watch, where purportedly she would be checked every thirty minutes, that did not substitute for the required nursing physical reassessment. The failure of RN Gubitz to return timely to Ms. Hill and conduct a reassessment of her pain and general condition significantly breached the standard of nursing care.

Ex. V at 11-12.

Plaintiffs' physician experts will testify that Ms. Hill likely would have

survived her abdominal peritonitis had she been sent to a hospital prior to the time

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

she lost consciousness in the late afternoon or early evening of August 25, 2018. Ex. M (Schubl report) at 7; Ex. Z (Barnett report) at 8. Nurse Gubitz' failure to obtain the urgent care Ms. Hill desperately needed caused her to experience extraordinary levels of pain and ultimately caused her death.

A jury could easily conclude that Nurse Gubitz violated Ms. Hill's Fourteenth Amendment right to adequate medical care by placing her on "medical watch" rather than obtaining appropriate medical care for her. That decision exposed Ms. Hill to a substantial risk of serious harm, as it virtually guaranteed that she would not be seen by a single medical provider for several hours, that she would continue to suffer excruciating pain, and that responsibility for monitoring her medical condition would be passed to unqualified corrections officers who did no more than look in her cell periodically and note whether she was awake or asleep. Nurse Gubitz' failure to obtain necessary medical care for Ms. Hill was objectively unreasonable and caused her suffering and death.

**(b)** **Spokane County has a longstanding practice of relying on untrained corrections officers to monitor patients with acute medical needs.**

The second element of Plaintiffs' constitutional claim against Spokane County requires Plaintiffs to show that the County had a longstanding practice or custom. A practice or custom is "any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure." *Castro v. Cty. of Los*

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

*Angeles*, 833 F.3d at 1074 (approving jury instruction). Here, it is undisputed that Spokane County has a longstanding, well-settled practice of relying on untrained jail guards to conduct "medical watch" for acutely ill patients.

Director Michael Sparber is the highest-ranking official in charge of the Spokane County Jail. Ex. I (Sparber dep.) at 6:17-22, 8:5-8. He confirmed in his deposition that the corrections officers responsible for conducting "medical watch" are not medically trained. *Id*. at 82:4-13. He explained:

> Generally the watches are handled by—not generally. Most—probably always handled by the guards, and they're the ones that go by and check the cells. They're not medically trained, but they are trained to observe, and if they find, as in this case, that the individual wasn't moving, then they respond and call for medical staff to respond.

*Id*. at 83:13-19. When asked "why a person on medical watch is being watched by nonmedically trained guards as opposed to a medically trained person," Director Sparber responded as follows:

> It's been our—it's been our policy. It's been our practice. I know primarily it's because the officers are required to do 30-minute rounds anyway, and it—the 2 West is—has been set up and created in a way that it allows better observation along the officer station, and then I'm sure that the nurse has got other DT protocols and other things that she's attending to as well, but other than a nurse checking in on them—ideally that would be the best, if they were making the 30-minute rounds, but that hasn't been our practice, so . . .
> . . .
> I think that it's been our practice since I started in 1988.

BUDGE✦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

*Id.* at 84:21 – 85:12.

In other words, even though Director Sparber acknowledges it would be better for patients on medical watch to be monitored by nurses, it has been the jail's practice for more than 30 years to have such patients monitored by corrections officers with no medical training. Based on Director Sparber's testimony, the existence of the County's longstanding practice for monitoring patients on medical watch can hardly be disputed.

**(c)    Spokane County's medical watch practice reflects deliberate indifference to detainees' serious medical needs.**

The customs and practices of a local government entity evidence deliberate indifference "when the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] is so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)) (alterations in original). "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Id.*

According to Nurse Gubitz, the medical watch cells on 2W are for patients who needed "acute medical monitoring." Ex. F at 170:5-6. However, the County's standard practice is to delegate responsibility for such monitoring to jail guards

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE:  (206) 624-3060

who are not trained for the task. *See* Ex. H (Dep. of Spokane County Jail Lieutenant Don Hooper) at 16:23 – 17:16 (testifying that officers on 2W are not trained on how to medically monitor patients on medical watch or assess them for medical symptoms). The officers assigned to 2W are not required to have any special skills, qualifications, or experience, and the County does not provide them with any training beyond that provided to all officers generally. They are simply expected to look in the patient's cell, confirm the patient is alive, and record what they see—e.g., whether the patient is awake or asleep, eating, etc. *See also* Ex. G (medical watch form for Cindy Hill, documenting nothing other than whether she was asleep or awake, that she refused lunch at one point, and that she was taken to the hospital at some unrecorded time).

