Fain Anderson VanDerhoef Rosendahl
O'Halloran Spillane PLLC
701 Fifth Avenue, Suite 4750
Seattle, WA 98104
Phone: (206) 749-0094

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE ESTATE OF CINDY LOU HILL, by and through its personal representative, Joseph A. Grube; and CYNTHIA METSKER, individually, | NO. 2:20-cv-00410-RMP |
| Plaintiffs, | DECLARATION OF KETIA B. WICK IN SUPPORT RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF CERTAIN EXPERT WITNESSES IDENTIFIED BY DEFENDANTS NAPHCARE AND GUBITZ |
| v. | |
| NAPHCARE, INC., an Alabama corporation; HANNAH GUBITZ, individually; and SPOKANE COUNTY, a political subdivision of the State of Washington, | |
| Defendants. | |

I, Ketia B. Wick, declare as follows:

1.    I am one of the attorneys representing Defendants NaphCare Inc. and Hannah Gubitz in this lawsuit.  I am over the age of 18 and competent to testify as to the statements in this declaration.  I make the following statements based upon personal knowledge.

2.    Attached are true and correct copies of the following:

**Exhibit A:**    **Expert Report of Craig Pepin, M.D.**

**Exhibit B:**    **Expert Report of Michael McMunn, D.P.N.**

**Exhibit C:**    **Supplemental Report of Michael McMunn, D.P.N.**

- 1

3.      This lawsuit was filed on November 19, 2020.  The first trial date in this matter was set for July 11, 2022 and there have been no continuances.  The expert reports from all parties were due on December 18, 2021.  Rebuttal expert reports were due on January 14, 2022.  The discovery cutoff date was February 11, 2022.  All reports from all parties were exchanged according to the Jury Trial Scheduling Order.

4.      In compliance with the Jury Trial Scheduling Order, the parties modified the exchange of rebuttal expert disclosures for Dr. Michael McMunn by joint stipulation filed with the Court.

5.      I have reviewed all of the Plaintiffs' expert reports in this case, and no one provides an opinion that there was an administrative or organizational barrier to care in the treatment of Ms. Hill.

The foregoing statements are made under penalty of perjury under the laws of the State of Washington.

Signed in Seattle, WA this 21st day of March, 2022.


      *s/Ketia B. Wick*
      Ketia B. Wick, WSBA #27219
      Attorney for Naphcare Inc. and Hannah Gubitz

      Fain Anderson VanDerhoef Rosendahl
      O'Halloran Spillane, PLLC
      701 Fifth Avenue, Suite 4750
      Seattle, WA 98104
      Phone: (206) 749-0094
      Fax: (206) 749-0194
      Email:  ketia@favros.com

FAIN ANDERSON VANDERHOEF
ROSENDAHL O'HALLORAN SPILLANE, PLLC
701 Fifth Avenue, Suite 4750
Seattle, WA  98104
p. 206-749-0094  ·  f. 206-749-0194

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF System. The NEF for the foregoing specifically identifies recipients of electronic notice.

| | |
|---|---|
| ***Counsel for Plaintiffs*** | ☐ Regular U.S. Mail |
| Erik J. Heipt, WSBA #28113 | ☐ Facsimile |
| Edwin S. Budge, WSBA #24182 | ☐ ABC Legal Messenger |
| Budge & Heipt PLLC | ☒ E-mail/ ECF |
| 808 East Roy Street | |
| Seattle, WA 98102 | |
| 206-624-3060 | |
| Fax: 206-621-7323 | |
| erik@budgeandheipt.com | |
| ed@budgeandheipt.com | |
| | |
| ***Counsel for Spokane County*** | ☐ Regular U.S. Mail |
| John E. Justice, WSBA #23042 | ☐ Facsimile |
| Law, Lyman, Daniel, Kamerrer & Bogdanovich, P.S. | ☐ ABC Legal Messenger |
| P.O. Box 11880 | ☒ E-mail/ ECF |
| Olympia, WA 98508 | |
| Ph: 360.754.3480 | |
| Email: jjustice@lldkb.com | |

Signed at Seattle, Washington this 21st day of March, 2022.

