FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 09, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTATE OF CINDY LOU HILL, by and through its personal representative, Joseph A. Grube, and CYNTHIA METSKER, individually,<br><br>     Plaintiffs,<br><br>vs.<br><br>NAPHCARE, INC., an Alabama corporation; HANNA GUBITZ, individually; and SPOKANE COUNTY, a political subdivision of the State of Washington,<br><br>     Defendants. | No. 2:20-cv-00410-MKD<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST SPOKANE COUNTY AND DENYING AS MOOT SPOKANE COUNTY'S MOTION FOR SUMMARY JUDGMENT<br><br>**ECF Nos. 28, 37** |

Before the Court are Plaintiffs' Rule 37(e) Motion for Default Judgment and

Other Sanctions Against Defendant Spokane County for Spoliation of Evidence,

ECF No. 28, and Defendant Spokane County's Motion for Summary Judgment,

ECF No. 37.

This case involves the death of Cindy Lou Hill, who died after spending

approximately four days at the Spokane County Jail. At issue is Defendant

ORDER - 1

Spokane County's spoliation of six hours of relevant jail surveillance video. The Court finds Spokane County spoliated the video evidence with an intent to avoid its litigation obligations. The Court finds default judgment is the only spoliation sanction that addresses the substantial risk of prejudice to Plaintiffs without prejudicing the remaining defendants who are not responsible for the spoliation. Accordingly, the Court grants Plaintiffs' Motion for Default Judgment and denies as moot Spokane County's Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Ms. Hill's Booking and Transfer to Medical Watch

Ms. Hill was arrested on August 21, 2018 for possession of a controlled substance and taken to the Spokane County Jail. ECF No. 1 at 7-8; ECF No. 38 at 1. Throughout Ms. Hill's detention, Spokane County contracted with Defendant NaphCare, Inc., a private correctional healthcare company, to provide medical services to individuals confined at the jail. ECF No. 1 at 4; *see* ECF No. 38. On August 22, 2018, Ms. Hill informed a NaphCare nurse that she was a heroin user and she was thereafter placed on the Clinical Opiate Withdrawal Scale (COWS) protocol. ECF No. 1 at 8; ECF No. 38 at 1. Her score on the initial COWS assessment was 5, and assessments over the next few days continued to document scores ranging from 5-12, indicating mild to moderate withdrawal symptoms. ECF No. 45 at 69-101.

At 8:45 a.m. on August 25, 2018, Defendant Hanna Gubitz, RN, a registered nurse and NaphCare employee, attempted to perform a COWS assessment on Ms. Hill. ECF No. 45 at 77. Ms. Hill was laying partially dressed on the floor of her cell; her cellmate told Nurse Gubitz that Ms. Hill was experiencing severe abdominal pain. ECF No. 45 at 77. Ms. Hill was in distress and could not move to the edge of her cell to be evaluated; instead, her cellmate had to place her on a blanket and drag her to the cell door where she laid screaming in pain. ECF No. 45 at 77. Nurse Gubitz could not conduct a full abdominal assessment because of Ms. Hill's pain and documented the encounter as follows:

> Patient laying on the floor on arrival to cell wearing pants but no shirt. Patient indicated she did want to be checked but stated she was too sick to move. Notified patient we could not enter the cell without an additional officer. Patient's roommate rolled her in a blanket and dragged her to the cell door where she lay next to the toilet screaming. Patient's cellmate indicated patient was having severe abdominal pain and it was most likely her appendix. Patient curled in fetal position on floor, barely allowed this RN to check vitals. Patient allowed minimal assessment of abdomen. No bruising, swelling, redness, or masses noted on visual assessment or palpation. Patient screamed even louder before this RN even touched abdomen shouting that this RN was hurting her. Patient would not answer questions about what her pain was on a scale of 1-10, when it started, or what it felt like. She stated it was on her right lower abdomen but screamed in pain on gentle palpation of entire abdomen and back. Patient taken to 2W via wheelchair for medical watch.

ECF No. 45 at 77.

ORDER - 3

Nurse Gubitz directed Ms. Hill to be transferred to a section of the jail called "2 West"— referred to in the above documentation as "2W"—to be subject to "medical watch."  ECF No. 45 at 77; ECF No. 29-2 at 27; ECF No. 38 at 1.

"Medical watch" in the Spokane County Jail consists of corrections officers conducting periodic checks on the inmate or detainee and documenting their observations on a "Medical Watch General Observation" form that is posted outside the individual's cell.  ECF No. 45 at 156-58, 162-65; ECF No. 38 at 2.  The medical watch form lists "examples of important changes to report to medical," which include the following: nausea/vomiting; unequal pupil size; unable to answer simple questions (i.e. where are you/who are you?); weakness to one side of the body; difficult to wake; change in speech; increased drowsiness; unsteady while walking; difficulty breathing; seizure like activity; facial droop; severe headache; worsening chest pain; worsening abdominal pain; and other.  ECF No. 29-4 at 2.[1]  The medical watch form also contains a code list, which includes the

---

[1] Plaintiffs challenge the "medical watch" practice employed by Spokane County and NaphCare.  Plaintiffs contend both entities are liable in negligence and under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for maintaining unconstitutional practices, including "relying on untrained jail guards to medically monitor seriously ill inmates."  ECF No. 43; ECF No. 75 at 18.

following: A=Awake; B=Reading; C=Court; E=Eating; G=Talking with officer; H=Toilet/Shower; J=Telephone Call; K=Standing at Door; L=Yelling/Screaming; M=Mental Health/Medication/Medical; P=Pacing; S=Sleeping; T=Talking to Self; U=Upset/Crying; and V=Visit.  ECF No. 29-4 at 2.

At 9:10 a.m., Ms. Hill was transferred via wheelchair to cell 2W27, a 2 West cell used for medical watch.  *See* ECF No. 29-2 at 23-24; ECF No. 41-2.  According to the "Medical Watch General Observation" log, Nurse Gubitz initiated Ms. Hill's medical watch at 9:30 a.m. and directed corrections officers to check on Ms. Hill every 30 minutes.  ECF No. 29-4 at 2.  The log documented that corrections officers visited Ms. Hill's cell at the following times and made the following code notations: 10:15 (S), 11:09 (A), 11:23 (S), 12:07 (S), 12:40 (S), 13:10 (S), 13:43 (A), 13:58 (S), 14:30 (S), 15:00 (A), and 15:20 (A).  ECF No. 29-4 at 2.  The observational entry for 11:09 contains a narrative notation: "refused lunch."  There are no observational entries after 15:20 (3:20 p.m.).[2]  However, video surveillance from the camera showing the hallway outside cell 2W27 ("2W27 hallway camera") shows that a corrections officer visited Ms. Hill's cell at 4:07 p.m. and again at 4:26-4:29 p.m., at which time the officer placed a meal in

---

[2] There is a final entry on the medical watch form that does not reflect a time or a code, only the following narrative: "was taken to Hospital."  ECF No. 45 at 130.

the meal slot of Ms. Hill's cell.  *See* ECF No. 41-2.  Corrections conducted the

next check at 5:24 p.m., at which time Ms. Hill was found unresponsive.  ECF No.

