1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

3

Jul 08, 2022

4

SEAN F. McAVOY, CLERK

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7  ESTATE OF CINDY LOU HILL, by       | No. 2:20-CV-00410-MKD
   and through its personal representative,
8  Joseph A. Grube,                   | ORDER ON PLAINTIFF'S MOTION
                                       | TO EXCLUDE EXPERT
9                      Plaintiff,      | TESTIMONY OF CERTAIN
                                       | EXPERTS IDENTIFIED BY
10 vs.                                 | DEFENDANT NAPHCARE

11 NAPHCARE, INC., an Alabama
   corporation, and SPOKANE COUNTY,   | ECF Nos. 56, 176
12 a political subdivision of the State of
   Washington,
13
                       Defendants.

14          Before the Court is Plaintiff's Motion to Exclude Testimony of Certain

15  Expert Witnesses Identified by Defendant NaphCare, ECF No. 56, related

16  Supplemental Brief in Support of Motion to Exclude Testimony, ECF No. 113, and

17  Defendant NaphCare's Motion for Reconsideration of the Court's Oral Rulings,

18  ECF No. 176.  Plaintiff seeks to preclude the testimony of experts Craig Pepin,

19  M.D., and Michael McMunn, D.N.P., based on NaphCare's failure to comply with

20  the relevant disclosure obligations for these experts under Fed. R. Civ. P. 26(a)(2).

ORDER - 1

Plaintiff additionally seeks to preclude testimony on the opinions expressed in supplemental reports from Dr. Pepin, Dr. McMunn, and a third expert, Dr. Alfred Joshua. Plaintiff argues the supplemental reports do not comply with Fed. R. Civ. P. 26(a)(2), will not help the jury to determine a fact at issue, and are substantially more prejudicial than probative.

The Court conducted hearings on these motions on June 23, 2022 and June 30, 2022. This order memorializes and supplements the Court's oral rulings at those hearings.

With respect to Dr. McMunn, the Court concludes the opinions expressed in the initial report wholly fail to provide their basis and reasoning. Accordingly, Dr. McMunn's initial report is stricken in its entirety for failure to comply with Fed. R. Civ. P. 26(a)(2). Of the disputed opinions in Dr. McMunn's additional reports, this order summarizes the Court's findings. With respect to Dr. Pepin's initial report, the Court finds the opinions disclosed therein provide Dr. Pepin's expected testimony in sufficient detail to prevent unfair surprise to Plaintiff. Accordingly, Dr. Pepin will be permitted to testify to the opinions contained in his initial report. As for Dr. Pepin's supplemental report, this order summarizes the Court's findings. Finally, with respect to Dr. Joshua's supplemental report, the Court concludes the challenged opinion in that report is relevant and admissible.

ORDER - 2

**BACKGROUND**

This is a civil rights action arising from the death of Ms. Cindy Lou Hill in the Spokane County Jail.  Plaintiff, the Estate of Ms. Hill, alleges that Defendants NaphCare, Inc. and Spokane County provided negligent and constitutionally inadequate medical care, resulting in Ms. Hill's suffering and death.  Plaintiff brings claims for violations of Ms. Hill's constitutional rights under 42 U.S.C. § 1983 and for negligence under Washington state law.  ECF No. 1.[1]

The Court set a deadline of December 18, 2021 for the parties to identify their expert witnesses and serve written reports as required by Federal Rule of Civil Procedure 26(a)(2).  ECF No. 14 at 4.  The Court set a deadline of January 14, 2022 for the parties to identify their rebuttal experts and serve rebuttal reports.  ECF No. 14 at 4.  NaphCare disclosed three experts—Dr. McMunn, Dr. Pepin, and Dr. Joshua—and provided accompanying reports.  In the instant motion, Plaintiff argues the initial and rebuttal report from Dr. McMunn, as well as the initial report

---

[1] The complaint in this action alleged claims on behalf of a second plaintiff, Cynthia Metsker, who has since been voluntarily dismissed.  ECF No. 172.  The complaint also alleged claims against Hannah Gubitz, who has since been dismissed as a defendant.  ECF No. 168.