The form Spokane County uses to document medical watches lists more than a dozen medical symptoms that officers are supposed to recognize and report to medical staff. *Id*. Yet the County never trained its officers on how to assess a patient for such symptoms. And in fact, despite the explicit instructions on the medical watch form, County officials did not actually expect their officers to assess patients for the presence of those symptoms. They were not trained to recognize signs of distress; County officials expected them to rely on their intuition. Lt. Hooper admits that a patient might experience one of the symptoms listed on the medical watch form, but if there are no obvious signs, the officer won't necessarily

PLAINTIFFS' OPP'N TO COUNTY'S MOT. FOR
SUMM. J. – Page 11

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

recognize it. A typical "medical check," if the officer looked in the cell and did not see any immediate, obvious signs of distress, might last just two or three seconds.

Jail officials made no effort to coordinate medical watch procedures with NaphCare medical staff to ensure a common understanding of what the guards were supposed to do when performing medical watch. Consequently, Nurse Gubitz' understanding of the medical watch procedure was significantly different than the reality. For example, she expected officers to observe Ms. Hill every 30 minutes and ask her questions to assess whether she was experiencing worsening abdominal pain, nausea, or vomiting. Ex. F at 177:10 – 179:12. However, Lt. Hooper testified the officers were not trained on how to assess whether someone was experiencing pain, and if so, how severe it was. Ex. H at 40:20-23. Nurse Gubitz expected that a medical check would consist of something more than a quick glance to make sure the patient was awake, that it would last long enough for the officer to make contact and "have enough of a conversation to kind of quickly gauge better or worse, about the same." Ex. F at 181:7-14. But according to Director Sparber, officers are not required to converse with patients on medical watch. They are simply required to "make sure that they see signs of life," which could take just a few seconds. Ex. I at 57:13 – 58:4. Nurse Gubitz believed the officers charged with responsibility for medical watch would be able to distinguish between a patient who was sleeping from a person who was unconscious. Ex. F at

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

181:18-23. However, multiple officers responsible for medical watch on the day of Ms. Hill's death confirmed that was not the case.

Spokane County's "medical watch" practice consisted of little more than untrained jail guards peering into the cells of acutely ill patients for a few seconds, checking for signs of life, and quickly recording superficial observations, such as whether the patient appeared to be awake or asleep. Plaintiffs' corrections expert, Robert Ayers, reviewed the practice and concluded that it exposed inmates with acute medical needs to a substantial risk of harm:

> The [jail's] medical watch practice amounted to nothing more than the correctional officers on 2W doing their normal jobs. They were already required to do rounds every 30 minutes. The reality of those 30-minute checks is to make sure the inmate is where they are supposed to be and alive. Unless something is glaringly obvious, such as bleeding or unusual behavior, there is little likelihood a medical problem would be noticed during those routine 30-minute checks. This informal medical watch practice depended on clinically untrained correctional officers to recognize and report symptom changes without any written authorization or direction. . . . With more than 50 years of experience in the field of corrections it is my opinion that such an informal practice is haphazard and guaranteed to fail, putting inmates and detainees at substantial risk of suffering serious harm.

Ex. BB at 16-17.

Mr. Ayers further asserts that "[t]he risks posed by the County's medical watch practices should have been obvious to the jail's administrators and policymakers." *Id*. at 17. He wrote as follows in his report:

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

> I find it astonishing that over the course of 30 years a modern county jail in a metropolitan area hadn't come to the realization that a medical watch at least implies a medical process and that having clinically untrained staff make symptom assessments (particularly with no training or standards) is improper from a correctional standpoint. . . . It is inconceivable that [Director Sparber] did not understand the danger posed by having untrained staff perform an informal medical practice with poorly crafted policy and no procedure.

*Id.*

Based on the foregoing, a reasonable jury could easily conclude that the inadequacy of the County's medical watch practice was so obvious, and so likely to result in serious harm to acutely ill patients, that it reflected deliberate indifference to detainees' constitutional right to adequate medical care. *See, e.g., Sabbie v. Southwestern Corr., LLC*, No. 5:17cv113-RWS-CMC, 2019 U.S. Dist. LEXIS 214463, at *181-82, 189 (E.D. Tex. Mar. 6, 2019) (recommending denial of summary judgment for jail operator where "inmates who needed medical monitoring were placed in medical observation cells [in which] they would be monitored, not by medical personnel with medical training, but by jail security guards with no medical training" and where the jail operator "failed to give its security staff guidance on how to monitor inmates with serious medical needs").