*/s/Alisha Chand*
Alisha Chand, Legal Assistant

DECLARATION OF KETIA B. WICK IN SUPPORT
RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE
TESTIMONY OF CERTAIN EXPERT WITNESSES
IDENTIFIED BY DEFENDANTS NAPHCARE AND
GUBITZ - 3

**FAIN ANDERSON VANDERHOEF**
**ROSENDAHL O'HALLORAN SPILLANE, PLLC**
701 Fifth Avenue, Suite 4750
Seattle, WA 98104
p. 206-749-0094 · f. 206-749-0194

# Exhibit A



CRAIG J. PEPIN, MD

The Polyclinic, Gastroenterology

1145 Broadway

Seattle, WA 98122

(206) 860-4677

December 16, 2021

**Re: Hill vs. Spokane County; NaphCare; Hannah Gubitz, RN**

Dear Ms. Wick and Ms. Ehlert,

I am writing to provide information for purposes of the expert disclosure requirements in this case. It is my understanding that there may be additional records to be obtained and depositions to be taken in this case. I reserve the right to supplement or change my opinions based on new or updated information, when received. Below, I have summarized my education, training, and credentials. In addition, I have attached my Curriculum Vitae, a list of testimony for the past 4 years, billing invoices for this case to date, and a summary of my opinions.

**Credentials:**

I completed my medical training at the University of Washington, School of Medicine, graduating with honors, in 1995. I completed by Internal Medicine Residency, followed by a Chief Residency at the University of Washington, in 1999. I completed my gastroenterology Fellowship at the University of California, San Francisco, in 2002. Since completing my training, I have been in practice at The Polyclinic, where I currently serve as gastroenterology department Practice Lead and Chair of the Peer Review Committee.

I have been board certified in gastroenterology since 2002. I have hospital privileges at Swedish Hospital. I have been voted Seattle magazine Top Doctor and/or Seattle Metropolitan magazine Top Doctor since 2008. My credentials to practice medicine have never been limited, revoked or suspended.

During my professional career, I have been asked to review medical cases involving gastroenterology issues to examine and comment on standard of care and causation. I have attached a list of my testimony for the past 4 years.

**Literature Relied on in this Report:**

None

**Record Review:**

In reaching my opinions in this case, I have reviewed the following documents and records:

- Naphcare Records (#1192435)
- Death Review (#1192437)
- AMR – Ambulance Recs (000764-000776) (#1192440)
- Providence Sacred Heart Medical Center - Med (000729-000763) (#1192436)
- Autopsy Report (#1192433)
- Autopsy Photos (#1218958)
- Complaint (#1192434)
- Deposition of Hannah Gubitz – Condensed (1218262) / Exhibit 20 (1218638)
- Deposition/Exhibits of Maple
- Deposition/Exhibits of Feely
- Deposition/Exhibits of Ordaz

**Medical Summary:**

Ms. Hill was a 55 year old woman with a past medical history of substance abuse, COPD and acid reflux. Ms. Hill had several prior arrests and bookings in the Spokane County Jail with medical details described in the NaphCare records.

Ms. Hill was arrested and booked into the Spokane County Jail on August 21, 2018. She was initially assigned into general population. On August 22, Ms. Hill was seen by a jail nurse and Ms. Hill reported she used heroin prior to incarceration and was experiencing withdrawal symptoms. Ms. Hill was placed on a COWS protocol (Clinical Opiate Withdrawal Scale) based on her reported use of drugs and the potential for developing withdrawal symptoms. On August 23-24, the patient's COWS assessments showed mild to moderate symptoms.