1 at 13-14; ECF No. 38 at 3.

**B. Ms. Hill's Death**

Ms. Hill was transported to the hospital and pronounced dead.  ECF No. 38

at 3.  The Spokane County Medical Examiner determined Ms. Hill's death was

caused by acute bacterial peritonitis due to ruptured duodenal-liver adhesions with

perforation of duodenum.  ECF No. 33 at 31.  In simplified terms, Ms. Hill

suffered a ruptured intestine that caused gastric contents to leak into her abdomen.

**C. Plaintiffs Initiate the Present Action**

On November 4, 2020, Plaintiffs (Ms. Hill's Estate and her surviving

daughter, Cynthia Metsker) filed a Complaint against Nurse Gubitz, NaphCare,

and Spokane County, alleging violations of 42 U.S.C. § 1983 and negligence under

state law.  ECF No. 1.  Plaintiffs allege Nurse Gubitz is liable under § 1983

because she denied Ms. Hill constitutionally required medical care and did so with

deliberate indifference, leading to Ms. Hill's death, all in violation of Ms. Hill's

rights as a pretrial detainee under the Fourteenth Amendment.  ECF No. 1 at 14,

20.  Plaintiffs allege Naphcare and Spokane County are also liable under § 1983

because each maintained constitutionally deficient policies, practices, and customs

that subjected detainees like Ms. Hill to a substantial risk of serious harm and

ORDER - 6

which policies and customs were a moving force in Ms. Hill's death.  ECF No. 1 at

15-16, 21.  In addition, Plaintiff Cynthia Metsker alleges that she has "suffered the

loss of her mother's society and companionship, in violation of her own Fourteenth

Amendment rights."  ECF No. 1 at 21.

With respect to their negligence claims, Plaintiffs allege that Nurse Gubitz

and NaphCare proximately caused Ms. Hill's death by failing to follow accepted

standards of care and that Spokane County is liable for the negligent acts of

NaphCare and its employees under the non-delegable duty doctrine.  ECF No. 1 at

20-21.  Plaintiffs allege Spokane County is also liable for its own negligence that

proximately caused Ms. Hill's suffering and death.  ECF No. 1 at 20, 22.

**D. The Parties Dispute What Occurred on Medical Watch**

Nurse Gubitz asserts that she visited Ms. Hill's cell around 3:00 p.m., asked

Ms. Hill whether she wanted to be checked, and Ms. Hill "indicated she did want

to be checked and sat up some in bed."  ECF No. 29-12 at 2; ECF No. 33 at 7-8.

Nurse Gubitz asserts Ms. Hill was "responsive and forthcoming and was not

screaming at all during this conversation. She made a comment that her stomach

still hurt and then said she didn't want to be checked and laid back down."  ECF

No. 29-12 at 2.  Plaintiffs challenge this assertion based on the expert opinion of

Sebastian D. Schubl, M.D., who opined that Nurse Gubitz's account of Ms. Hill's

actions was "physically impossible" given the rigidity of her abdomen and the

unrelenting pain her condition would have caused.  ECF No. 29-9 at 7, 9.

Plaintiffs also question whether the visits conducted by the corrections officers

took place at the times noted on the medical watch form and, if they did, whether

they were so cursory as to be meaningless.

**E. Production of Jail Video Showing Cell 2W27 Where Ms. Hill Was Housed on Medical Watch**

Cameras installed throughout the Spokane County Jail continuously record

activity in the jail.  At the outset of this litigation, Plaintiffs issued the following

requests for production to Spokane County:

> Request for Production No. 8: Produce all video footage showing
> Cindy Lou Hill or showing the outside of any cells in which she was
> confined.

> Request for Production No. 9: Produce all video footage showing cell
> 2W27 (the cell in which Cindy Hill was housed on the day of her
> death) as well as all video footage showing the hallway and exterior of
> her cell from the moment she was confined there on the morning of
> August 25, 2018 until her body was removed from the jail.

ECF No. 29-16 at 3.  Spokane County's initial response was that efforts were being

made to locate the requested video.  ECF No. 29-16 at 3.  After providing certain

video footage, it later supplemented its response and stated that, "All video has

been provided."  ECF No. 29-16 at 3.  At this time, Spokane County had produced

only portions of the video surveillance footage from the 2W27 hallway camera.

Plaintiffs' Rule 37(e) motion is based on the missing video from this camera.

1    From the 2W27 hallway camera for the time period between 9:10 a.m. and

2    5:24 p.m.—the time Ms. Hill was housed in cell 2W27 on medical watch—

3    Spokane County produced video for an approximately 32-minute period between

4    8:43 a.m. and 9:15 a.m. and an approximately 2-hour-and-30-minute period

5    between 4:00 p.m. and 6:30 p.m.  ECF No. 29-18 at 20.  Spokane County did not

6    produce video from the 2W27 hallway camera for the period between 9:15 a.m.

7    and 4:00 p.m., which is when the documented 30-minute medical watch checks

8    would have occurred and when Nurse Gubitz stated she visited Ms. Hill at

9    approximately 3:00 p.m.  ECF No. 29-18 at 20.

10   **F. Plaintiffs Depose Spokane County Officials**

11       *1. Lieutenant Don Hooper*

12   Plaintiffs conducted a Rule 30(b)(6) deposition of Administrative Lieutenant

13   Don Hooper of Spokane County Detention Services, the department that operates

14   the Spokane County Jail, regarding the missing video.  ECF No. 29-18 at 2.

15   Lieutenant Hooper testified about the jail's video preservation system, including

16   that: all surveillance video is automatically preserved for 60 days; each camera

17   automatically overwrites its footage beginning on day 61; after a significant event

18   at the jail such as a death, surveillance video could be permanently preserved by

19   saving it to a disc; and the jail had a policy to retain video on significant events,

20   such as a death.  ECF No. 29-18 at 8.

1    Lieutenant Hooper also testified about the events specific to Ms. Hill's

2    death, including that: Spokane County Detention Services was aware of Ms. Hill's

3    death by the early evening of August 25, 2018—the day of her death; as of August

4    25, 2018, all jail surveillance video from that day existed and could have been

5    permanently preserved; Spokane County Detention Services knew, as of the time it

6    became aware of Ms. Hill's death, that it had 60 days from the day of her death to

7    choose what video to preserve and what video to allow to be destroyed by the

8    system's automatic overwriting procedure; and it would have been the standard

9    operating procedure following Ms. Hill's death to preserve evidence relating to her

10    confinement on August 25, 2018.  ECF No. 29-18 at 10, 13.  Lieutenant Hooper

11    further testified that Spokane County Detention Services knew that Ms. Hill's

12    death would likely be investigated by law enforcement, that Ms. Hill's family

13    members might submit public records requests related to her death, and that

14    Ms. Hill's death was reasonably likely to result in civil litigation.  ECF No. 29-18

15    at 17.  He testified he believed Spokane County had an obligation to preserve the

16    evidence related to Ms. Hill's confinement.  ECF No. 29-18 at 13.

17    As confirmed by Lieutenant Hooper, the surveillance video from the 2W27

18    hallway camera would have shown the identity of any person that came to

19    Ms. Hill's cell on the day of her death, the time at which any visits occurred, and

20    for how long any visit lasted.  ECF No. 29-18 at 15.