ORDER - 3

from Dr. Pepin, did not comply with Fed. R. Civ. P. 26(a)(2)(B) because the reports failed to disclose information required by that rule.  ECF Nos. 56, 113.

On April 6, 2022, due to a discovery issue, the Court entered an order extending the discovery cutoff to May 30, 2022 for the limited purpose of allowing defendants to obtain medical records from five different identified medical entities. ECF No. 85.  Following receipt of the records, NaphCare submitted the three supplemental reports at issue in this motion—one from Dr. McMunn, one from Dr. Pepin, and one from Dr. Joshua.  *See* ECF No. 114.  Plaintiff argues the supplemental reports, like the initial and rebuttal reports, are deficient under Fed. R. Civ. P. 26(a)(2)(B) and should be excluded for that reason.  ECF No. 113. Plaintiff also argues the supplemental reports will not aid the jury in deciding a fact at issue and should therefore also be excluded under Fed. R. Evid. 401-403.  ECF No. 113 at 2.

Defendant responds that the reports comply with Fed. R. Civ. P. 26(a)(2)(B) and disclose opinions that are relevant and admissible.  *See* ECF No. 137.

## LEGAL STANDARDS

The Federal Rules of Civil Procedure govern a party's disclosure obligations related to witnesses who will provide expert testimony and provide sanctions for a party's failure to comply with its obligations.  "[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under

Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," then the applicable disclosure "must be accompanied by a written report [that is] prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). The written report must include:

1) a complete statement of all opinions the witness will express and the basis and reasons for them;

2) the facts or data considered by the witness in forming them;

3) any exhibits that will be used to summarize or support them;

4) the witness's qualifications, including a list of all publications authored in the previous 10 years;

5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

6) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* The expert report required by Rule 26(a)(2)(B) must be "detailed and complete" and must "stat[e] the testimony the witness is expected to present during direct examination, together with the reasons therefore." Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendment. "The reason for requiring expert

ORDER - 5

reports is the elimination of unfair surprise to the opposing party and the conservation of resources." *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 299 (D. Nev. 1998) (internal quotation marks and citation omitted). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Id.*

"Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) and Fed. R. Civ. P. 37(c)(1)). "Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure." *Id.* (citations omitted). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Id.* (citing Fed. R. Civ. P. 37(c)(1)). "The burden to prove harmlessness is on the party seeking to avoid Rule 37's exclusionary sanction." *Id.* (citing *Yeti by Molly Ltd.*, 259 F.3d at 1107).

ORDER - 6

# ANALYSIS

## A. Michael McMunn, DNP

### 1. Initial Report

Plaintiff argues Dr. McMunn's initial report does not comply with Rule 26(a)(2)(B).  Dr. McMunn is a doctor of nursing practice who opines that NaphCare and its employees met the standard of care regarding the care provided to Ms. Hill at the Spokane County Jail prior to her death.  ECF No. 57-2.

Regarding NaphCare nurses and the standard of care, Dr. McMunn's opinions, reproduced in full here, are that:

> It is my expert opinion that the actions of the NaphCare Nurses providing care to Ms. Hill did meet the standard of care for a correctional healthcare setting.
> 1. Ordered evaluations and treatments were appropriate and timely.
> 2. The nursing staff respected Ms. Hill's multiple refusals.
> 3. Nursing response was appropriate to objective data.
> 4. Nursing response in view of Ms. Hill's failure to disclose drug use was appropriate.
> 5. Efforts to maintain hydration with electrolyte fluids was above the standard of care.

ECF No. 57-2 at 5.  Plaintiff argues these opinions lack specificity and are devoid of the explanation and reasoning required by Rule 26(a)(2)(B).  The Court agrees.  Dr. McMunn's opinions are vague as the reader must guess what "evaluations," "treatments," "refusals," "response[s]," "objective data," and "efforts" the opinions refer to.  Such vague opinions do not eliminate unfair surprise to Plaintiff.  *See,*

ORDER - 7

1    *e.g.*, *Sempra Energy v. Marsh USA, Inc.*, No. CV0705431SJOJCX, 2008 WL

2    11335050, at *7 (C.D. Cal. Oct. 15, 2008) (noting the central purposes of expert

3    disclosure requirements are not met when reports are "sketchy" or "vague") (not

4    reported).  Moreover, Dr. McMunn provides no explanation whatsoever for his

5    conclusions that certain unspecified evaluations, treatments, and responses were

6    "appropriate" and "timely."