### (d) The County's medical watch practice was the moving force behind Ms. Hill's death.

To satisfy the final element of this claim, Plaintiffs need only show that the

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

County's practice was the "moving force" behind Cindy Hill's suffering and death. *See Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1196 (9th Cir. 2002). In other words, Plaintiffs must simply show that the deficient practice was "closely related to the ultimate injury." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

As a direct result of the County's practice of having medically untrained jail guards monitor acutely ill patients, Ms. Hill was confined alone in a so-called "medical watch" cell, left to suffer with virtually no medical attention for more than eight hours. During most of that time, there is no evidence that anybody asked her about her symptoms, attempted to engage her in conversation, checked her vitals, or did anything more than briefly glance into her cell and record whether she appeared to be asleep or awake.[2] According to Plaintiffs' expert Dr. Sebastian Schubl, "The lack of evaluation between 8:45am and 3 pm, assuming that she was even actually evaluated at 3 pm on 8/25, is far too long of an interval for someone with a concerning new finding such as [Ms. Hill] developed, and this neglect

---

[2] The only possible interaction Ms. Hill had with a medical professional during her eight hours on medical watch was the alleged encounter with Nurse Gubitz at approximately 3:00 p.m., roughly two-and-a-half hours before a guard discovered her unconscious in her cell. Although Nurse Gubitz claimed that Ms. Hill sat up during that encounter, engaged in calm conversation, declined to be assessed, and appeared in no acute or immediate distress, Plaintiffs' physician expert asserts Nurse Gubitz' description is "medically impossible."

BUDGE&HEIPT,PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
Telephone: (206) 624-3060

compounded the error of not having her seen by a higher-level provider in the morning." Ex. M at 6.

Nurse Gubitz properly recognized that Ms. Hill was in acute distress and extreme pain when she saw her in the morning of August 25, 2018. But for the County's "medical watch" procedure, Nurse Gubitz would have had to respond to Ms. Hill's condition that morning by (1) sending her to the ER, (2) referring the case to a higher-level provider, or (3) ordering that she be monitored by a nurse or other medical professional. Had she done any of those things, Ms. Hill likely would have been transferred to an ER. *See* Ex. Z (Barnett report) at 7 ("If a medical provider had been consulted by Nurse Gubitz with the information she documented in the medical record after her 8:45am assessment on 8/25/18, it is more likely than not that she would have been instructed to transfer Ms. Hill to the Emergency Department for further evaluation."). Indeed, Dr. Jeffrey Maple, NaphCare's medical director at the Spokane County Jail at the time, testified that if Nurse Gubitz had contacted him on August 25 and reported the information she had documented in Ms. Hill's medical chart that morning, he likely would have recommended that Ms. Hill be taken to the ER. Ex. AA at 69:3 – 70:6. Had Ms. Hill been sent to the ER at any point prior to her losing consciousness late that afternoon, she likely would have survived. Ex. Z at 8; Ex. M at 7.

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

Following Ms. Hill's death, Spokane County retained Dr. Steven Hammond, former chief medical officer for the Washington Department of Corrections, to review the circumstances leading to her death. Ex. I (Sparber dep.) at 27:11-17, 29:24 – 30:2. Among his other conclusions, Dr. Hammond wrote, "In retrospect, more thorough medical evaluation and closer clinical monitoring might have resulted in earlier transfer to the hospital, before she had a cardiac arrest, which could have changed the outcome in this case." Ex. CC at 6.

In sum, Spokane County had a longstanding practice of relying on guards with no medical training to clinically monitor seriously ill detainees. This practice put such detainees at substantial risk of serious harm, reflected deliberate indifference to the constitutional rights of those in the County's custody, and led directly to Ms. Hill's death. For these reasons, the Court should deny summary judgment on Plaintiffs' Fourteenth Amendment claim against the County.

**2. The County negligently caused Ms. Hill's death by making non-medically trained jail guards responsible for monitoring her when she was suffering from an acute and serious illness.**

Plaintiffs' negligence claim against Defendant Spokane County is premised on the same facts that support their constitutional claim—i.e., that the County's practice of having non-medically trained corrections officers provide medical monitoring to inmates with serious medical needs breached the duty it owed to those in its custody and caused Ms. Hill's death.

BUDGE✦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

"The elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400, 406 (1999) (citation omitted). "Breach and proximate cause are generally fact questions for the trier of fact." *Id.*

As noted above, Spokane County had a duty under state law to provide Ms. Hill with adequate medical care. *Shea v. Spokane*, 17 Wn. App. at 242. ("When a city takes custody of a prisoner, it must provide health care for that prisoner. This is a positive duty arising out of the special relationship that results when a custodian has complete control over a prisoner deprived of liberty.") (citation omitted). A reasonable jury could find that the County breached that duty when it assigned officers with no medical training to monitor Ms. Hill when she was in acute distress and suffering from extreme, unexplained abdominal pain. Plaintiffs' corrections expert Robert Ayers describes the County's breach as follows:

> The informal medical watch practice at SCJ blurred the functional lines between health care staff and custody staff and virtually assured failure to provide health care meeting the industry standards in correctional settings. Based on my long association with health care professionals and my experience in developing corrective action plans for correctional health care judicial findings, I can find nothing in this medical watch practice that meets the standards of care in a modern detention environment.