On August 25, at 08:43am, based on available testimony and discovery, Ms. Gubitz, RN, went to Ms. Hill's cell and Ms. Hill said she was too sick to move. The patient complained of abdominal pain. On exam, there was no bruising, swelling, redness, or masses noted on visual assessment or palpation of the

abdomen. The patient's vital signs were unremarkable, specifically the blood pressure BP was 130/86 mm Hg, heart rate 78 bpm, respiratory rate 16 bpm, SpO2 (oxygen level) of 95 %. Following the exam of Ms. Hill, the medical records indicate at 10:45 AM Ms. Hill was moved to the medical housing unit and put on 30 minute medical watches.

At approximately 4:10 PM Ms. Gubitz, RN, returned to evaluate the patient and the patient refused evaluation. Ms. Gubitz reported Ms. Hill appeared well. At 5:25 pm, the patient was found nonresponsive and CPR was administered. The patient was transferred to the hospital where she expired.


**Opinions:**

My opinions below are given with a reasonable degree of medical certainty and are based on my experience in the field of gastroenterology. I reserve the right to modify or change my opinions if provided additional materials for review.

1. **Orthostatic vital sign testing (vital signs taken when the patient is supine, and then again with the patient standing) would not have been helpful in the evaluation of this patient. Orthostatic vital signs can be useful in patients with suspected GI bleeding, but not in the evaluation of a patient with complaints of abdominal pain.**
2. **The patient's clinical course and underlying disease are remarkably atypical. Patients with a perforation uniformly have tachycardia and escalating pain complaints.**
3. **The cause of the perforation is unclear. While the autopsy shows the site of perforation in the duodenum to be in close proximity to an adhesion to the liver, the mechanism of how an adhesion, or scar tissue, would lead to or predispose a patient to a perforation is unknown and highly unusual and unpredictable.**
4. **The timing of the perforation is unclear. The patient's normal vital signs throughout her time in the jail from August 21, 2018 until August 25, 2018 argues against a perforation predating her arrival to the medical watch unit. Patients with a perforation of the GI tract uniformly have tachycardia and other symptoms objectively identified through the taking of vital signs as well as escalating pain complaints.**
5. **Had the perforation been identified, the patient would have required extensive surgery including a likely Whipple procedure with diversion of the GI tract around the duodenum. This surgery typically requires a lengthy stay in the hospital. Because this was such an unusual presentation of an exceedingly rare cause of perforation, no one can say what the patient's chances of recovery would have been from an emergent, extensive surgery to repair the duodenal perforation.**


Signed on December 16 2021 in Seattle, Washington

_____

Craig J. Pepin, MD

# Exhibit B

Hill v. NaphCare

No. 2:20-cv-00410-RMP

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

## **Preliminary Expert Report of Michael McMunn**

I am Board-Certified Family Nurse Practitioner with additional certification in correctional healthcare. I have 25+ years of experience as a registered nurse and 20+ years of experience as a nurse practitioner. I have worked in correctional healthcare for 20+ years and I have been certified for 15+ years in correctional healthcare. I currently devote more than 50% of my professional time to active clinical practice in correctional facilities. I have provided clinical services in more than 50 correctional facilities over the course of my career.

### I. Information Reviewed and Relied Upon in Forming my Opinions

I have worked in correctional facilities of similar size, scope, census and staffing. I have functioned in similar clinical roles in over 50 jail correctional settings. I have supervised physician assistants, nurse practitioners, registered nurses and licensed practical nurses. I possess experience to form an opinion about the relevant matters in this case. In formulating my opinions in this matter, I have relied on my education, knowledge and experience in the correctional healthcare industry as set forth above and in my curriculum vitae, which is attached as Exhibit A. My fee schedule is attached as Exhibit B. I reviewed and relied upon the following documents and data in connection with this case. I reserve the right to modify my findings, if new information or documents are later received (numbers per provided documents):

1. Complaint
2. Death Review and Summary
3. NaphCare Records
4. Deposition of Gubitz, CV + 18 exhibits
5. Deposition of Hooper + 11 exhibits