ORDER - 10

Lieutenant Hooper did not know why some portions of the video from the

2W27 hallway camera were preserved and others were not, and he could not

identify the individual that would have been responsible for deciding which

footage to permanently preserve.  ECF No. 29-18 at 18.  Although he did not know

who, Lieutenant Hooper testified that someone at Spokane County Detention

Services made the conscious choice to preserve only certain portions of the video

from August 25, 2018, and someone likewise made a conscious decision not to

preserve other portions, allowing them to be permanently erased.  ECF No. 29-18

at 19.  In particular, Lieutenant Hooper said that "if they didn't record it in 60 more

days, the officers that would've been in charge of recording it knew that it would

write over itself."  ECF No. 29-18 at 19.  Lieutenant Hooper confirmed that,

despite having the means and ability to preserve the entire video from the 2W27

hallway camera from August 25, 2018, Spokane County Detention Services

preserved only the video for the periods between 8:43 a.m. and 9:15 a.m. and 4:00

p.m. and 6:30 p.m.  ECF No. 29-18 at 20.  He also confirmed that the footage in

between these periods from 9:15 a.m. and 4:00 p.m. was not preserved and can no

longer be restored.  ECF No. 29-18 at 20.

### 2.  Director Michael Sparber

Plaintiffs deposed Michael Sparber, the Director of Spokane County

Detention Services, who testified that Spokane County Detention Services had an

ORDER - 11

understanding that Ms. Hill's death, like any death at the jail, might result in civil litigation and it understood that, given the possibility of litigation, it had an obligation to preserve all electronically stored information pertaining to Ms. Hill. ECF No. 29-19 at 4, 5.  Mr. Sparber also testified that it would not have been appropriate for Spokane County Detention Services to fail to preserve a portion of the video from the 2W27 hallway camera from 9:15 a.m. to 4:00 p.m. and that he would see no reason for the video to be destroyed.  ECF No. 29-19 at 9-11.

### G. Plaintiffs File the Present Motion for Rule 37(e) Terminating Sanctions and Spokane County Erroneously Denies Spoliation

On December 17, 2021, Plaintiffs filed the instant Rule 37(e) motion for terminating sanctions based on the missing six hours and 45 minutes of surveillance video from the 2W27 hallway camera.  ECF No. 28.  Plaintiffs contend that Spokane County was aware of Ms. Hill's death shortly after it occurred, it knew it had a duty to preserve all electronically stored information pertaining to Ms. Hill's confinement given the likelihood of litigation as a result of her death, and yet it preserved only some portions of the surveillance video from the day of Ms. Hill's death.  They contend that Spokane County failed to preserve the most crucial video evidence that would have allowed Plaintiffs to confirm that corrections staff and Nurse Gubitz visited Ms. Hill at the times and in the manner proclaimed.  Plaintiffs argue, based on the deposition testimony of Lieutenant Hooper and Director Sparber, that the decision to allow the video evidence to be

ORDER - 12

deleted was an intentional choice by Spokane County.  Plaintiffs seek default

judgment against Spokane County, contending it is the only remedy that addresses

the risk of prejudice caused by the intentional spoliation without unfairly punishing

Nurse Gubitz and NaphCare.

In response, Spokane County asserts spoliation has not actually occurred,

stating that "[t]here is no basis for a spoliation sanction against Spokane County

because it preserved the evidence in question."  ECF No. 32 at 1.  Spokane County

explains that, while preparing the response to Plaintiffs' motion, "additional video

was located that … somehow went unviewed when it arrived and was

inadvertently not produced during production of other Jail video."  ECF No. 32 at

3.  According to Spokane County, the inadvertently omitted video "captures the

date, time and location of Ms. Hill's custody that is at issue in this motion: namely

the hallway outside cell 2W27 for 7 hours and 26 minutes on August 25, 2018,

following Ms. Hill's arrival at that cell location."  ECF No. 32 at 3.

In addition to arguing the evidence in question was preserved, Spokane

County also argues that Plaintiffs' Rule 37(e) motion was untimely.  ECF No. 32

ORDER - 13

at 5.  One week after filing its response to Plaintiff's Rule 37(e) motion, Spokane

County moved for summary judgment on all claims against it.  ECF No. 37.[3]

In reply, Plaintiffs contend Spokane County's response is "wholly

inaccurate" as the "six hours and 45 minutes of crucial hallway surveillance video

that is the subject of Plaintiffs' motion remains permanently erased."  ECF No. 34

at 2.  Plaintiffs explain the video referenced by Spokane County was previously

produced near the outset of the litigation and is not the missing video from the

2W27 hallway camera.  ECF No. 34 at 3-4.  Plaintiffs attach a series of screenshots

demonstrating the distinction between the view from the 2W27 hallway camera

and the view from the video Spokane County produced and which it claimed to be

the missing video.  ECF Nos. 35-1, 35-2, 35-3, 35-4, 35-5.  The screenshots

demonstrate that the video produced by Spokane County in response to Plaintiffs'

motion is not the missing video that is the subject of that motion.

Despite Plaintiffs' demonstration that Spokane County had not produced the

missing video from the 2W27 hallway camera, Spokane County did not seek the

Court's leave to file a sur-reply or otherwise address its erroneous response.

---

[3] Spokane County's reply clarifies that, given the non-delegable duty doctrine, it is

not seeking summary judgment on Plaintiffs' negligence claim based on the

alleged negligent acts of Nurse Gubitz and NaphCare.  ECF No. 50 at 2, 10.

ORDER - 14

Indeed, Spokane County did not correct the factual assertions in its response filed on January 7, 2022, until the Court heard oral argument on Plaintiffs' Rule 37(e) motion on February 8, 2022. Thus, at the time of the hearing on the motion, Spokane County had not submitted any written argument that addressed whether the standard for sanctions under Rule 37(e) had been met and what remedy, if any, the Court should impose.

### H. February 8, 2022 Hearing on Plaintiffs' Rule 37(e) Motion

At the February 8, 2022 hearing on Plaintiffs' Rule 37(e) motion, Spokane County conceded that its response was factually erroneous and that the missing six hours and 45 minutes of footage from the 2W27 hallway camera was not produced or preserved. Spokane County was unable to explain why this portion of the video was not preserved when other portions were. However, it argued that there was no duty to preserve the evidence because there was no express request in the record for the video to be produced at the time it was deleted. It also argued that Plaintiffs had not demonstrated the spoliation was intentional as opposed to the result of negligence or human error.

While maintaining that sanctions were not warranted, Spokane County argued that, were the Court to find intentional spoliation, the remedy should be an adverse jury instruction, which it argued would be sufficient to cure the spoliation, not a default judgment against it. However, Spokane County did not propose

ORDER - 15

language for a potential jury instruction and did not explain how an instruction

would operate in this multi-defendant case in which the liability of all three

defendants is intertwined but in which NaphCare and Nurse Gubitz are not

responsible for the spoliation.