7         The additional opinions set forth in Dr. McMunn's report suffer from the

8    same deficiencies in that they are vague and lack explanation.  For example,

9    Dr. McMunn opines that, "Ms. Hill's surgical history, risk factors and self

10   determination to use methamphetamine put her at higher risk of a gastrointestinal

11   event."  Dr. McMunn does not specific the surgical history or risk factors to which

12   he refers.  Nor does he explain why such matters would lead to a higher risk of a

13   "gastrointestinal event," which is likewise not further defined or explained.  The

14   remaining opinions in the report similarly fail to provide sufficient explanation and

15   the reasoning upon which they are based.

16        Rather than explain the bases and reasoning for his opinions, Dr. McMunn

17   has disclosed one-to-two sentence conclusions.  This is a far cry from the "detailed

18   and complete" report required by Rule 26(a)(2)(B); *In re Cent. Eur. Indus. Dev.*

19   *Co.*, 427 B.R. 149, 156 (Bankr. N.D. Cal. 2009) ("Bald conclusions or brief

20   statements of ultimate conclusions with no explanation of the basis and reasons

therefor, or the absence of a statement of how the facts support the conclusions, do not satisfy Rule 26(a)(2)(B) requirements.").

"The reason, of course, that experts must substantiate their opinions is that an expert who supplies only an ultimate conclusion with no analysis supplies nothing of value to the judicial process." *Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill. 2006) (citing *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997)).  Because the opinions expressed in Dr. McMunn's initial report do not comply with Rule 26(a)(2)(B), and because NaphCare has not argued the report's deficiencies are substantially justified or harmless, the Court grants the motion to exclude with respect to Dr. McMunn's initial report.  Dr. McMunn shall not testify to any opinion expressed in the initial report.

### 2.  Rebuttal Report

Dr. McMunn offers additional opinions in a rebuttal report, ECF No. 57-3.[2] Plaintiff clarifies that it does not intend to offer expert opinion on certain matters to which Dr. McMunn provided a rebuttal opinion, such as the effect of clonidine and

---

[2] As set forth on the record, Dr. McMunn listed various factual statements in his rebuttal report that are not expert opinions and do not require a ruling from the Court.

ORDER - 9

1    the window for opiate withdrawal, and that it would not object to Dr. McMunn's

2    rebuttal opinions addressing those matters if such opinions were elicited from

3    Plaintiff's experts at trial.  Accordingly, the Court issues no rulings as to the

4    opinions for which there is no dispute between the parties.[3]

5         Plaintiff maintains its challenge to the following rebuttal opinion:

6         Dr. Schubl states that Ms. Hill did not receive a proper exam and
          should have been transferred to an emergency room. RN Gubitz
7         properly examined and charted her findings including Ms. Hill's
          refusal for further care. RN Gubitz made a proper decision based
8         on the objective findings to elevate the level of care of Ms. Hill.

9    Plaintiff argues this opinion, like those in Dr. McMunn's initial report, lacks

10   specificity and sufficient explanation.  ECF No. 56 at 10.  The Court agrees.

11   Dr. McMunn has not sufficiently provided the basis and reasoning underlying his

12   opinion that Nurse Gubitz "properly examined" and made a "proper decision based

13   on objective findings."  The opinion does not explain which objective findings

14   Dr. McMunn is relying on or how the objective findings make Nurse Gubitz's

15   decision "proper" with respect to the applicable standard of care.  Because the

16   opinion does not comply with Rule 26(a)(2)(B), and because NaphCare has not

17

18

19   ───────────────────
     [3] The specific opinions for which the parties reached mutual understanding were
20   set forth on the record during the pretrial conference held on June 30, 2022.

ORDER - 10

1  argued the opinion's deficiencies are substantially justified or harmless, the Court

2  grants the motion to exclude with respect to this opinion.