Ex. BB at 16. Mr. Ayers further opines that the County's practice, which

BUDGE⬥HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

relied on clinically untrained correctional officers to recognize and report symptom changes, was "haphazard and guaranteed to fail, putting inmates and detainees at substantial risk of suffering serious harm." *Id*. at 16-17.

Reasonable jurors, viewing all facts and drawing all inferences in Plaintiffs' favor, could easily conclude that Spokane County breached its duty to provide Ms. Hill with adequate medical care, proximately causing her death. Therefore, the Court should deny summary judgment on Plaintiffs' negligence claim.

**C.     Spokane County is liable for the negligent and unconstitutional practices of NaphCare and Nurse Gubitz.**

Although the County is free to contract with a third party to provide medical services to those detained in its jail, doing so does not relieve it of its constitutional duty to provide detainees with adequate medical care. *Lemmons v. Cty. of Sonoma*, No. 16-cv-04553-WHO, 2018 U.S. Dist. LEXIS 7526, at *8 (N.D. Cal. Jan. 17, 2018) (citing *West v. Atkins*, 487 U.S. 42, 55 (1988)). The County's constitutional duty is non-delegable, and it remains liable for any constitutional deprivations caused by NaphCare's policies, customs, or practices. *Id*. at *8-9 ("By ceding control and final decision making to [a private contractor] as it relates to providing adequate healthcare to its prisoners, [the contractor's] policies effectively become the policies of [the] County. If [the contractor's] policies or customs resulted in

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE:  (206) 624-3060

unconstitutionally inadequate treatment, [the] County could be held liable given their non-delegable duty to comply with the Constitution.").

The same basic principle applies to the County's duty under state law. *See Shea v. Spokane*, 17 Wn. App. at 242 ("It is apparent that the City's duty must go beyond the mere exercise of ordinary care in the selection of a jail physician . . . . Rather, the City's liability includes the negligence of the jail physician because the duty to keep the prisoner in health is nondelegable."), *aff'd*, 90 Wn.2d 43 (1978).

Spokane County wholly ignored Plaintiffs' claims based on the non-delegable duty doctrine. It did not address the alleged negligence and constitutional violations by Nurse Gubitz and NaphCare—let alone establish a lack of factual issues pertaining to those allegations. And it failed to demonstrate it is entitled to judgment on those claims as a matter of law. Accordingly, the County has not satisfied its summary judgment burden regarding those claims and the Court should deny its motion.

## IV. CONCLUSION

Reasonable jurors viewing the facts in Plaintiffs' favor could easily find that Spokane County's longstanding "medical watch" practice subjects jail detainees with acute medical needs to a substantial risk of serious harm and that it was the moving force behind Cindy Hill's suffering and death. The County has failed to demonstrate it is entitled to summary judgment. The Court should deny its motion.

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

Respectfully submitted this 4th day of February, 2022.


**BUDGE & HEIPT, PLLC**
808 E. Roy St.
Seattle, WA 98102


_____s/ Hank Balson_____
Hank Balson, WSBA #29250
Edwin S. Budge, WSBA #24182
Erik J. Heipt, WSBA #28113
hank@budgeandheipt.com
ed@budgeandheipt.com
erik@budgeandheipt.com
(206) 624-3060
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the date stated below this document was filed with the Clerk of the Court for the United States District Court for the Eastern District of Washington, via the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Ketia B. Wick, WSBA #27219 | John E. Justice, WSBA #23042 |
| Erin E. Ehlert, WSBA #26340 | Law, Lyman, Daniel, Kamerrer & |
| Fain Anderson VanDerhoef Rosendahl | Bogdanovich, P.S. |
| 701 Fifth Avenue, Suite 4750 | PO Box 11880 |
| Seattle, WA 98104 | Olympia WA 98508 |
| ketia@favros.com | jjustice@lldkb.com |
| erine@favros.com | (360) 754-3480 |
| Attorneys for Defendants NaphCare, | Attorney for Defendant Spokane |
| Inc., and Hannah Gubitz | County |

Dated this 4th day of February, 2022.


 s/ Hank Balson
Hank Balson

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060