6. Deposition of Sparber + 9 exhibits
7. Deposition of Wirth + 2 exhibits
8. Deposition of Titchenal + 7 exhibits
9. Deposition of Millholland + 6 Exhibits
10. Deposition of Byington + 3 Exhibits
11. Autopsy Photos (128) and Autopsy Report
12. 6-2W Lwr Overflow Video *No Audio - (2:30:00) – Focused Review
13. (9) Valerus Videos *No Audio - (4:35:00) - Focused Review
14. Transcript of McNichol Statement pp. 6
15. Deposition of Ordaz + 5 exhibits
16. Deposition of Maple + 9 exhibits
17. Deposition of Feely + 9 exhibits
18. 2018 National Commission on Correctional Healthcare Jail Standards (NCCHC)

## II. Statement of Opinions and Factual Basis

**a.** Ms. Hill's relevant medical history-

1. COPD
2. Cigarette smoking
3. Illegal drug use – Methamphetamine
4. Illegal drug use – Heroin
5. Gastro Esophageal Reflux Disease (pre-incarceration)
6. Surgical history of cholecystectomy
7. Withdrawal symptoms during multiple previous incarcerations

**b.** Ms. Hill's relevant offered medication/treatment history -

1. Loperamide
2. Dicyclomine
3. Aluminum-Magnesium Simethicone Oral
4. Ibuprofen
5. Clonidine
6. Ondansetron

**c.** Relevant timeline (some documentation done in CDT)-

| | | | |
|---|---|---|---|
| 1. | 8/21/18 | 1449 | Initial screening, pulse 84, denies drug use |
| 2. | 8/21/18 | 1504 | Given oxygen by nursing staff for low saturation levels |
| 3. | 8/22/18 | 0936 | Seen by nurse |
| 4. | 8/22/18 | 1455 | Pulse 84 |
| 5. | 8/22/18 | 1756 | Pulse 71, COWS - 5 |
| 6. | 8/22/18 | 1838 | Pulse 93, COWS – 5 |
| 7. | 8/23/18 | 0501 | Refused to allow nursing staff to evaluate |
| 8. | 8/23/18 | 1005 | Pulse 87, COWS – 12 |
| 9. | 8/23/18 | 1737 | Refused to allow diagnostic testing |
| 10. | 8/24/18 | 0230 | Pulse 67 |
| 11. | 8/24/18 | 0843 | Pulse 67, COWS - 6 |
| 12. | 8/24/18 | 1037 | Pulse 82, COWS – 10 |
| 13. | 8/24/18 | 1655 | Refused to allow nursing staff to evaluate |
| 14. | 8/25/18 | 0144 | Refused to allow nursing staff to evaluate |
| 15. | 8/25/18 | 0945 | Placed on medical watch per severe abdominal pain |
| 16. | 8/25/18 | 0948 | Pulse 78 |
| 17. | 8/25/18 | 0951 | Refused to provide history or permit examination |
| 18. | 8/25/18 | 1724 | Found unresponsive in cell |
| 19. | 8/25/18 | 1727 | Medical called for assistance |
| 20. | 8/25/18 | 1800 | Declared deceased, pulse returned, transported to hospital |
| 21. | 8/27/18 | 0945 | Autopsy, abdominal adhesions and defects, toxicology positive for previously undisclosed methamphetamine |

Standard of Care –

The degree of care, expertise, and judgment exercised by a reasonable person under the same or similar circumstances.

Relevant Research –

1.  2018 National Commission on Correctional Healthcare Standards

## *Conclusions*

### NaphCare Nurses providing care

It is my expert opinion that the actions of the NaphCare Nurses providing care to Ms. Hill did meet the standard of care for a correctional healthcare setting.

1. Ordered evaluations and treatments were appropriate and timely.

2. The nursing staff respected Ms. Hill's multiple refusals.

3. Nursing response was appropriate to objective data.

4. Nursing response in view of Ms. Hill's failure to disclose drug use was appropriate.

5. Efforts to maintain hydration with high electrolyte fluids was above the standard of care.

### NaphCare providing care

It is my opinion that the actions of NaphCare providing care to Ms. Hill did meet the standard of care for a correctional healthcare setting. There is no evidence that there was any administrative or organizational barrier to care.