## I. The Court Seeks Supplemental Briefing

Following the hearing, the Court ordered that the parties could submit

additional briefing on the following two questions:

> 1) Does the Court have authority to enter default judgment for discovery violations under Fed. R. Civ. P. 37(e)(2) against a party that contests its underlying liability and for which a motion for summary judgment on that basis is pending?

> 2) If a sanction under Fed. R. Civ. P. 37(e)(2) is warranted, should the Court consider any impact of an adverse jury instruction against Spokane County on the other defendants in the action when determining the appropriate sanction?

ECF No. 49.  In its supplemental briefing, Spokane County states it could find no

case prohibiting the entry of default judgement as a spoliation sanction against a

party who contests its liability in a pending motion for summary judgment.  ECF

No. 53 at 5.  It argues that the missing video is not relevant or material to

Plaintiffs' claims against it and the Court should decide the summary judgment

motion first.  ECF No. 53 at 6, 10.

As to the Court's second question, Spokane County states it has found no

case which would prevent the Court "from seeking to avoid or limit any negative

ORDER - 16

impact of a sanction on NaphCare and Nurse Gubitz." ECF No. 53 at 9. With respect to a potential remedy, it argues the Court could award reasonable fees associated with the spoliation motion and could also consider an adverse inference instruction. ECF No. 53 at 9-10. Spokane County ultimately argues that an adverse jury instruction is unwarranted, ECF No. 53 at 10, but states that, if the Court decides to issue an adverse instruction,

> it can instruct the jury that Spokane County and not NaphCare or Nurse Gubitz had control over the video recording system and if it instructs the jury to draw any adverse inferences, it can also instruct [the jury] that those adverse inferences should not be drawn against NaphCare or Nurse Gubitz. Juries are presumed to follow the Court's instructions.

ECF No. 53 at 10-11. Spokane County does not further explain how the Court can guard against the improper impact an adverse jury instruction against Spokane County could have on NaphCare and Nurse Gubitz given Nurse Gubitz's actions are linked to Spokane County's potential liability. *See* ECF No. 53 at 11. It simply reiterates its view that terminating sanctions are not warranted and that, "[i]f the Court concludes that any sanction is required, the sanction should not punish NaphCare and Nurse Gubitz." ECF No. 53 at 11.

Plaintiffs' supplemental briefing argues the Court can "unequivocally" grant the motion for default against Spokane County while a motion for summary judgment on the issue of liability is pending. ECF No. 54 at 2. In support, Plaintiffs cited *Estate of Moreno v. Correctional Healthcare Companies, Inc.*, No.

4:18-cv-5171-RMP, 2020 U.S. Dist. LEXIS 108370 (E.D. Wash. June 1, 2020), in which the District Court granted default judgment against correctional health care entities despite their pending motion for summary judgment on the issue of liability.[4]

As to the Court's second question, Plaintiffs argue default judgment is the only tenable solution in this case because "no adverse jury instruction can suitably

---

[4] In *Estate of Moreno*, an 18-year-old man was placed in an isolation cell at the Benton County Jail and later died from cardiac arrhythmia and dehydration. Pursuant to *Monell* and § 1983, the *Estate of Moreno* plaintiffs sued the correctional healthcare companies with which Benton County Jail contracted to provide healthcare services to inmates and detainees. In the course of the litigation, the correctional healthcare companies spoliated a "startling" amount of ESI, prompting the plaintiffs to file a Rule 37(e) motion for terminating sanctions. *Estate of Moreno*, No. 4:18-CV-5171-RMP, 2020 WL 5740265, at *9. Later, the correctional healthcare companies filed a partial motion for summary judgment, seeking dismissal of the plaintiffs' *Monell* claims against them. The district court granted the plaintiffs' motion for terminating sanctions and denied as moot the correctional healthcare companies' motion for partial summary judgment. *Id.* at *10.

and fairly remedy the potential harm to Plaintiffs without impermissibly penalizing the County's independent co-defendants, who were innocent to the spoliation." ECF No. 54 at 3.  Plaintiffs assert that, "despite every opportunity to propose an adequate remedy short of default, Spokane County did not advocate for a jury instruction or even propose one as a practical, workable, or even possible remedy in its written response to the instant motion."  ECF No. 54 at 11.

In their supplemental briefing, NaphCare and Nurse Gubitz object "to any jury instruction that would have an adverse impact, or lead to an adverse inference" against them.  ECF No. 52 at 3.

### J.  Additional Argument on Plaintiffs' Motion for Default Judgment Permitted at the March 23, 2022 Hearing

At the conclusion of a subsequent hearing on Spokane County's motion for summary judgment, the Court took additional argument on Plaintiffs' Rule 37(e) motion.  *See* ECF No. 68.  Plaintiffs reiterated their position that the standard for terminating sanctions under Rule 37(e) had been satisfied and that an adverse inference instruction would unfairly punish NaphCare and Nurse Gubitz.  Plaintiffs also argued, contrary to Spokane County's assertion, that the spoliated video is relevant to their case against Spokane County because the video would have shown the nature and extent of the corrections officers' checks on Ms. Hill.  Those checks are relevant to their independent negligence claim against Spokane County.  ECF No. 75 at 35.  Plaintiffs emphasized that nothing can replace the value of the video

evidence as direct visual proof about how Ms. Hill was monitored on the day of her death.  ECF No. 75 at 37-38.

On the issue of intent, the Court inquired of Spokane County how it could conclude that the failure to preserve the complete video from the 2W27 hallway camera was anything other than intentional given Spokane County preserved some of the video but not the most relevant portion and failed to provide the Court with any information about how that decision-making process was conducted.  Counsel for Spokane County responded that he "wish[ed] [he] had some explanation for the Court."  ECF No. 75 at 41-42.

As for an appropriate remedy in the event the Court were to find intent under Rule 37(e)(2), Spokane County argued this case does not involve the type of extreme circumstances that warrant default judgment.  ECF No. 75 at 42.  In support, Spokane County distinguished *Estate of Moreno*, in which evidence was destroyed mid-litigation after a formal production request for the evidence had been issued, which circumstances are absent from this case.  Spokane County further argued that the Court should consider that a second jail video exists, although it admitted the second video is not a substitute for the missing video. ECF No. 75 at 43.

Finally, Spokane County again argued that it believed an adverse inference instruction could be crafted.  However, Spokane County again did not propose

language for the Court's consideration and again failed to articulate how, given the

intertwined liability issues, an adverse inference instruction could be fairly

fashioned and implemented so as to direct an adverse inference against only

Spokane County and not against NaphCare or Nurse Gubitz.  ECF No. 75 at 56-59.

### K. The Court Requests Proposed Jury Instruction and Additional Briefing in Support

Following the March 23, 2022 hearing, the Court directed that:

> [A]ny party in this matter may within 7 days of the date of this Order submit a proposed adverse jury instruction and a 5-page brief in support for the Court's consideration. Within 14 days of [the] date of this Order, any party may submit a 5-page response to any instruction proposed by any party.

ECF No. 72.

Spokane County proposes the following instruction:

> Plaintiffs contend that Spokane County at one time possessed a video recording from a camera located in the hallway outside Cell 2W27 in the Spokane County Jail covering the period from 9:43 a.m. to 4 p.m. on August 25, 2018. Spokane County contends that the loss of this videorecording was unintentional and not done to deprive Plaintiffs of the use of the information in the litigation.
> You may assume that such evidence would have been unfavorable to Spokane County only if you find by a preponderance of the evidence that Spokane County acted with the intent to deprive Plaintiffs of the information's use in the litigation.