3          Plaintiff also maintains its challenge to the following opinion:

4          Dr. Schubl's attacks on the credibility of Nurse Gubitz throughout his
          report are inappropriate. Nurses are consistently rated as the most
5          trustworthy of professions. Nothing I have reviewed in this matter
          indicates that Ms. Gubitz was dishonest in any way.
6
7  NaphCare clarifies that it does not intend to offer the first two sentences contained

8  in this opinion.  The Court agrees with Plaintiff that those statements are not the

9  appropriate subject for expert testimony.  As for the opinion contained in the third

10 sentence, the Court will permit Dr. McMunn to testify to that opinion.  However,

11 Dr. McMunn may not provide a further explanation for this opinion, as he failed to

12 include further explanation in his expert report.

13          The following opinion also remains in dispute:

14          DNP Roscoe states that Ms. Hill was in acute distress and RN
          Gubitz should have contacted a provider. However, Ms. Hill had a
15          long-documented history of dramatic subjective complaints in this
          jail, on multiple previous incarcerations. Ms. Gubitz rightfully
16          relied on objective findings. These objective findings did not
          indicate acute distress per any dictionary or nursing definition. I
17          find Ms. Gubitz's clinical actions appropriate. Referrals to
          advanced providers should not be based solely on subjective
18          findings. Further, I consider her decision to not contact a provider
          to be within the standard of nursing care and certainly not outside
19          the scope of her practice as a registered nurse.
20
The first sentence of this disclosure is a factual statement and NaphCare clarifies

that it does not intend to offer the second sentence.  Thus, as to these matters, no

ORDER - 11

ruling is required.  The Court finds the balance of the opinion is admissible.

Dr. McMunn has opined that Nurse Gubitz's actions in not contacting a provider

were within the standard of care because objective findings did not indicate acute

distress and referrals to advanced providers should not be based solely on

subjective findings.  While not a model of specificity, the Court finds the opinion

sufficiently discloses its basis and reasoning and therefore denies the motion to

exclude with respect to this opinion.

The final opinion at issue in this rebuttal report provides as follows:

> DNP Roscoe states that RN Gubitz may have lied about her second
> encounter with Ms. Hill and possibly falsified health records. Attacks
> on the credibility of RN Gubitz are inappropriate. Nurses are
> consistently rated as the most trustworthy of professions. Nothing I
> have reviewed in this matter indicates that RN Gubitz was dishonest
> in any way.

The first sentence of this opinion is a factual statement that requires no ruling.

Consistent with the ruling above, the Court finds the second and third sentences are

not proper for expert testimony.  The Court finds the last sentence of this opinion is

admissible, and therefore denies the motion with respect to this aspect of the

opinion.  However, Dr. McMunn may not further explain this opinion during his

testimony as further explanation was not provided in the expert report.

### 3. Supplemental Report

After the acquisition of additional medical records from community medical

facilities, Dr. McMunn provided opinions in a supplemental report.  The first

ORDER - 12

1    opinion at issue in the supplemental report purports to reinforce the opinions in

2    Dr. McMunn's initial report.  The Court has excluded the initial report in its

3    entirety.  Therefore, the Court likewise grants the motion to exclude the first

4    opinion in the supplemental report.[4]

5          The second opinion in the supplemental report provides that:

6          Always difficult to recognize, in this case, acute bacterial peritonitis
           was diagnosed by Emergency Room doctors or the NaphCare nurses.
7          Ms. Hill died from an uncommon condition known as "acute bacterial
           peritonitis". It **is not** below the standard of care for nurses in a
8          community jail setting to not recognize this. The ER Doctors in an
           acute care setting did not name this condition on their admission or
9          final diagnoses. (p. 5)  ER physicians have advanced training and
           experience in assessment of emergent conditions. In addition, they
10         have access to a full array of diagnostic options. Nurses in a
           community jail do not have the education, experience, or diagnostic
11         access that an ER doctor has. Neither diagnosed this unusual
           condition was on presentation.

12   ECF 114 at 13 (emphasis in original).  Plaintiff challenges the opinion for failure to

13   comply with Rule 26(a)(2)(B).  The Court finds the assertion that "acute bacterial

14   peritonitis" is "always difficult to recognize" lacks sufficient explanation and

15

16   [4] The opinion provides that:

17         Conclusions #1 thru #5 regarding the NaphCare nurses providing care
           in my original report have been reinforced.  Ms. Hill had a long
18         history of non-compliance, refusal of ordered interventions and failure
           to properly disclose drug use.  These factors combined with failure to
19         allow specialist evaluations, failure to allow treatment prior to
           incarceration and made it difficult if not impossible for the nurses to
20         determine that an unusual diagnosis the was [sic] cause of subjective
           complaints.