### Other General Opinions

1.  Ms. Hill's surgical history, risk factors and self determination to use methamphetamine put her at higher risk of a gastrointestinal event.

2. When an inmate has a long drug abuse history, refuses a Urine Drug Screen, and has an unknown recent history of drug use. It is the standard of care to assume up to 14 days of withdrawal symptoms are possible.

3. I would agree with the death review that determined this event was "abrupt/unusual". With pulse rates consistently below 100, there was no objective indication of active bleeding or acute sepsis.

### III. Exhibits

Exhibits listed within this report may be used in future testimony.

### IV. Qualifications

My qualifications are attached on my Curriculum Vitae, which is attached as Exhibit A. I am qualified to testify in this case due to my extensive experience working in correctional care facilities and in correctional health, as listed above.

### V. Testimony

I have been retained in 100+ correctional healthcare cases, with sizable shares by Plaintiff and Defendant. I have testified 20+ times, including:

*1. Laudermilk vs. CCS – Maine Superior Court - DOCKET NO. CV-17-25*

*2. Nishimoto vs. San Diego – US Southern District of California - Case No. 16-cv-1974 BEN JMA (twice)*

*3. Moriarty vs. San Diego – US Southern District of California - Case No. 3:17-CV-01154-LAB-AGS*

*4. Calvin vs. Pima County – Arizona Superior Court - No. C20164699*

*5. Milline vs. CCS - United States District Court - Michigan Southern Division - Case No. 2:17-cv-12723*

*6. Stahlhut vs. Corizon – United States District Court – District of Arizona – Case No. CV-17-03100-DJH-MHB*

*7. Alexander vs. Corizon – United States District Court – Michigan Southern Division – Case No. 17-11435 & 17-13749*

*8. Gaines vs. Corizon – Superior Court of Arizona – CV2016 – 000823*

*9. Hannah vs. Armor – United States District Court – Southern Florida Division – 8:19-cv-00596-JSM-SP*

*10. Power vs. State of Arizona – Superior Court of Arizona - CV2018 – 008861*

*11. McKee vs. CCS and Corizon – United States District Court – Western District of Arkansas – Hot Springs Division - Case No. 6:18-CV-06117-RTD*

*12. Kovalovsky vs. Mediko, et al. - United States District Court – District of South Carolina – Florence Division - Case No. 420-CV-00835-DCN-TER*

*13. Vester vs. QCHC, INC. et al. – United States District Court – Western Section of Tennessee – Western Division - Case No. 2220-cv-2401-SHL*

*14. Smith vs. Shy, et al. – United States District Court – District of Colorado - Civil Action No. 19-cv-02338-PAB-STV*

15. *Board vs. Primecare, et al. - Circuit Court of Kanawha County, West Virginia - Civil Action No. 18-C-456I*

16. *Charles Jones v. County of Kent et al. – United States District Court – Western District of Michigan - Case No. 1:20-cv-00036*

17. *Delk vs. Bumphus, et al. – United States District Court – Middle District of Tennessee – Columbia Division - Case No. 1:19-CV-0008*

18. *Gartman vs. QCHC, et al. – United States District Court – Middle District of Alabama - Case No. 2:18-cv-534-MHT*

In the last four years, I have not testified at trial, only at a panel hearing.

In the past ten years, I have not published a research article.

## VI. Compensation

My fee schedule is attached as Exhibit B.

I certify that these statements are true and correct to the best of my knowledge, to a reasonable degree of medical certainty. I reserve the right to modify my opinion as additional documents and evidence become available. Under penalty of perjury.