ECF No. 78 at 1 (citing 7th Circuit Model Jury Instruction, 1.20 (2017)).

With respect to the Court's concern that an adverse inference instruction

could potentially prejudice NaphCare and Gubitz, Spokane County states only that,

ORDER - 21

"[t]he above proposed instruction allows counsel for NaphCare and Nurse Gubitz to argue to the Jury that any adverse inference can ***only*** be used against Spokane County because that is what the instruction in fact says."  ECF No. 78 at 3 (emphasis in original).

In response, Plaintiffs argue Spokane County's proposed instruction sidesteps the task of proposing an instruction that remedies the prejudice to Plaintiffs without prejudicing Nurse Gubitz and NaphCare.  ECF No. 79 at 3. NaphCare asserts that, if an instruction is given, "there must be language informing the Jury that that lack of evidence cannot be used against Defendants NaphCare and Gubitz in any way."  ECF No. 84 at 2.

## ANALYSIS

### A. Federal Law Governs Spoliation Sanctions in Federal Cases

"Federal law governs the imposition of spoliation sanctions as 'spoliation sanctions constitute an evidentiary matter.'"  *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 739 (N.D. Ala. 2017), *aff'd*, No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022); *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) ("[A] spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters.").

**B. Timeliness of Plaintiffs' Motion**

Spokane County argues the spoliation motion is untimely because Plaintiffs "wait[ed] nearly nine months before filing th[e] motion."  ECF No. 32 at 5. "Although Rule 37 does not contain an express time limit for filing a motion for sanctions, unreasonable delay may render a motion for sanctions untimely." *Jarrell v. Wal-Mart Stores, Inc.*, No. 218CV01219APGVCF, 2021 WL 1169889, at *2 (D. Nev. Mar. 26, 2021) (internal quotations and alteration omitted).

Plaintiffs initiated this action on November 4, 2020.  After engaging in discovery and learning that relevant portions of the video from the 2W27 hallway camera were not produced, Plaintiffs deposed Spokane County officials.  Plaintiffs deposed Lieutenant Hooper on July 21, 2021; the transcript for that deposition was produced on July 27, 2021, and Lieutenant Hooper had 30 days to review and correct it.  *See* ECF No. 29-18 at 23 (Lieutenant Hooper reserved the right of signature); Fed. R. Civ. P. 30(e).  Plaintiffs deposed Director Sparber on August 16, 2021; the transcript was produced on August 23, 2021, and Director Sparber had 30 days to correct it.  *See* ECF No. 29-19 at 12 (Director Sparber reserved the right of signature); Fed. R. Civ. P. 30(e).  Plaintiffs filed their Rule 37(e) motion on December 17, 2021, approximately two months after the time for Director Sparber to correct his deposition transcript had expired.  Based on this timeline, the Court concludes that Plaintiffs did not unreasonably delay the filing of the motion.

**C. Fed. R. Civ. P. 37(e) Sanctions**

*1. Legal Standard*

Plaintiffs move for default judgment under Rule 37(e), which governs the failure to preserve electronically stored information (ESI) and provides:

> **(e) Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Whether sought under subdivision (1) or (2), Rule 37(e) sets forth prerequisites to sanctions. First, the ESI "should have been preserved in anticipation or conduct of litigation." Second, the ESI must be "lost because a party failed to take reasonable steps to preserve it." Finally, the ESI cannot be restored or replaced through additional discovery. The Court may impose sanctions only if all three criteria are met. "The applicable standard of proof for

ORDER - 24

spoliation motions in the Ninth Circuit is the preponderance of evidence."

*OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017).

> a.  Duty to Preserve

Rule 37(e) is based on the common-law duty to "preserve relevant information when litigation is reasonably foreseeable."  Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.  "[I]t does not attempt to create a new duty to preserve."  *Id.*  The rule applies "if the lost information should have been preserved in the anticipation or conduct of litigation."  *Id.*  "The duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence and is triggered not only when litigation is pending but also when it is reasonably foreseeable to that party."  *Alabama Aircraft*, 319 F.R.D. at 740 (determining propriety of sanctions under Rule 37(e)).

Director Sparber and Lieutenant Hooper both testified that Spokane County Detention Services reasonably anticipated civil litigation as the result of Ms. Hill's death and that Spokane County Detention Services became aware of Ms. Hill's death on the evening of her death, August 25, 2018.  ECF No. 29-18 at 10, 17; ECF No. 29-19 at 4.  Spokane County does not contest these assertions, and it therefore had a reasonable anticipation of civil litigation as of August 25, 2018.  Lieutenant Hooper testified in his Rule 30(b)(6) deposition that the missing 2W27 jail video existed and was capable of preservation at that time, ECF No. 29-18 at

10, which Spokane County does not challenge.  Thus, Spokane County had a duty to preserve the missing 2W27 jail video, which duty arose when the video still existed and was capable of permanent preservation.

### b. Whether Reasonable Steps Were Taken to Preserve the Jail Video

There is no dispute that the missing 2W27 jail video is lost.  Lieutenant Hooper testified in his Rule 30(b)(6) deposition that someone made a conscious decision to preserve some portions of the jail video within 60 days of Ms. Hill's death and likewise made a conscious decision to not preserve the missing 2W27 jail video and thus allow it to be overwritten.  ECF No. 29-18 at 19.  When asked, Lieutenant Hooper could not explain why the missing 2W27 jail video was not preserved and stated the standard operating procedure would have required preserving video related to Ms. Hill's confinement on August 25, 2018.  ECF No. 29-18 at 13, 18.  Notably, portions of the 2W27 hallway video were preserved, demonstrating that reasonable measures were available and were taken to preserve these portions.  Plaintiffs have established that the missing portion of the 2W27 video is lost because Spokane County failed to take reasonable steps to preserve it.

### c. Whether the Jail Video Can Be Restored or Replaced Through Additional Discovery

There is no dispute the missing 2W27 jail video cannot be restored or replaced through additional discovery.  Lieutenant Hooper testified that the video

ORDER - 26

would have been written over many times by the surveillance system's automatic procedures and that it is not possible to restore or replace it.  ECF No. 29-18 at 20.

Plaintiffs have met their burden under Rule 37(e) and established that the missing jail video should have been preserved, that the missing video was not preserved because reasonable measures were not taken to preserve it, and that the missing video is permanently lost.

### D.    Sanctions Under Subdivision (e)(2)

Under Rule 37(e), "[t]wo categories of sanctions exist."  *Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) (unpublished).  "First, where the district court finds that the loss of information has prejudiced the moving party, the district court may order 'measures no greater than necessary to cure the prejudice.'"  *Id.* (citing Fed. R. Civ. P. 37(e)(1)).  "Second, where the district court finds that the offending party 'acted with the intent to deprive another party of the information's use in the litigation,' the district court may require an adverse evidentiary presumption, dismiss the case, or enter default judgment."  *Id.* (citing Fed. R. Civ. P. 37(e)(2)).