ORDER - 13

reasoning and therefore grants the motion to exclude with respect to the first sentence of this opinion.  However, the Court finds the balance of the opinion is admissible.  Dr. McMunn asserts that nurses in a community jail setting do not have the same tools as physicians in acute care settings to diagnose conditions such as the one Ms. Hill suffered from, and therefore it is not below the standard of care for a nurse not to have recognized Ms. Hill's condition.  The Court finds this opinion contains sufficient explanation.  Moreover, the Court finds the opinion is relevant to whether NaphCare or its employees breached the standard of care.  Accordingly, except for the first sentence contained in this paragraph, the motion to exclude this opinion is denied.  Dr. McMunn may testify to the opinion contained in this portion of his rebuttal report.

The next opinion contained in the rebuttal report opines that Ms. Hill's "pulmonary condition" was worsened due to her "personal choices" and "polysubstance abuse."  ECF No. 114 at 14.  NaphCare clarifies that it does not intent to elicit this opinion unless Plaintiff's experts opine on any pulmonary issues suffered by Ms. Hill.  Accordingly, the Court reserves ruling on the admissibility of this opinion, to the extent it remains at issue, until trial.  After testimony by Plaintiff's experts, the Court will confer with counsel and make any necessary rulings.

NaphCare does not intend to offer the final opinion contained in Dr. McMunn's supplemental report. Accordingly, the Court issues no ruling as to that opinion.

**B. Dr. Craig Pepin**

*1. Initial Report*

Dr. Pepin disclosed the following five opinions in an initial report:

1) Orthostatic vital sign testing (vital signs taken when the patient is supine, and then again with the patient standing) would not have been helpful in the evaluation of this patient. Orthostatic vital signs can be useful in patients with suspected GI bleeding, but not in the evaluation of a patient with complaints of abdominal pain.
2) The patient's clinical course and underlying disease are remarkably atypical. Patients with a perforation uniformly have tachycardia and escalating pain complaints.
3) The cause of the perforation is unclear. While the autopsy shows the site of perforation in the duodenum to be in close proximity to an adhesion to the liver, the mechanism of how an adhesion, or scar tissue, would lead to or predispose a patient to a perforation is unknown and highly unusual and unpredictable.
4) The timing of the perforation is unclear. The patient's normal vital signs throughout her time in the jail from August 21, 2018 until August 25, 2018 argues against a perforation predating her arrival to the medical watch unit. Patients with a perforation of the GI tract uniformly have tachycardia and other symptoms objectively identified through the taking of vital signs as well as escalating pain complaints.
5) Had the perforation been identified, the patient would have required extensive surgery including a likely Whipple procedure with diversion of the GI tract around the duodenum. This surgery typically requires a lengthy stay in the hospital. Because this was such an unusual presentation of an exceedingly rare cause of perforation, no one can say what the patient's chances of recovery would have been from an emergent, extensive surgery to repair the duodenal perforation.

Plaintiff challenges all five opinions under Rule 26(a)(2)(B) for lack of explanation. The Court finds the opinions provide Dr. Pepin's expected testimony in sufficient detail to prevent unfair surprise to Plaintiff. *See Elgas*, 179 F.R.D. at 299. As NaphCare notes, "[t]he purpose of these [expert] reports is not to replicate every word that the expert might say on the stand." *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009). "It is instead to convey the substance of the expert's opinion (along with the other background information required by Rule 26(a)(2)(B)) so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Id.* As noted above, "[t]he test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Elgas*, 179 F.R.D. at 299. Here, the Court finds the substance of Dr. Pepin's testimony crosses—by a slim margin—the required threshold of specificity under Fed. R. Civ. P. 26(a)(2)(B). The Court therefore denies the motion to exclude with respect to Dr. Pepin's initial report. Dr. Pepin may testify to the opinions contained in his initial report; he may not, however, provide any explanation that is not contained in the report.