SIGNED,

Dr. Michael McMunn DNP APRN-BC, CCHP-MH, CCHP-A
Board Certified Family Nurse Practitioner
Advanced Certification in Correctional Healthcare by the National Commission on Correctional Healthcare
Report dated December 13, 2021

Exhibit A – Current Curriculum Vitae

# Dr. Michael McMunn DNP CCHP-A
## Expert Witness – Correctional Healthcare NP



| | |
|---|---|
| **Contact** | **Summary** |
| 4110 Lakeside Blvd. Monroe GA 30655 770-712-2210 contact@michaelmcmunn.com | Expert regarding Standard of Care determination in correctional healthcare settings for NP, PA, RN, LPN, CNA, MA and EMT function. Advanced Certification in Correctional Healthcare (CCHP-A), per the National Commission on Correctional Healthcare (NCCHC). Expert regarding Georgia correctional facilities, policies, current legal and political trends. Experience with Diagnostic Facilities, State Prisons, CI's, PDC's, Transitional Centers, YDC's, RYDC's and County Jails. |

| | |
|---|---|
| **Education** | **Experience** |

| Education | Experience | |
|---|---|---|
| University of North Georgia DNP Nursing – Graduation 2021 Doctoral Project – Rural Jail Suicide Coursework – Risk Management | Nurse Practitioner (APRN) - Southern Health Partners | 2002 to Present |
| | Nurse Practitioner (APRN) - Vista Healthcare Partners | 2002 to 2020 |
| Medical College of Georgia MSN Nursing – Graduation 2000 | Nurse Practitioner (APRN) - CareATC – Monroe | 2014 to 2019 |
| | Project Manager - The Little Clinic | 2008 to 2011 |
| Brenau University BSN Nursing – Graduation 1997 | Clinic and Project Development - MinuteClinic | 2005 to 2008 |
| Athens Technical College ADN Nursing – Graduation 1996 | College Instructor - Medical College of Georgia | 2002 to 2005 |
| | Clinic Director – The Bridge Institute (GA DJJ) | 2001 to 2002 |
| Emmanuel College AA Religion – Graduation 1987 | | |

| **NCCHC Certifications** | **Licenses, Qualifications, Memberships and Certifications** |
|---|---|
| CCHP-A – Advanced - 2020 CCHP-MH – Mental Health - 2013 CCHP - 2007 Moderator 2019 NCCHC National Conference Prison Standards Review | ANCC board certified as Family Nurse Practitioner since 2000 Licensed in Georgia as a RN and APRN (FNP) Current DEA authorization Content Reviewer – Journal of Correctional Health Member – Georgia Nursing Congress, Correctional Healthcare – 2 Terms Member – Academy of Correctional Professionals, ACA, GJA, and GSA |

**Previous Expert Witness Testimony Jurisdictions**

| | | | | |
|---|---|---|---|---|
| Alabama | Arizona | Arkansas | California | Colorado |
| Florida | Georgia | Illinois | Indiana | Kansas |
| Kentucky | Louisiana | Massachusetts | Maryland | Maine |
| Michigan | Montana | New Jersey | N. Dakota | Ohio    Oregon |
| Pennsylvania | S. Carolina | Tennessee | Virginia | West Virginia |