The "very severe" measures in Rule 37(e)(2) are authorized only on a finding that the offending party intended to deprive another party of the use of electronically stored information.  Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.  Rule 37(e)(2), however, does not define "intent."  *See* Fed. R.

Civ. P. 37(e)(2).  The 2015 Advisory Committee Notes to Rule 37(e)(2) clarify that negligent or even grossly negligent behavior is not sufficient to support the severe sanctions authorized by Rule 37(e)(2).  Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.  Accordingly, "since the 2015 Amendment was adopted, district courts in the Ninth Circuit have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer that [the] party purposefully destroyed evidence to avoid its litigation obligations." *Estate of Moreno*, 2020 WL 5740265, at *6 (internal quotation marks omitted); *Porter v. City & Cty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (not reported).  "Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence."  *Colonies Partners, L.P. v. Cty. of San Bernardino*, No. 518CV00420JGBSHK, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted*, No. 518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) (internal quotation marks omitted) (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).

"Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2)."  Fed. R. Civ. P. 37 advisory committee's note to 2015

ORDER - 28

amendment.  "The remedy should fit the wrong, and the severe measures authorized by [subdivision (e)(2)] should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." *Id.*

### 1. Intent to Deprive

Plaintiffs rely on the deposition testimony of Lieutenant Hooper, who testified as discussed above that an individual at Spokane County Detention Services made an intentional decision to allow more than six hours of the 2W27 jail video to be destroyed.  Plaintiffs note that Spokane County has offered no explanation for the decision to preserve less relevant portions while failing to preserve the more relevant portion, thus allowing its destruction.

For its part, Spokane County contends Plaintiffs have not demonstrated that the spoliation was intentional as opposed to the result of negligence or human error.  In particular, Spokane County argues there is no evidence that the County viewed the video, decided it was harmful to them, and then destroyed it.  Such evidence, however, would be known only to Spokane County.  Indeed, intent is rarely susceptible to direct proof, and Plaintiffs are not required to produce such direct evidence.  Rather, circumstantial evidence can establish "intent to deprive" under Rule 37(e)(2).  *See Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018) (intent required by Rule 37(e)(2) "can be proved indirectly"); *Alabama Aircraft*,

319 F.R.D. at 746 ("[T]here certainly is sufficient circumstantial evidence for the court to conclude that Boeing's agents acted with an intent to delete (or destroy) ESI on Blake's computer"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) ("[C]ircumstantial evidence may be accorded equal weight with direct evidence" when determining Rule 37(e)(2) intent).

Courts have found the requisite "intent to deprive" when a litigant fails to provide a credible explanation for departing from standard operating procedure and intentionally failing to preserve ESI. *Alabama Aircraft*, 319 F.R.D. at 746 ("No credible explanation has been given as to why they departed from the ... protocols and intentionally deleted Blake's information.... This type of unexplained, blatantly irresponsible behavior leads the court to conclude that Boeing acted with the intent to deprive."). Courts have also found the "intent to deprive" when a litigant selectively preserves ESI which it knows to be relevant without a credible explanation, allowing some portions to be overwritten by automatic procedures. *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774 (E.D. Mich. 2019).

Here, Spokane County has not identified the individual responsible for making the relevant decision at issue. Moreover, Spokane County offers the Court no explanation—credible or otherwise—about why someone at Spokane County Detention Services made the intentional choice to preserve video from 8:43 a.m. to 9:15 a.m. and 4:00 p.m. to 6:30 p.m. yet chose to allow the portion from 9:15 a.m.

to 4:00 p.m. to be permanently destroyed.  The destroyed portion of the video from 9:15 a.m. to 4:00 p.m. is the most relevant surveillance video to Plaintiffs' claims as it would have captured whether corrections officers and Nurse Gubitz checked on Ms. Hill at the times and in the manner alleged.  The absence of any explanation for preserving less relevant video while permitting the destruction of the most relevant video is notable given Lieutenant Hooper's testimony that Spokane County Detention Services' standard operating procedure would have been to preserve the video related to Ms. Hill's confinement from the day of her death.  ECF No. 29-18 at 13.  Moreover, in Lieutenant Hooper's view, anyone would have known to retain all the video relevant to Ms. Hill's death.  ECF No. 29-18 at 17.

Based on the testimony of Lieutenant Hooper that an intentional decision was made to preserve some portions of the relevant jail video but not others and given the absence of a credible explanation for why the most relevant video was the portion to be permanently destroyed, the Court finds it is reasonable to infer that Spokane County allowed the missing 2W27 jail video to be overwritten "with an intent to avoid its litigation obligations." *Estate of Moreno*, 2020 WL 5740265, at *6.  Accordingly, the Court finds Spokane County acted with the intent to deprive under Rule 37(e)(2).  The Court now turns to the question of the appropriate remedy.

ORDER - 31

In crafting an appropriate spoliation sanction, the Court should impose a sanction that:

> (1) sufficiently penalizes the spoliating party;
> (2) has a sufficient deterrent value to the immediate spoliating party and future litigants;
> (3) sufficiently cures any prejudice to an affected party by restoring that party to the position it would have been in but for the spoliation;
> (4) sufficiently restores the accuracy of the fact-finding process; and
> (5) places the risk of an erroneous judgment on the spoliating party.

*Peschel v. City Of Missoula*, 664 F. Supp. 2d 1137, 1143 (D. Mont. 2009) (internal citations omitted).

The loss of more than six hours of highly relevant video evidence in a case in which an individual died while detained in jail is a significant spoliation incident. The Court finds that a concomitant sanction is warranted. Specifically, the Court finds that only the severe measures authorized by Rule 37(e)(2) would sufficiently penalize Spokane County, deter similar future conduct, cure the prejudice to Plaintiffs to the best of the Court's ability, and place the risk of an erroneous judgment on Spokane County as the spoliating party.

**E. The *Leon* Factors**

The Ninth Circuit has set forth a five-factor test to help guide district courts in determining whether terminating sanctions are warranted in a particular case.

> Before imposing the 'harsh sanction' of dismissal [or default judgment] … the district court should consider the following factors:
> (1) the public's interest in expeditious resolution of litigation;
> (2) the court's need to manage its dockets;

(3) the risk of prejudice to the party seeking sanctions;
(4) the public policy favoring disposition of cases on their merits; and
(5) the availability of less drastic sanctions.

*Leon*, 464 F.3d at 958 (citations and internal quotation marks omitted).  "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of lesser sanctions."  *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

The Court's inquiry regarding the propriety of terminating sanctions is "intensely fact-specific."  *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 83 (3d Cir. 2019).  Indeed, the *Leon* test "is not a rigid, mechanical test but 'a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything.'"  *Garrison v. Ringgold*, No. 19-CV-0244 GPC-DEB, 2020 WL 6537389, at *5 (S.D. Cal. Nov. 6, 2020) (quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).