2. *Supplemental Report*

Dr. Pepin disclosed two additional opinions—opinions six and seven—in a supplemental report. Opinion six is as follows:

The medical records reviewed for this supplemental report, demonstrated a patient who struggled for years with drug abuse and multiple gastrointestinal complaints, including abdominal pain and change in bowel pattern. They also clearly showed how the patient's drug abuse negatively impacted the providers' ability to provide longitudinal and comprehensive care to the patient. This is demonstrated by her use of the emergency room for routine medical care, multiple missed appointments, noncompliance and, at times, difficulty in providing a clear medical history. On one occasion, she was described as a "poor historian" and the history was consistent with a "flight of ideas."

Plaintiff argues the opinion lacks the required explanation under Rule 26(a)(2)(B) and also will not help the jury as required by Fed. R. Evid. 702.  ECF No. 113 at 3-4.  Regarding the latter argument, Plaintiff states that opinions referencing or incorporating Ms. Hill's historical records cannot help the jury decide whether Nurse Gubitz acted reasonably under the circumstances confronting her because Nurse Gubitz never accessed or viewed those records and thus they did not factor into her decision about how to treat Ms. Hill.  ECF No. 113 at 4-5.  For its part, NaphCare argues the opinion provides "context" for the events at issue in this case by showing that "Ms. Hill's complaints, and refusals of medical care, were not isolated to this one period of incarceration in August 2018." ECF No. 137 at 6.  NaphCare argues it is "important for the jury to hear that Ms. Hill's behavior on August 25, 2018 was consistent with both her prior incarcerations in the Spokane County Jail (prior refusals of care, prior abdominal pain) [and] her prior healthcare experiences in the community."  ECF No. 137 at

ORDER - 17

6.[5]  Plaintiff replies that using the evidence for this purpose is expressly prohibited

by Fed. R. Evid. 404(b).  ECF No. 145 at 5.  That rule provides, in relevant part:

> Evidence of any other crime, wrong, or act is not admissible to prove
> a person's character in order to show that on a particular occasion the
> person acted in accordance with the character.

The Court agrees that Fed. R. Evid. 404(b) prohibits NaphCare from using

Ms. Hill's prior acts of refusal to prove her character for refusing medical care and

that she acted in accordance with her character on August 25, 2018.  Likewise,

Fed. R. Evid. 404(b) prohibits NaphCare from using Ms. Hill's prior instances of

providing a poor medical history to prove that Ms. Hill was a poor historian and

acted in accordance with this character trait on August 25, 2018.  In contrast, any

medical refusals or instances of providing poor history by Ms. Hill during her

confinement from August 21, 2018 until the time of her death four days later are

relevant and admissible to show Ms. Hill's course of conduct during her final

period of confinement (as opposed to her conformance with a character trait).

While the Court finds that refusals of care from August 21, 2018 until Ms. Hill's

---

[5] The supplemental records about which Dr. Pepin provided supplemental opinions

were medical records from community healthcare providers.  They were not

NaphCare records from Ms. Hill's previous periods of confinement in the Spokane

County Jail.  *See* ECF Nos. 82, 83, 85.

ORDER - 18

death are relevant, Dr. Pepin's supplemental report does not purport to rely on or discuss any refusals by Ms. Hill during the period of confinement immediately preceding her death.  Indeed, Dr. Pepin's supplemental report was based on community health records, not records from NaphCare regarding Ms. Hill's confinement from August 21, 2018 until her death.  *See* ECF Nos. 82, 83, 85.  Based on Ms. Hill's history as gathered from community health records, Dr. Pepin concludes that Ms. Hill used emergency services for routine care, missed appointments, failed to comply with medical instruction, and at times failed to provide a clear medical history.  Dr. Pepin attributes Ms. Hill's behaviors to drug use and opines that these behaviors "negatively impacted the providers' ability to provide longitudinal and comprehensive care" to Ms. Hill.