**Georgia Peace Officers Standards Training Council (POST)**

2021 Approved Trainer – Suicide Prevention Training in County Jails

## Exhibit B – 2021 Fee Schedule



### Expert Witness – Fee Schedule

# Dr. MICHAEL MCMUNN, APRN, DNP-BC, CCHP-A

| Effective 5/1/21 – 12/31/21 | Activity | Rate |
|---|---|---|
| **:eview Expert Services** | | |
| e activity, 30+ days before any verbal or written report is due. | | **$325/Hour** |
| **lates for Case Review Expert Services** | | |
| an 30 Full days before any verbal or written report is due. | | **$500/Hour** |
| | **Testifying for Deposition** | |
| Fee must be paid in advance by requesting attorney, a minimum of **21** days prior. | | **$2,000 Flat Rate 0.0-4.0 hours** |
| If cancelled or rescheduled, 21 or more days prior, full refund. | | |
| If cancelled or rescheduled, 8-20 days prior, 50% refund. | | |
| If cancelled or rescheduled, less than 7 days prior, no refund and no rescheduling without new fee. | | **$500.00/Hour thereafter** |
| All estimated travel expenses must be paid by requesting attorney, 21 days prior. | | |
| Half day rate is arrival time to departure time at location, 4 hours.  Continued questioning after 4 hours is billed. | | |
| | **Testifying for Panel Hearings, Trials, Arbitrations, and Mediations** | |
| Fee must be paid in advance by requesting attorney, a minimum of **21** days prior. | | **$5,000 per Trial Day Flat Rate 0.0-8.0 hours** |
| If cancelled or rescheduled, 21 or more business days prior, full refund. | | |
| If cancelled or rescheduled, 8-20 business days prior, 50% refund. | | |
| If cancelled or rescheduled, less than 7 business days prior, no refund and no rescheduling without new fee. | | **$500.00/Hour thereafter** |
| All estimated travel expenses must be paid by requesting attorney, 21 days prior. | | |
| Rate is arrival to departure time at location., 0.0-8.0 hours.  Time per day greater than 8 hours is billed @ $500 hr. | | |
| | **Travel Time for Testifying** | |
| Maximum 8 hours per day.  Overnight travel will be billed at 8 hours per day.  Time calculated door to door. | | **$250.00/Hour** |
| | **Billable Expenses** | **At Cost** |
| Billable expenses for supplies, postage, services, etc. are billed at cost. | | **$100 Daily for Meals** |
| Meals while traveling - $100 any portion of a day, flat rate. Prepaid. | | |
| **er – Rate is based on time remaining when funds/documents arrive until advised deadline** | | |
| | **60+ days until verbal or written report** | **$3,000 - includes first 8 hours of review.  $325 per hour for all review time over 8 hours.** |
| } is required before any services will be performed.  This credit includes the first 8 hours of activity and is non-refundable. | | |
| | **31-59 days until verbal or written report** | **$4,000 - includes first 8 hours of review.  $325 per hour for all review time over 8 hours.** |
| } is required before any services will be performed.  This credit includes the first 8 hours of activity and is non-refundable. | | |
| | **16-30 days until verbal or written report** | **$5,000 - includes first 8 hours of review.  $500 per hour for all review time over 8 hours.** |
| } is required before any services will be performed.  This credit includes the first 8 hours of activity and is non-refundable. | | |
| | **1-15 days until verbal or written report** | **$8,000 - includes first 8 hours of review.  $500 per hour for all review time over 8 hours.** |
| } is required before any services will be performed.  This credit includes the first 8 hours of activity and is non-refundable. | | |
| .ces will generally be submitted at the end of each month.  Invoices must be paid within 30 days, or case activity suspended until account is zero balance.  Balances 60+ days past due will be assessed a 5% monthly fee charged 1ˢᵗ of each month until paid in full.  Zero balance required for all document release and depositions.  If short ne, inquire about estimate to complete.  Submission of retainer constitutes absolute agreement with fee schedule ns and rates.  Date for deposition is only reserved with payment.  Do not use USPS for time critical payments. | | **REQUIRED TERMS** |

# Exhibit C

## Supplemental Addendum for discovery received after 12/13/21

### I. Additional Information Reviewed and Relied Upon in Forming my Opinions

I reviewed and relied upon the following documents and data in connection with this case. I reserve the right to modify my findings, if new information or documents are later received:

1. Barnett Report
2. Schubl Report
3. Roscoe Report
4. Ayers Report
5. Bartley Report

As to items 4 & 5, I reviewed the reports of the security experts, but I am not providing any opinions or responses since I am not an expert in security

### II. Statement of Opinions and Factual Basis

**a. In addition to the opinions that I stated in my original report, I further respectfully disagree with Dr. Barnett's following opinions:**

1. p.6 (#4 under Medical Opinions) – Dr. Barnett refers to RN. Gubitz as a trained medical professional. She is not a trained medical professional; she is a trained nursing professional.

2. p.7 (#5 under Medical Opinions)– Dr. Barnett refers to the clonidine dose given to Ms. Hill the day before. Peak clonidine plasma levels occur in 1-3 hours. It is unlikely to affect her heart rate the following day.