### 1.  *First and Second* Leon *Factors*

The Court considers the first two *Leon* factors together, which address "the public's interest in expeditious resolution of litigation" and the Court's "need to manage its dockets."  *Leon*, 464 F.3d at 958.  "The first two [*Leon*] factors favor the imposition of sanctions in most cases."  *Wanderer*, 910 F.2d at 656.  This case is no exception.  Here, the expeditious resolution of this litigation has been

1   impeded by the spoliation, which has engendered depositions and motion practice

2   which would not otherwise be necessary, in turn requiring the expenditure of party

3   and judicial resources which would otherwise be put to different use.  Moreover,

4   the necessary motion practice has been unduly extended due to Spokane County's

5   inaccurate initial response to the motion, in which it contended the missing 2W27

6   jail video was actually produced, the subsequent failure to correct that inaccurate

7   assertion, and the multiple additional rounds of briefing made necessary due to the

8   inaccurate response.  The Court finds that the first two *Leon* factors weigh in favor

9   of terminating sanctions in this case.

10          *2.  Third, Fourth, and Fifth* Leon *Factors*

11          In this case, as in many cases, the third, fourth, and fifth *Leon* factors are

12  linked.  Respectively, these factors address the risk of prejudice to the party

13  seeking sanctions, the public policy favoring disposition of cases on the merits, and

14  the availability of less drastic sanctions.  *Leon*, 464 F.3d at 958.

15          "In deciding whether to impose case-dispositive sanctions, the most critical

16  factor is not merely delay or docket management concerns, but truth."  *Connecticut*

17  *Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir.

18  2007).  "What is most critical for case-dispositive sanctions, regarding risk of

19  prejudice and of less drastic sanctions, is whether the discovery violations threaten

20  to interfere with the rightful decision of the case."  *Id.* (citations and internal

ORDER - 34

1  quotation marks omitted).  Stated differently, "[t]he most critical factor to be

2  considered in case-dispositive sanctions is whether a party's discovery violations

3  make it impossible for a court to be confident that the parties will ever have access

4  to the true facts." *Id.* (citations and internal quotation marks omitted).  "Where a

5  party so damages the integrity of the discovery process that there can never be

6  assurance of proceeding on the true facts, a case dispositive sanction may be

7  appropriate." *Id.* (citations and internal quotation marks omitted).

8            a.  Risk of Prejudice

9            Here, Spokane County's failure to preserve the missing video from the

10  2W27 hallway camera has created a serious and irreparable risk of prejudice to

11  Plaintiffs.  A central issue is whether Ms. Hill received adequate medical care after

12  she was transferred to cell 2W27 and placed on medical watch.  The spoliated

13  video evidence would have provided visual evidence relevant to this inquiry,

14  including who came to Ms. Hill's cell on August 25, 2018, what kind of visit

15  occurred, how long each visit lasted, and potentially what the visitor did or did not

16  do while visiting the cell.  Without it, Plaintiffs are unable to evaluate whether

17  Ms. Hill was monitored by corrections officers at the times or in the manner

18  alleged.  Plaintiffs are also deprived of the opportunity to use the video evidence to

19  evaluate whether and to what extent Nurse Gubitz checked on Ms. Hill at

20  approximately 3:00 p.m.  Plaintiffs contend that Nurse Gubitz's account of that

check has been called into question by Plaintiffs' expert who opined that Nurse

Gubitz's version was not medically possible.

       As for the scope of the potential prejudice, the lack of access to the missing

jail video has created a risk of prejudice with respect to Plaintiffs' claims against

all three defendants in this action.  Indeed, the unique and complicating factor in

this case is that the spoliation creates a risk of prejudice as to Plaintiffs' claims

against not just Spokane County as the spoliating party, but also the claims against

Nurse Gubitz and NaphCare, neither of whom are responsible for the spoliation.

       With respect to Plaintiffs' § 1983 claim against Nurse Gubitz and their

negligence claims against Nurse Gubitz and NaphCare, the risk of prejudice is

substantial.  These claims are premised in part on their theory that Nurse Gubitz's

account about the 3:00 p.m. visit is not accurate.  The inability to compare Nurse

Gubitz's account with the spoliated video evidence creates a void in Plaintiffs'

case for which there is no comparable evidence.  Spokane County argues a second

video exists that shows Nurse Gubitz entering the 2 West hallway at approximately

3:00 p.m.  However, it is undisputed that the video referenced by Spokane County

does not show whether Nurse Gubitz stopped at Ms. Hill's cell; it shows only that

Nurse Gubitz entered the 2 West hallway.  In contrast, the spoliated 2W27 hallway

footage shows a direct view down the hallway outside of cell 2W27 and would

have shown who visited Ms. Hill's cell door and the nature of any visit.  Because

NaphCare and Nurse Gubitz's liability can flow to Spokane County, the spoliation creates an equal risk of prejudice to Plaintiffs' negligence claim against Spokane County that is based on the non-delegable duty doctrine.

The spoliated video also creates a risk of prejudice to Plaintiffs' separate theory that Spokane County was negligent for the actions of its corrections officers. Plaintiffs contend corrections officers conducted meaningless and cursory checks on Ms. Hill and may not have conducted the checks documented in the log. Without the direct visual evidence of the checks that the spoliated video would have provided, Plaintiffs have only the medical watch log and testimony of the corrections officers, most of whom have little to no memory of the incident.[5]

The Court finds that Spokane County's spoliation creates a substantial risk of prejudice with respect to Plaintiffs' claims against all three defendants in this action.[6] Plaintiffs' ability to access the facts of this case has been seriously and

---

[5] As for the *Monell* claims against Spokane County and NaphCare, Plaintiffs argue the video might have been valuable impeachment evidence. The Court agrees that it is possible the video had impeachment value, and its spoliation creates some risk of prejudice to Plaintiffs' *Monell* claims.

[6] The prejudice inquiry focuses on the risk of prejudice to the party seeking sanctions, but the Court notes it is not only Plaintiffs who are prejudiced. Nurse

ORDER - 37

1  irreversibly impeded due to the spoliated video.  The third *Leon* factor, therefore,

2  weighs heavily in favor of granting default judgment.

### b.  Preference to Dispose of Cases on the Merits

4          As for the fourth *Leon* factor, the preference to dispose of cases on their

5  merits, this factor generally weighs against terminating sanctions.  *Wanderer*, 910

6  F.2d at 656.  However, the Court notes that spoliation of evidence such as the

7  video surveillance in this case poses challenges to disposing of the case on the

8  merits given the lack of access to evidence that could shed light on the events that

9  took place.  Therefore, the Court finds that this factor weighs only slightly, if at all,

10  against default judgment in this case.

### c.  Availability of Less Drastic Sanctions

12          The fifth *Leon* factor asks the Court to consider whether a sanction less

13  drastic than default judgment can sufficiently cure the risk of prejudice while also

14  penalizing the spoliating party.  In this case, Rule 37(e)(2) sanctions are

15  appropriate.  The question is whether an adverse jury instruction is sufficient to

16  remedy the prejudice to Plaintiffs without penalizing the non-spoliating

17  defendants.

18

_____

19  Gubitz also cannot rely on the video surveillance evidence from the 2W27 hallway

20  camera to support her assertions regarding the nature of the 3:00 p.m. visit.