The Court finds Dr. Pepin's sixth opinion is of limited relevance given the undisputed fact that Nurse Gubitz did not review the community medical records at issue prior to making decisions about Ms. Hill's medical care.  Moreover, the opinion's focus on Ms. Hill's improper use of emergency services, her alleged noncompliance, and her difficulty in providing a clear medical history invite an emotional response from the jury regarding the type of person and patient that Ms. Hill was.  The Court finds the opinion creates a danger of unfair prejudice that substantially outweighs any minimal probative value it may have.

1    As discussed above and as set forth orally on the record, only the refusals of

2    care that occurred during Ms. Hill's final period of confinement are relevant to the

3    issues in this action and admissible under the rules of evidence.  Other historical

4    refusals and the purpose to which NaphCare seeks to put them through the use of

5    expert testimony run afoul of Fed. R. Evid. 404(b).  Because Dr. Pepin is not

6    relying on any relevant and recent instances of refusal, and because the opinion is

7    substantially more prejudicial than probative and violates Fed. R. Evid. 404(b), the

8    Court grants the motion to exclude with respect to this opinion.

9    In his second supplemental opinion, which is labeled as opinion seven,

10    Dr. Pepin opines that:

11    The patient's presentation to the emergency room 8/23/2017 was
        similar to the patient's clinical appearance 8/25/2018. At both times,
12    the patient had complaints of severe abdominal pain with normal vital
        signs. In the ER, 8/23/2017 she was evaluated by the medical team
13    and an abdominal/pelvis CT was obtained. The results of the CT was
        unremarkable (which means the abdomen and pelvis appeared
14    healthy) and the cause of the patient's pain was determined by the
        treated [sic] physicians to be acute opiate and methamphetamine
15    intoxication and delirium. This diagnosis was supported by a urine
        toxicology screen showing the presence of methamphetamine, opiates
16    and amphetamines. The similarities between the two presentations,
        separated by almost exactly 1 year, demonstrate that RN Gubitz's
17    decision to continue close monitoring at the jail was within the
        standard of care. Despite extensive [sic] testing to find the cause of
18    the abdominal pain, the medical team in 2017, concluded that Ms. Hill
        was suffering from opiate and methamphetamine intoxication. This
19    supports RN Gubitz's decision in 2018, based on the normal vital
        signs and complaints of abdominal pain, to employ more close
20    observation on the medical watch floor and defer transfer to the
        hospital based on her conclusion that Ms. Hill was suffering from

ORDER - 20

methamphetamine withdrawal or methamphetamine acute intoxication, the same conclusion reached by the medical team the prior year.

It is undisputed that Nurse Gubitz was not aware of the previous medical interactions discussed in this opinion.  Nonetheless, NaphCare argues this opinion is relevant and helpful to the jury because it shows that Ms. Hill previously complained of abdominal pain and medical personnel ultimately concluded that no medical intervention was necessary.  NaphCare argues this is support for its argument that Nurse Gubitz followed the standard of care in this case.  The Court finds NaphCare's stated purpose for introducing the opinion invites a danger of misleading and confusing the jury.  As the Court will instruct at the close of trial, the jury must determine whether Nurse Gubitz complied with the standard of care in this case by answering whether she exercised the degree of skill, care, and learning expected of a reasonably prudent registered nurse in the State of Washington acting in the same or similar circumstances.  *See* WPI 105.01. Reduced to its essence, whether the standard of care is met depends on whether Nurse Gubitz took reasonable action for someone in her position in response to the information confronting her.  This includes not only the ultimate treatment, if any, rendered by Nurse Gubitz, but also the full course of Nurse Gubitz's evaluation and conduct.  It would be improper for counsel to suggest to the jury that Nurse Gubitz met the standard of care in this case because in a previous instance from a

ORDER - 21

year prior, Ms. Hill complained of abdominal pain to different medical providers in

a different setting, underwent evaluation and testing by those other medical

providers, and ultimately required no medical intervention—all of which Nurse

Gubitz was not aware of.  Counsel, however, intends to offer the opinion to make

precisely this argument.  The Court will not permit counsel to do so, as this would

mislead the jury and pervert the applicable legal standards.  Because the opinion is

not relevant to the reasonableness of Nurse Gubitz's actions and creates a danger

of misleading the jury, the Court excludes the opinion under Fed. R. Evid. 403.