I agree with Dr. Barnett:

1. That an advanced assessment could have occurred with additional diagnostic equipment and tests. But these are not typically available in a community setting, like a jail. It was not available to RN Gubitz.

In addition, it is notable that Dr. Barnett has an impressive medical education history. But no experience providing care in a correctional setting. He also has no nursing education, and no nursing experience, making him poorly qualified to opine on correctional nursing practice.

**b. In addition to the opinions I stated in my original report, I further respectfully disagree with Dr. Schubl's following opinions:**

1. p.4 – Dr. Schubl states that Ms. Hill did not receive a proper exam and should have been transferred to an emergency room. RN Gubitz properly examined and charted her findings including Ms. Hill's refusal for further care. RN Gubitz made a proper decision based on the objective findings to elevate the level of care of Ms. Hill.

2. p.6 (Item 1) – Dr. Schubl states that heroin / opiate withdrawal is limited to a 2–3-day window. Opiate withdrawal can last up to 14 days.

3. Dr. Schubl's attacks on the credibility of Ms. Gubitz throughout his report are inappropriate. Nurses are consistently rated as the most trustworthy of professions. Nothing I have reviewed in this matter indicates that Ms. Gubitz was dishonest in any way.

In addition, it is notable that Dr. Schubl has an impressive surgical and academic history, but no experience providing care in a correctional setting. He also has no nursing education and no nursing experience, making him poorly qualified to opine on correctional nursing practice.

**d. In addition to the opinions I stated in my original report, I further respectfully disagree with Dr. Roscoe's following opinions:**

1. p.10 – DNP Roscoe states that Ms. Hill was in acute distress and RN Gubitz should have contacted a provider. However, Ms. Hill had a long-documented history of dramatic subjective complaints in this jail, on multiple previous incarcerations. Ms. Gubitz rightfully relied on objective findings. These objective findings did not indicate acute distress per any dictionary or nursing definition. I find Ms. Gubitz's clinical actions appropriate. Referrals to advanced providers should not be based solely on subjective findings. Further, I consider her decision to not contact a provider to be within the standard of nursing care and certainly not outside the scope of her practice as a registered nurse.

2. p. 11 – DNP Roscoe states that RN Gubitz's failure to reassess Ms. Hill within 1-2 hours fell below the standard of care.

3. p. 12 – DNP Roscoe states that RN Gubitz may have lied about her second encounter with Ms. Hill and possibly falsified health records. Attacks on the credibility of RN Gubitz are inappropriate. Nurses are consistently rated as the most trustworthy of professions. Nothing I have reviewed in this matter indicates that RN Gubitz was dishonest in any way.

I agree with Dr. Roscoe:

1. p.12 - That refusals are ideally documented on a refusal form. Also, that any relevant clinical documentation should be entered into the record.

2. p.13 – That the emergency response by healthcare and custody staff was appropriate.

In addition, it is notable that Dr. Roscoe has a deposition and trial history of 37 Plaintiffs from 2017-2021 and 1 criminal matter. No defense case of any type is listed in this time frame on her CV. By contrast, in 2021 I was personally retained by 12 Plaintiffs and 12 Defendants. My personal and

professional opinion of Dr. Roscoe is very positive. But a case percentage such as this, is something I always note when reviewing an expert's opinion.

### III. Exhibits

Exhibits listed within this report may be used in future testimony.

### IV. Qualifications

Documented in Preliminary Report – 12/13/21.

### V. Testimony

Documented in Preliminary Report – 12/13/21.

### VI. Compensation

Documented in Preliminary Report – 12/13/21.

I certify that these statements are true and correct to the best of my knowledge, to a reasonable degree of medical certainty. I reserve the right to modify my opinion as additional documents and evidence become available. Under penalty of perjury.

SIGNED,

Dr. Michael McMunn DNP APRN-BC, CCHP-MH, CCHP-A
Board Certified Family Nurse Practitioner
Advanced Certification in Correctional Healthcare by the National Commission on Correctional Healthcare
Report dated January 27, 2022