ORDER - 38

1    This case presents an unusual circumstance in which the spoliated evidence

2    for which only Spokane County is responsible is relevant to the claims against all

3    three defendants in this action, and all three defendants have interconnected

4    liability.  Because of this complexity, the Court has given the parties multiple

5    opportunities to propose appropriate remedies in the event the Court found, as it

6    now has, that Spokane County acted with intent to deprive under Rule 37(e)(2).

7    Spokane County has on three separate occasions argued that, if the Court were to

8    impose a Rule 37(e)(2) sanction, the sanction should be an adverse inference jury

9    instruction rather than the most extreme sanction of default judgment sought by

10    Plaintiffs.  While it advocated for a jury instruction, Spokane County repeatedly

11    failed to propose language for the Court's consideration or more specifically

12    address how an adverse inference instruction could fairly and effectively operate

13    under the unique facts of this particular case.

14    After multiple rounds of briefing and oral argument, Spokane County

15    proposes an adverse inference instruction that includes a permissive direction that

16    the jury "may assume that [the spoliated video] would have been unfavorable to

17    Spokane County" if the jury finds by a preponderance of the evidence that Spokane

18    County acted with the intent to deprive.  Spokane County argues the proposed

19    instruction "allows counsel for NaphCare and Nurse Gubitz to argue to the Jury

20    that any adverse inference can **only** be used against Spokane County because that

is what the instruction in fact says." ECF No. 78 at 3 (emphasis in original). The Court finds the proposed instruction does not sufficiently remedy the prejudice to Plaintiffs and mitigate the risk of improper prejudice to NaphCare and Nurse Gubitz. Moreover, the Court is not convinced that any adverse jury instruction could adequately remedy the prejudice to Plaintiffs while not unfairly prejudicing the remaining defendants.

The events in the missing video about which the Court would instruct the jury to draw an adverse inference against Spokane County include the conduct of Nurse Gubitz. Because Nurse Gubitz is acting as an arm of Spokane County when providing medical care to detainees and her actions are attributed to Spokane County under the non-delegable duty doctrine,[7] an adverse inference against Spokane County can equate to an adverse inference about Nurse Gubitz's conduct. For example, one adverse inference the jury could draw against Spokane County is that Nurse Gubitz's account of visiting Ms. Hill at 3:00 p.m. is inaccurate. An instruction would permit or require the jury to apply that adverse inference against

---

[7] *Shea v. City of Spokane*, 562 P.2d 264, 268 (Wash. Ct. App. 1977), *aff'd*, 578 P.2d 42 (Wash. 1978); *see also King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services.").

ORDER - 40

Spokane County when evaluating the negligence and § 1983 claims against it.
However, the jury would not be permitted to apply the same adverse inference
about Nurse Gubitz's conduct to the claims against Nurse Gubitz herself or her
employer, NaphCare.  Thus, the jury would be permitted to assume facts that could
establish Nurse Gubitz's own liability in negligence[8] and potentially under § 1983
(that she did not check on Ms. Hill as she claimed) but would be prohibited from
applying that fact to the determination about whether Nurse Gubitz or her
employer are liable.

The Court finds it is unreasonable to expect that jurors can comply with
instructions that create such an analytical conundrum.  Such an instruction would
confuse the jury and create a risk that the jury would impermissibly consider the
adverse inference when determining the liability of Nurse Gubitz and NaphCare.
The Court finds that an adverse jury instruction is not a viable spoliation sanction

---

[8] Under Washington law, if there were negligent actions by Nurse Gubitz, those
could be imputed to her employer, NaphCare.  *Anderson v. Soap Lake Sch. Dist.*,
423 P.3d 197, 214 (Wash. 2018) ("Vicarious liability imposes liability on an
employer for the torts of an employee who is acting on the employer's behalf.")
(internal quotation marks omitted).

ORDER - 41

in this case.[9]  The fifth *Leon* factor, therefore, weighs in favor of default judgment against Spokane County on both claims.

### F.  Remedy

The Court finds there is no sanction short of default judgment that appropriately remedies the risk of prejudice to Plaintiffs while also avoiding unfair prejudice to NaphCare and Nurse Gubitz, both of whom had no part in the spoliation.  For these reasons, the Court grants Plaintiffs' Motion for Default Judgment as to liability against Spokane County as to the § 1983 and negligence claims.

### G. Monetary Sanctions

Plaintiffs request the Court impose a monetary sanction "calibrated to the risk caused by the loss of the punitive damages evidence."  ECF No. 38.  However, monetary sanctions imposed pursuant to civil procedures or a court's inherent

---

[9] Plaintiffs objected to the proposed instruction on multiple grounds, including that it called for the jury to make a finding of intent, it contained a permissive rather than mandatory direction, and it lacked sufficient information about what the spoliated video would have shown.  ECF No. 79.  Because the Court finds that the proposed instruction does not sufficiently prevent prejudice to NaphCare and Nurse Gubitz, it need not and does not address Plaintiffs' additional arguments.

ORDER - 42

authority "must be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017); *see also United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 826-30 (1994) (distinguishing coercive and avoidable civil contempt sanctions meant to compel obedience from punitive criminal sanctions for acts already completed). *Goodyear* involved a district court's decision to sanction a bad-faith litigant by ordering the bad-faith litigant to pay the opposing party's legal fees and costs, including those that were not tied to the misconduct at issue. The Supreme Court reversed the award because a "fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear*, 137 S. Ct. at 1186. To levy a monetary punishment for a party's misbehavior would require "procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *Id.* Absent such protections, monetary sanctions are limited to reimbursement. *See id.* As the Court explained:

> Compensation for a wrong, after all, tracks the loss resulting from that wrong. So as we have previously noted, a sanction counts as compensatory only if it is "calibrate[d] to [the] damages caused by" the bad-faith acts on which it is based. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a

ORDER - 43

causal link—between the litigant's misbehavior and legal fees paid by the opposing party.

*Id.* (internal citations omitted).  The causal connection "is appropriately framed as a but-for test: The complaining party … may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 1187.

Accordingly, while this Court can award Plaintiffs their reasonable costs and attorney's fees which would not have occurred but for Spokane County's spoliation, this Court cannot impose the punitive monetary sanction that Plaintiffs appear to request.  *Id.* at 1186; *Mine Workers*, 512 U.S. at 826-30.  The Court therefore denies Plaintiffs' motion to the extent it seeks a punitive monetary sanction.  The Court will, however, entertain an appropriate motion for attorney's fees and costs incurred as a result of the spoliation.

**IT IS ORDERED:**

1.    Plaintiffs' Rule 37(e) Motion for Default Judgment and Other Sanctions Against Defendant Spokane County for Spoliation of Evidence, **ECF No. 28**, is **GRANTED**.

2.    **DEFAULT JUDGMENT** as to liability shall be entered in favor of Plaintiffs on their negligence and § 1983 claims against Defendant Spokane County.  This matter will proceed to trial for a determination of damages against Defendant Spokane County.

ORDER - 44

3.      Accordingly, Spokane County's Motion for Summary Judgment, ECF No. 37, is **DENIED AS MOOT**.

4.      Counsel for all parties are directed to meet and confer and file a status report by **May 16, 2022** as to their proposed scheduling plan for and procedure to address the remaining liability and damage issues in this matter.

DATED May 9, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 45