**C. Dr. Alfred Joshua**

Dr. Alfred Joshua disclosed three supplemental opinions.  Plaintiff did not

challenge the first or second supplemental opinion.  *See* ECF No. 113 at 9-11.

Plaintiff does, however, challenge the third supplemental opinion, which states:

> **3.  Ms. Hill's personal history of illicit drug use which included heroin and methamphetamine abuse created conditions where she was much more likely to suffer from adverse events that could result in significant morbidity and mortality.**
>
> While Ms. Hill's ultimate cause of death was from a rare clinical event (lysis of unknown duodenal liver adhesions) and would not be foreseeable or predictable to any clinical staff, her personal history of illicit drug use posed considerable harm to her long-term health. Heroin and amphetamine abuse can result in overdose, increased risk of suicide, stroke, heart attack, trauma, and various infections including Hepatitis C, HIV, and other complications such as septic emboli and endocarditis. These types of complications are not uncommon to individuals who abuse opiates and amphetamines. Ms. Hill similarly suffered these same risks from her confirmed

ORDER - 22

methamphetamine and heroin use which was confirmed based on her personal admission to heroin use and toxicology screen.

ECF No. 114 at 19 (bold in original).

Plaintiff argues this opinion implies there is a connection between Ms. Hill's historical drug use and her cause of death and should therefore be excluded under Fed. R. Evid. 403. The Court finds the opinion is relevant to damages and is not unduly prejudicial. The Court does not find the opinion on its face purports to connect Ms. Hill's drug use to her cause of death. Plaintiff can use cross-examination and argument as it sees fit to dispel any perceived inferences about which Plaintiff has concern. The Court also declines to exclude the opinion based on arguments that the opinion is untimely because Dr. Pepin was previously aware of Ms. Hill's drug use. While records obtained prior to the supplemental records contained information regarding Ms. Hill's drug use, the supplemental records shed further light on the extent and duration of Ms. Hill's drug use. The Court finds the supplemental opinion is appropriately rendered in response to this additional information. Accordingly, the Court denies the motion to exclude with respect to Dr. Joshua's third supplemental opinion.

**D. Motion for Reconsideration**

Based on its perception of the Court's oral rulings at the June 23, 2022 hearing, NaphCare filed a motion for reconsideration on June 27, 2022, asking the Court to reconsider its rulings as to Dr. Pepin and Dr. McMunn. With respect to

Dr. Pepin, the Court did not issue rulings on the admissibility of his opinions at the

hearing; the Court instead took the issue under advisement.  NaphCare's motion to

reconsider as to Dr. Pepin is based upon the mistaken assumption that the Court

excluded Dr. Pepin's testimony at the hearing.  As set forth in this order, the Court

finds the opinions expressed in Dr. Pepin's initial report are admissible.

Accordingly, the motion to reconsider with respect to Dr. Pepin is denied as moot.

As for Dr. McMunn, NaphCare urges the Court to reconsider its ruling as to

Dr. McMunn's initial report, repeating its previous arguments that Dr. McMunn's

report complies with Fed. R. Civ. P. 26(a)(2)(B).  The Court declines the invitation

to reconsider its ruling.  For the reasons stated in this order, Dr. McMunn's initial

report fails to comply with Fed. R. Civ. P. 26(a)(2)(B) and is excluded in its

entirety.  The Court likewise declines to reconsider its rulings with respect to

Dr. McMunn's additional opinions.  The Court notes that it has denied Plaintiff's

motion to exclude with respect to certain of Dr. McMunn's opinions, and

Dr. McMunn may therefore testify as to those opinions.

1    Accordingly, **IT IS ORDERED:**

2    1.    Plaintiff's Motion to Exclude the Testimony of Certain Expert

3    Witnesses Identified by Defendant NaphCare, **ECF Nos. 56, 113,** is **GRANTED**

4    **IN PART** and **DENIED IN PART** as set forth in this order.

5    2.    Defendant NaphCare's Motion for Reconsideration, **ECF No. 176**, is

6    **DENIED**.

7    **IT IS SO ORDERED.** The District Court Executive is directed to file this

8    order and provide copies to counsel.

9    DATED July 8, 2022.

10

11    _s/Mary K. Dimke_
MARY K. DIMKE

12    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

ORDER - 25