1  Budge & Heipt, PLLC
   808 E. Roy St.
2  Seattle, WA 98102
   (206) 624-3060
3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON
8

9  THE ESTATE OF CINDY LOU HILL,
   by and through its personal representative   No. 2:20-cv-00410-MKD
   Joseph A. Grube,
10
                                Plaintiff,      PLAINTIFF'S OPPOSITION TO
11                                              NAPHCARE'S POST-TRIAL
                vs.                             MOTIONS
12
   NAPHCARE, INC, an Alabama
   corporation; and SPOKANE                     Oral Argument:
13 COUNTY, a political subdivision of           November 16, 2022 at 1:30 p.m.
   the State of Washington,
14
                                Defendants.
15

16

17

18

19

20

OPPOSITION TO POST-TRIAL MOTIONS -
CASE NO. 2:20-cv-00410-MKD

BUDGE❦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

I.   INTRODUCTION ............................................................................. 1

II.  ARGUMENT ..................................................................................... 2

  A.   The Court Should Deny NaphCare's Motion for Judgment as a Matter
       of Law Because Substantial Evidence Supports the Jury's Verdict. ......... 2

    1.   Evidence of NaphCare's Unconstitutional Medical Watch
         Practice Was Overwhelming and Largely Unrebutted. ..................... 2

    2.   NaphCare Cannot Avoid *Monell* Liability Based on "Insufficient
         Evidence of Deliberate Indifference." ............................................. 8

    3.   NaphCare's Custom Was the Moving Force Behind Ms. Hill's
         Suffering and Death. .................................................................... 10

  B.   The Jury's Punitive Damages Verdict is Constitutional and
       Should Not Be Remitted. ............................................................... 12

    1.   The Court Should Reject NaphCare's Attempt to Contrive a 1:1
         Ratio Rule for Section 1983 Cases. ............................................... 12

    2.   The Jury's Punitive Damages Verdict Does Not Violate
         Due Process Under *Gore* and *State Farm*. ....................................... 14

      (a)   The Conduct at Issue Was Highly Reprehensible. ................. 14

      (b)   The Less-Than-9:1 Ratio Is Consistent with Comparable
            Cases and Is Not Constitutionally Excessive. ......................... 17

      (c)   Comparable Civil Penalties Do Not Shed Light on the
            *Gore* Analysis. ......................................................................... 21

    3.   NaphCare Cannot Rely on New Evidence to Support Its Motions. .. 22

C.    NaphCare's Motion for a New Trial Should Also Be Denied. ................23

    1.    Giving Jury Instruction 31 Was Not Plain Error and Does Not Entitle NaphCare to a New Trial. ......................................................23

    2.    The Court's Bifurcation Decision Does Not Warrant a New Trial. .28

III. CONCLUSION...................................................................................30

BUDGE❧HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

# TABLE OF AUTHORITIES

Cases

*Aleo v. SLB Toys USA, Inc.*, 995 N.E.2d 740 (Mass. 2013) ............................ 19, 20

*Allen v. Takeda Pharm. N. Am., Inc.*, No. MDL No. 6:11-md-2299,
    2014 U.S. Dist. LEXIS 152066 (W.D. La. Oct. 27, 2014) ......................... 15, 21

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK,
    2017 U.S. Dist. LEXIS 119149 (N.D. Cal. July 28, 2017) .........................24

*Arizona v. Asarco LLC*, 733 F.3d 882 (9th Cir. 2013) ...........................................12

*Bains, LLC v. Arco Prods. Co.*, 405 F.3d 764 (9th Cir. 2005) ....................... 15, 17

*Blount v. Stroud*, 915 N.E.2d 925 (Ill. App. Ct. 2009) ..........................................20

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) ....................................... 12, 14

*Boeken v. Philip Morris Inc.*, 127 Cal. App. 4th 1640 (Cal. App. 2005)...............19

*C.B. v. City of Sonora*, 769 F.3d 1005 (9th Cir. 2014) ..................................... 24, 26

*Castro v. City of L.A.*, 833 F.3d 1060 (9th Cir. 2016) ........................................7, 9

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
    528 F.3d 1001(8th Cir. 2008) ....................................................................18

*Dawson v. S. Corr. Entity*, No. C19-1987, 2021 U.S. LEXIS 177751
    (W.D. Wash. Sept. 17, 2021)........................................................................7

*Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214 (7th Cir. 2021) ...................10

*Dees v. Cty. of San Diego*, No. 3:14-cv-0189,2017 U.S. Dist. LEXIS 6280
    (S.D. Cal. Jan. 17, 2017) ............................................................................26

*Diaz v. Tesla*, No. 3:17-cv-06748, 2022 U.S. Dist. LEXIS 68696
    (N.D. Cal. April 13, 2022)...........................................................................18

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ................................... 12, 13, 16

*Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521(Tenn. 2008)..............................19

*Flores v. City of Westminster*, 873 F.3d 739 (9th Cir. 2017) ................................12

*Gibson v. Cty. of Washoe*, 290 F.3d 1175 (9th Cir. 2002).....................................25

*Gordon v. County of Orange*, 6 F.4th 961 (9th Cir. 2021) ........................................8

*Grassie v. Roswell Hosp. Corp.*, 258 P.3d 1075 (N.M. Ct. App. 2010).................19

BUDGE❦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

*Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852 (E.D. Wis. 2015) ........................13

*Harper v. City of L.A.*, 533 F.3d 1010 (9th Cir. 2008) .........................................2

*Henderson v. Young*, No. C05-0234, 2008 U.S. Dist. LEXIS 133236
 (N.D. Cal. July 17, 2008) ...................................................................13

*Henry v. County of Shasta,* 132 F.3d 512 (9th Cir. 1997) .....................................10

*Hunter v. Durell*, No. C16-14455, 2018 U.S. Dist. LEXIS 202545
 (W.D. Wash. Nov. 29, 2018) ...............................................................18

*King v. Geico Indem. Co.*, 712 Fed. Appx. 649 (9th Cir. 2017)..............................20

*Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008)................................................18

*Long v. Cty. of L.A.*, 442 F.3d 1178 (9th Cir. 2006)..............................................25

*Mann v. Cty. of San Diego*, No. 3:11-cv-0708, 2016 U.S. Dist. LEXIS 80035
 (S.D. Cal. June 17, 2016) ..................................................................25

*Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109 (9th Cir. 2009) .......................13

*Miller v. Equifax Info. Servs., LLC*, No. 3:11-cv-01231,
 2014 U.S. Dist. LEXIS 69450 (D. Or. May 20, 2014)......................................18

*Morris v. Bland*, 666 Fed. Appx. 233 (6th Cir. 2016) ..................................... 18, 20

*Murphy v. Gilman,* 551 F. Supp. 2d 677 (W.D. Mich. 2008).......................... 18, 20

*Nordenstrom v. Corizon Health, Inc.*, 3:18-cv-01754,
 2021 U.S. Dist. LEXIS 115139 (D. Or. June 18, 2021).........................................7

*Ondrisek v. Hoffman*, No. 4:08-cv-04113, 2011 U.S. Dist. LEXIS 172014
 (W.D. Ark. Sept. 13, 2014) ..................................................................18

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. Of Life Activists*,
 422 F.3d 949 (9th Cir. 2005)..................................................................17

*Provost v. City of Newburgh*, 262 F.3d 146 (2nd Cir. 2001)....................................22

*Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776 (9th Cir. 2018)..........................29

*San Fernando Lenders. LLC v. Compass USA*. No. 2:07-cv-892,
 2013 U.S. Dist. LEXIS 108183 (D. Nev. July 30, 2013)....................................21

*Sandoval v. Cty. of San Diego*, 985 F.3d 657 (9th Cir. 2021) ..................... 7, 8, 10

*Schaub v. VonWald*, 638 F.3d 905, (8th Cir. 2011).............................................22

*Sharif v. Ghosh*, No. 12-C-2309, 2014 U.S. Dist. LEXIS 45012
 (N.D. Ill. April 1, 2014).......................................................................9

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

1

2  *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
      251 F.3d 814 (9th Cir. 2001) ..................................................................23

3  *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .......................24

4  *Smith v. Wade*, 461 U.S. 30 (1983) ..........................................................13

   *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)................ passim

5  *Teixeira v. Town of Coventry*, 882 F.3d 13 (1st Cir. 2018) ......................24

6  *Thomas v. Cannon*, 289 F. Supp. 3d 1182 (W.D. Wash. 2018) ...............22

7  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012).....................25

   *Txo Prod. Corp v.* Alliance *Res. Corp.*, 509 U.S. 443 (1993)..................22

8  *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735 (9th Cir. 2003) ........23

9  *Union Pac. RR v. Barber*, 149 S.W.3d 325 (Ark. 2004) ..........................19

   *United States v. Alghazouli*, 517 F.3d 1179 (9th Cir. 2008)...................27

10 *United States v. Ancheta*, 38 F.3d 1114 (9th Cir. 1994)..........................24

11 *United States v. Del Toro-Barboza*, 673 F.3d 1136 (9th Cir. 2012) ........23

12 *United States v. Jaimez*, No. 19-50253, 2022 U.S. App. LEXIS 23504
      (9th Cir. Aug. 23, 2022) ....................................................................27

13 *United States v. Span*, 970 F.2d 573 (9th Cir. 1992)...............................28

14 *Valenzuela v. City of Anaheim*, Nos. SACV 17-00278, SACV 17-02094,
      2020 U.S. Dist. LEXIS 257698 (C.D. Cal. March 11, 2020) ...................... 25, 26

15 *Valerie v. Mich. Dept. of Corr.*, No. 2:08-cv-5, 2008 U.S. Dist. LEXIS 93558
      (W.D. Mich. Nov. 17, 2008) ..............................................................14

16 *Weeks v. Angelone*, 528 U.S. 225 (2000)................................................29

17 *Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224 (3rd Cir. 2005).........21

   *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020 (9th Cir. 2003)..........17

18 **Statutes**

19 42 U.S.C. § 1997, *et seq.*..........................................................................21

20

OPPOSITION TO POST-TRIAL MOTIONS - v
CASE NO. 2:20-cv-00410-MKD

BUDGE◈HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

# I.    INTRODUCTION

The Court should deny NaphCare's post-trial motions because its arguments are legally wrong, contrary to the evidence, and procedurally restrained.

First, the evidence fully supports the verdict on Plaintiff's *Monell* claim. The trial exposed a regular and dangerous NaphCare custom of using medically untrained guards to monitor patients in need of medical monitoring by medical professionals—including those who were acutely ill. As a direct result of that custom, Cindy Lou Hill died an excruciating death while on "medical watch." The law does not require proof of "other victims." As shown below, the evidence was more than sufficient to support *Monell* liability, especially when viewed in the light most favorable to the jury's verdict, as required.

Second, the Court should deny the motion to reduce the jury's punitive damages verdict. Insofar as NaphCare urges the Court to impose a strict 1:1 ceiling on the ratio of punitive to compensatory damages in this § 1983 case based on the Supreme Court's maritime ruling in *Exxon*, no court has ever applied *Exxon* in that fashion, and multiple courts have explicitly rejected invitations to do so. The less-than-9:1 ratio here is wholly in line with ratios the Ninth Circuit and other courts have upheld in comparable cases in the post-*Gore/State Farm* (and *Exxon*) era.

Lastly, the Court did not commit any error justifying a new trial. While NaphCare claims instructional error, it concedes it did not object to the pertinent

instruction and must therefore show "plain error," which it cannot do. NaphCare also fails to establish that the Court's bifurcation decision warrants a new trial. Its request to try the case to a new jury, hoping for a different result, should be denied.

## II.    ARGUMENT

### A.    The Court Should Deny NaphCare's Motion for Judgment as a Matter of Law Because Substantial Evidence Supports the Jury's Verdict.

NaphCare argues for judgment in its favor on Plaintiff's *Monell* claim based on the sufficiency of the evidence. In deciding such a motion, courts must "view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008). The verdict "must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion." *Id.* (internal quotation marks omitted). Applying these legal standards, the Court should deny NaphCare's motion.

### 1.    Evidence of NaphCare's Unconstitutional Medical Watch Practice Was Overwhelming and Largely Unrebutted.

NaphCare's lead argument regarding *Monell* liability is that Plaintiff failed to prove NaphCare had a "longstanding practice of using medically untrained jail guards to monitor NaphCare patients in need of medical monitoring by medical professionals." ECF 286 at 19:8-11 (quoting ECF 236 at 39). NaphCare is incorrect,

as the evidence on that point establishes both the existence of the practice *and* its applicability to patients, like Ms. Hill, who were acutely ill.

Dr. Lori Roscoe, an expert in correctional healthcare, reviewed substantial information regarding NaphCare's practices (Tr. 166-67) and testified as follows:

Q:    Based on your review of the records and the deposition testimony in the case, was it a regular practice for NaphCare to turn its ill patients over to security guards for medical watch here at the Spokane County Jail?

A:    Yes.

Q:    *Was that a regular practice **even for acutely ill inmates**?*

A:    Yes.

Tr. 205:11-21. *See also* Tr. 204:23-205:1 (NaphCare placed no limitations on the kinds of patients who could be transferred to medical watch and the practice included "acute medical patients").

Nurse Gubitz herself confirmed NaphCare's custom of using medical watch for patients suffering from "acute medical problems":

Q:    But it was the custom, was it not, at the jail that if a patient was *suffering from an acute medical problem* and were going to be put on medical watch, that whatever watching there was would be done by nonmedical people?

A:    You could characterize it that way, yes.

Tr. 654:25-655:4. This was consistent with her deposition testimony that "[t]he medical watch cells on 2 West were used for patients who needed acute medical monitoring," as elicited at trial through Dr. Alfred Joshua. *See* Tr. at 107:3-16.

Nurse Gubitz tried to downplay her prior testimony by claiming that when she

BUDGE❦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

used the word "acute," she was referring to "something that happened recently." Tr. 735:2-13. However, the jury was free to reject that post hoc explanation. In fact, Nurse Gubitz made clear at trial that she transferred Ms. Hill to medical watch *knowing* her symptoms might indicate a serious, urgent medical condition (Tr. 638:1-639:2) and that she took this action "pursuant to the usual and regular customs and practices of NaphCare." Tr. 675:22-25. She specifically testified:

> Q:    For patients like Cindy Hill and the manner in which she was placed on medical watch, did you follow the same NaphCare custom that you followed for others?
>
> A:    Yes, I did.

Tr. 676:9-12.

Additionally, the "Medical Watch Observation Form," which NaphCare used to initiate patient placements and to direct the officers, lists *numerous* medical symptoms that could indicate serious—even life-threatening—medical conditions: difficult to wake, difficulty breathing, change in speech, seizure-like activity, worsening chest pain, inability to answer simple questions, facial droop, and weakness to one side of the body. Ex. 5. This evidence, too, shows that NaphCare contemplated its medical watch practice would be used for patients who had or were at risk of developing potentially serious medical conditions.

NaphCare now contends that Nurse Gubitz's decision to send Ms. Hill—"a patient in severe pain"—to medical watch was a negligent "one-time *deviation* from

established practice." ECF No. 286 at 14 (emphasis in original). However, if that were the case, one would expect NaphCare to have taken *some* sort of corrective action against her following Ms. Hill's death. Instead, nobody from the company even questioned the correctness of her actions. Dr. Jeffrey Alvarez was responsible for all NaphCare policies and procedures and had the authority and responsibility to recommend discipline for Nurse Gubitz's decision to put her seriously ill patient on "medical watch" if he thought it necessary. Tr. 580:5-11. He participated in Cindy Hill's death review, which included examining her entire medical record (Tr. 576:25-577:12) and entailed "multiple meetings at the corporate level to discuss what happened to [her]." Tr. 579:11-14. However, following this review, after seeing the serious symptoms Nurse Gubitz documented before placing Ms. Hill on medical watch, discovering the utter lack of documented medical attention she received while there, and learning the cause of her death, Dr. Alvarez recommended no discipline for Nurse Gubitz. Tr. 580:14-16. NaphCare never even *questioned* the propriety of sending an acutely ill patient (as clearly reflected in the records corporate officers reviewed) to "medical watch" to be monitored solely by medically untrained guards. Tr. 582-85 (Alvarez); 674-75 (Gubitz). The jury could reasonably conclude from this evidence that Nurse Gubitz's decision to place Ms. Hill on medical watch was consistent with the company's standard customs and practices at the time.

Once NaphCare placed its patients in medical watch, they received zero

medical monitoring—making the practice woefully deficient and bound to fail. Jessica Wirth was familiar with the "usual practices and customs" for "medical watch." Tr. 315-316. She explained that "it was a regular practice of NaphCare to have . . . corrections officers such as [her]self do medical watch for their patients." Tr. 318:7-10. Yet they were not checking for medical symptoms, looked at patients only cursorily, and could not discern whether patients were suffering from serious symptoms or even if they were unconscious or dying. Tr. 321-22; 327-28. The "typical and ordinary practice for medical watch" involved taking a few seconds to "confirm signs of life" and moving on, making it impossible to adequately evaluate their well-being. Tr. 320:25-322:14. Officer Byington also "follow[ed] the usual customs and practices for medical watch of NaphCare patients." Tr. 365:6-9. Pursuant to these customs, he did not assess or observe Ms. Hill for any medical signs or symptoms. Tr. 365-66; 382-85. He did not know if she was lying in silent pain, unconscious, feverish, weak, suffering abnormal vital signs, short of breath, confused, or experiencing other medical symptoms—including those on the "medical watch" form NaphCare used. Tr. 382-85; Ex. 5. NaphCare patients, once on "medical watch," received no medical monitoring; guards could not even tell if they were dying. Tr. 364-371. *See also* Tr. 399-404; 408-09; 416-18. Dr. Roscoe detailed the serious deficiencies in the practice, explaining that patients who needed monitoring by medical professionals got none, putting them at substantial risk of

serious harm. Tr. 200-06; 223:24-224:2; 254:21-23; 265:16-20; 266:3-13.

NaphCare attempts to bolster its argument by saying that "Plaintiff has not identified ***any other instance*** in which a detainee was moved to 'Medical Watch' and received allegedly inadequate monitoring or care." ECF 286 at 21 (emphasis in original). This argument is legally flawed. In the Ninth Circuit, the *Monell* standard "*does not require proof of a prior injury*." *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 682 (9th Cir. 2021) (emphasis added). In *Sandoval*, a jail death case, the court explained: "A constitutional injury can be substantially certain to follow from a practice even if an injury has yet to occur. Otherwise, every *Monell* defendant would get one free pass for policies or practices that are substantially certain to violate an individual's constitutional rights." *Id*. (internal quotation marks and citation omitted). *See also Castro v. City of L.A.*, 833 F.3d 1060, 1074 n.7 (9th Cir. 2016) ("The entity defendants also argue that a plaintiff can establish neither a custom or practice, nor deliberate indifference, without proving prior incidents of harm. . . . [This] argument is legally inaccurate."); *Nordenstrom v. Corizon Health, Inc*., 3:18-cv-01754, 2021 U.S. Dist. LEXIS 115139, at *55-56 (D. Or. June 18, 2021) (practice of admitting severely intoxicated detainees sufficient to show custom; rejecting argument that *Monell* claim failed without evidence of other harm); *Dawson v. S. Corr. Entity*, No. C19-1987, 2021 U.S. LEXIS 177751, at *15-17 (W.D. Wash. Sept. 17, 2021) (rejecting NaphCare motion on *Monell* claim and finding that custom of

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

not screening mentally ill inmates was sufficient without proof of other victims).

On this record, NaphCare's reliance on *Gordon v. County of Orange*, 6 F.4th 961 (9th Cir. 2021), is seriously misplaced. The *Gordon* plaintiff had *no* custom or practice evidence, direct or otherwise. Here, in contrast, there is substantial evidence—summarized above—that NaphCare had a custom and practice of using medically untrained jail guards to monitor NaphCare patients in need of medical monitoring by medical professionals. That evidence is more than sufficient to preclude judgment in NaphCare's favor, particularly when viewed in the light most favorable to Plaintiff and the jury's verdict, as required. As the Ninth Circuit affirmed in *Sandoval*, NaphCare does not get "one free pass." 985 F.3d at 682. NaphCare's attempt to create a new obstacle to *Monell* liability thus fails.

### 2. NaphCare Cannot Avoid *Monell* Liability Based on "Insufficient Evidence of Deliberate Indifference."

NaphCare next argues that it is entitled to judgment because there was "insufficient evidence of [its] deliberate indifference." ECF 286 at 21-26. Pursuant to Instruction 31 (which was based on Ninth Circuit Model Instruction 9.5), Plaintiff was not required to prove the company's "deliberate indifference." NaphCare did not object to this instruction and cannot show plain error. *See infra* at § II.C.1. Further, there was strong and largely unrebutted evidence that NaphCare was deliberately indifferent to the rights of individuals, like Ms. Hill, under its care.

In the Ninth Circuit, an entity's deliberate indifference, when relevant, is

always "an objective inquiry." *Castro*, 833 F.3d at 1076. This is because "entities do not themselves have states of mind." *Id*. Thus, "deliberate indifference may be established by demonstrating departure from professional judgment, practice, or standards, making those referenced industry standards relevant" in cases against correctional healthcare companies. *Sharif v. Ghosh*, No. 12-C-2309, 2014 U.S. Dist. LEXIS 45012, at *10 (N.D. Ill. April 1, 2014).

Here, Dr. Roscoe testified about her familiarity with the applicable industry standards (Tr. 164:10-13) and NaphCare's "significant" departure from those standards in allowing its nurses to put sick patients who needed *medical* monitoring in the hands of untrained guards who engaged in no such monitoring. Tr. 205:22-206:17; 254:21-23; 265:16-20; 266:3-13. She testified that this practice put people at "substantial risk of serious harm." Tr. 223:24-224:2. NaphCare's constructive knowledge of the risk is inferable from its departure from these norms.

Clearly, NaphCare's use of the Medical Watch Form (Ex. 5), directing officers to watch for potentially serious medical symptoms, showed it knew those patients needed to be medically monitored and that failing to do so could put them at risk. To say that NaphCare would be ignorant of the risks of having medically untrained guards monitor patients in need of medical monitoring would defy common sense and NaphCare's presumed expertise.

Moreover, "a rational fact finder may properly infer the existence of a

BUDGE❧HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

previous policy or custom of deliberate indifference" based on a lack of policy change, discipline, or admission of error following a significant event. *Henry v. County of Shasta,* 132 F.3d 512, 519 (9th Cir. 1997). NaphCare's abject failure to change its practices after Ms. Hill's death, despite its knowledge of what happened, bears directly on that indifference. Following many meetings to discuss what happened, "to learn if our system needs to make any changes at all" (Tr. 576:25-577:12), NaphCare's policymaker recommended no "changes to any NaphCare policies or procedures at the Spokane County Jail" (Tr. 580:1-4). *See also* Ex. 11 at 4 ("No additional changes required.") Additionally, NaphCare's "failure even after being sued" to correct or modify the manner of using medical watch is also "persuasive evidence of deliberate indifference." *Henry,* 132 F.3d at 520.

The Seventh Circuit's opinion in *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021), cited by NaphCare, is easily distinguished. The *Dean* plaintiff simply had no evidence to support the contention that the unique process in that case was part of an unconstitutional custom in any regard. Plaintiff here, in contrast, had substantial *direct* custom evidence. Moreover, to the extent the Seventh Circuit suggested in *Dean* that proof of a prior injury or a pattern of harm is required, that is not Ninth Circuit law. *See Sandoval, supra.*

### 3. NaphCare's Custom Was the Moving Force Behind Ms. Hill's Suffering and Death.

NaphCare next claims there was "insufficient evidence" that any NaphCare

practice was the "moving force" behind Ms. Hill's injury. ECF 286 at 26. To the contrary, there was clear, unrebutted evidence that NaphCare's practice and custom was "closely related" to the deprivation of Ms. Hill's right to adequate medical care and the "moving force" behind her suffering and death. *See* Instruction 31 (ECF 236 at 39). Had NaphCare not permitted its nurses to send its ill patients to be monitored by medically untrained jail guards on "medical watch," Nurse Gubitz instead would have had to either (1) transfer Ms. Hill to the hospital, (2) consult with a higher-level provider, or (3) direct that Ms. Hill be monitored on a regular basis by nurses. In any of those scenarios, Ms. Hill would have been spared needless suffering and survived.

The medical testimony by Dr. Schubl directly refutes NaphCare's argument, as does the standard of care testimony of Drs. Roscoe and Barnett about what reasonable doctors and nurses should (and would) do. Rather than securing proper medical care, Nurse Gubitz followed the "usual and regular customs and practices of NaphCare"—the same customs she followed "for others"—by sending her acutely ill patient to be monitored by medically untrained guards. She did so because, "if they needed acute monitoring, they would be moved to 2 West" and "the medical watch cells on 2 West were used for patients who needed acute medical monitoring." Tr. ECF 231 at 107. Far from a deviation in practice, Nurse Gubitz *followed* NaphCare's practice, as she did for others "like Cindy Hill." There is ample evidence that NaphCare's practice was the moving force behind Ms. Hill's painful death.

OPPOSITION TO POST-TRIAL MOTIONS - 11
CASE NO. 2:20-cv-00410-MKD

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

**B.**    **The Jury's Punitive Damages Verdict is Constitutional and Should Not Be Remitted.**

    **1.**    **The Court Should Reject NaphCare's Attempt to Contrive a 1:1 Ratio Rule for Section 1983 Cases.**

NaphCare boldly asserts that "there is essentially a *de facto* rule that in a case like this the ceiling is a 1:1 ratio with compensatory damages" and that "the award here fails as a matter of simple math." ECF 286 at 32, 33. To the contrary, the Supreme Court "has steadfastly refused to create a bright-line ratio[,]" *Arizona v. Asarco LLC*, 733 F.3d 882 (9th Cir. 2013), and has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula." *Flores v. City of Westminster*, 873 F.3d 739, 759 (9th Cir. 2017) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996)). Instead, "[t]he precise award in any case … must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). "Only when a [punitive damages] award can be characterized as grossly excessive in relation to [its goals of punishment and deterrence] does it enter the zone of arbitrariness that violates [due process]." *Gore*, 517 U.S. at 568. Far from being simple math, the required analysis is anything but mathematical.

NaphCare relies on *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) for its position that punitive damages in this case cannot exceed the amount of compensatory damages. ECF No. 286 at 10:13-16. However, in *Exxon*, the Court

OPPOSITION TO POST-TRIAL MOTIONS - 12
CASE NO. 2:20-cv-00410-MKD

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

explicitly noted that it was reviewing the punitive award there "for conformity with *maritime law*, rather than the outer limit allowed by due process." *Id*. at 502 (emphasis added). In the 14 years since *Exxon*, no court has ever extended this maritime limit to a § 1983 case or any civil rights case. In *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1122-23 (9th Cir. 2009), for example, the Ninth Circuit declined a clear opportunity to extend *Exxon's* 1:1 ceiling to "constitutional torts," noting that *Exxon* has "more rigorous standards than the constitutional limit" and that "[a]ny attempt to fashion a federal common law rule of reasonableness for punitive damage awards for constitutional torts . . . would have to make 'such modification or adaptation [to the common law] as might be necessary to carry out the purpose and policy' of § 1983." *Id.* at 1122-23 (quoting *Smith v. Wade*, 461 U.S. 30, 34 (1983)). NaphCare ignores this language from the Ninth Circuit.

NaphCare similarly ignores the multiple district court cases that explicitly reject overtures to apply the *Exxon* maritime rule to § 1983 cases. *See Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852, 879-80 (E.D. Wis. 2015) ("readily reject[ing]" for "multiple reasons" invitation to extend *Exxon* to § 1983 case and noting that "the Court cannot find any case law that *even questions* whether punitive damages in civil rights cases are available at ratios higher than 1:1") (emphasis added); *Henderson v. Young*, No. C05-0234, 2008 U.S. Dist. LEXIS 133236, at *23-28 (N.D. Cal. July 17, 2008) ("[T]he context and purpose of § 1983 counsel strongly against the extension

of *Exxon Shipping* urged by defendants"); *Valerie v. Mich. Dept. of Corr.*, No. 2:08-cv-5, 2008 U.S. Dist. LEXIS 93558, at \*21-28 (W.D. Mich. Nov. 17, 2008) (holding that *Exxon* does not apply to civil rights cases and § 1983 plaintiffs are "not limited by the strict 1:1 ratio between compensatory and punitive damages as outlined in the *Exxon* maritime case"). NaphCare's *Exxon* argument, like its "simple math" argument, easily fails. And the pertinent factors, discussed below, do not support NaphCare's argument that the punitive damages verdict violates due process.

**2.    The Jury's Punitive Damages Verdict Does Not Violate Due Process Under *Gore* and *State Farm*.**

The Supreme Court has set three guideposts to help answer whether a punitive damages award comports with due process: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418 (citing *Gore*, 517 U.S. at 575). Each is addressed below.

**(a)    The Conduct at Issue Was Highly Reprehensible.**

"The most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* at 419. The Supreme Court has "instructed courts to determine the reprehensibility of a defendant by considering" five factors, the first of which asks if the harm was

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

"physical" or merely economic. *Id*. Here, the harm was both physical and extreme. Cindy Hill suffered a slow, excruciating death. This is a far cry from the purely economic harm in *Gore* and the economic and emotional harm in *State Farm*.

As to the second reprehensibility factor—"whether the defendant's conduct demonstrated an indifference to or a reckless disregard of the health or safety of others" (*State Farm*, 538 U.S. at 419)—the jury found that NaphCare acted with "reckless disregard of Cindy Hill's rights," i.e., with "complete indifference" to her "safety or rights" or in the "face of a perceived risk" that its actions would violate her federal rights. Instruction 34. ECF 236 at 44. Whereas "reprehensibility should be discounted if defendants act promptly and comprehensively to ameliorate any harm they caused," a "clear failure to remedy or even address" that same conduct warrants opposite consideration. *Bains, LLC v. Arco Prods. Co.*, 405 F.3d 764, 775 (9th Cir. 2005). There was substantial evidence of NaphCare's failure to remediate. *See supra* at 5, 10.

The third reprehensibility factor—the plaintiff's financial vulnerability (*State Farm*, 538 U.S. at 419)—also supports the jury's verdict. Applied here, this factor necessarily focuses on physical or medical vulnerability. *See Allen v. Takeda Pharm. N. Am., Inc.*, No. MDL No. 6:11-md-2299, 2014 U.S. Dist. LEXIS 152066, at *87 n.164 (W.D. La. Oct. 27, 2014). Cindy Hill was uniquely vulnerable. Once she entered the jail, her access to medical care was entirely at NaphCare's mercy. If it

failed to provide her with necessary care, she was helpless. This vulnerability was (and is) shared by every detainee at the jail.

The fourth reprehensibility factor—whether the wrongful conduct involved repeated actions or was an isolated incident (*State Farm*, 538 U.S. at 419)—also weighs in Plaintiff's favor. Ms. Hill's transfer to medical watch and her lack of medical monitoring was merely one example of how NaphCare managed patients in need of closer medical monitoring. *See, e.g.,* Tr. 676:9-12 (Gubitz followed the same NaphCare custom she followed for others); *id*. at 654:25-655:4 (explaining it was the custom that if a patient was suffering from an acute medical problem and was put on medical watch, any "watching" would be by nonmedical people).

The fifth reprehensibility factor—whether the harm was "the result of intentional malice, trickery, or deceit, or mere accident" (*State Farm*, 538 U.S. at 419)—is to the same effect. While Ms. Hill's death may not have been a result of malice, trickery, or deceit, it was not a "mere accident." It was a foreseeable consequence of relying on medically untrained jail guards to monitor patients in need of *medical* monitoring. NaphCare adopted this so-called "medical watch" practice despite the obvious risks, and Plaintiff introduced strong circumstantial evidence that NaphCare's custom was a financially motivated business decision to save costs at the expense of patient care. *See* Tr. 408-13 (Hooper); Ex. 31. *See Exxon*, 554 U.S. at 494 ("Action taken or omitted in order to augment profit represents an enhanced

1    degree of punishable culpability . . . ."). This, too, indicates heightened

2    reprehensibility.

3              **(b)    The Less-Than-9:1 Ratio Is Consistent with Comparable**
              **Cases and Is Not Constitutionally Excessive.**

4          The second *Gore* guidepost looks to the relationship between the punitive

5    damages and the actual or potential harm suffered by the Plaintiff. The Supreme

6    Court has suggested that punitive damages at or above a 10-to-1 ratio are

7    constitutionally suspect. *State Farm*, 538 U.S. at 425 ("[I]n practice, few awards

8    exceeding a single-digit ratio between punitive and compensatory damages, to a

9    significant degree, will satisfy due process."); *id*. ("Single-digit multipliers are more

10   likely to comport with due process . . . ."). The ratio here is less than 9:1 (already

11   within single digits) and is closer to 6:1 when fees and costs are included. *See*

12   discussion *infra*. Either way, such a ratio is squarely within constitutional limits.

13         The Supreme Court has *never* invalidated a single-digit ratio on constitutional

14   grounds, and numerous courts in the post-*State Farm/Gore* era, including in the

15   Ninth Circuit, have upheld ratios at or near 9:1. *See, e.g.*, *Planned Parenthood of*

16   *Columbia/Willamette, Inc. v. Am. Coal. Of Life Activists*, 422 F.3d 949, 963 (9th Cir.

17   2005) ("Our constitutional sensibilities are not offended by a 9:1 ratio" in case of

18   threats but no physical harm); *Bains*, 405 F.3d at 777 (approving ratio between 6:1

19   to 9:1 in § 1981 discrimination case); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d

20   1020, 1044 (9th Cir. 2003) (upholding 7:1 ratio in discrimination case); *Kunz v.*

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

*DeFelice*, 538 F.3d 667, 679 (7th Cir. 2008) (affirming 9:1 ratio in § 1983 case of non-fatal police force); *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1021 (8th Cir. 2008) (approving 8:1 ratio in fraud case); *Diaz v. Tesla*, No. 3:17-cv-06748, 2022 U.S. Dist. LEXIS 68696, at *65 (N.D. Cal. April 13, 2022) (remitting punitive damages in discrimination case to "warranted and constitutional" 9:1 ratio); *Hunter v. Durell*, No. C16-14455, 2018 U.S. Dist. LEXIS 202545, at *42-45 (W.D. Wash. Nov. 29, 2018) (remitting punitive damages in non-fatal § 1983 excessive force case to 9:1 ratio); *Ondrisek v. Hoffman*, No. 4:08-cv-04113, 2011 U.S. Dist. LEXIS 172014, at *11 (W.D. Ark. Sept. 13, 2014) (approving 10:1 ratio in physical injury case); *Miller v. Equifax Info. Servs., LLC*, No. 3:11-cv-01231, 2014 U.S. Dist. LEXIS 69450, at *29 (D. Or. May 20, 2014) (reducing punitive damages to "constitutionally permissible" 9:1 ratio). Some of these cases involved compensatory damages totaling tens of thousands of dollars, others hundreds of thousands of dollars, and *Diaz* and *Ondrisek* over one million dollars. In each, the court upheld a ratio at or near 9:1.

Courts have likewise approved ratios in line with the ratio here in § 1983 cases involving the death of persons in jail or prison. In *Morris v. Bland*, 666 Fed. Appx. 233, 241 (6th Cir. 2016), the Sixth Circuit upheld an overall ratio of 5:1, with individual ratios of 10:1, for a prisoner's death from intestinal bleeding. And in *Murphy v. Gilman,* 551 F. Supp. 2d 677, 685-86 (W.D. Mich. 2008), the district

BUDGE❦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

court upheld a 10:1 ratio where a prisoner died from dehydration. Numerous state appellate courts undertaking the required federal constitutional analysis have similarly upheld ratios of 5:1, 7:1, 9:1 and even 10:1 (rounded) in wrongful death cases involving significant compensatory awards of $1 million, $2-3 million, and $5 million. *See, e.g.*, *Aleo v. SLB Toys USA, Inc.*, 995 N.E.2d 740, 756-58 (Mass. 2013) (upholding 7:1 ratio of $18 million in punitive damages to $2.64 million in compensatory damages); *Union Pac. RR v. Barber*, 149 S.W.3d 325, 348 (Ark. 2004), *cert. den.*, 543 U.S. 940 (2004) (upholding 5:1 ratio of $25 million in punitive damages to $5 million in compensatory damages); *Boeken v. Philip Morris Inc.*, 127 Cal. App. 4th 1640, 1649 (Cal. App. 2005), *cert den.*, 547 U.S. 1018 (2006) (upholding 9:1 ratio of $50 million in punitive damages to $5.5 million in compensatory damages); *Grassie v. Roswell Hosp. Corp.,* 258 P.3d 1075, 1089 (N.M. Ct. App. 2010) (upholding 10:1 ratio of $10 million in punitive damages to $993,000 in compensatory damages); *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 538-39 (Tenn. 2008) (upholding 5.35:1 ratio of $13.3 in million punitive damages to $2.5 million in compensatory damages).

NaphCare ignores the many cases upholding comparable ratios and argues instead that a 1:1 ratio is the presumptive maximum *in this case* because the compensatory damages of $2.75 million for Ms. Hill's suffering and death "are unquestionably substantial." ECF 286 at 32. But in cases involving death, a low

seven-figure award is not necessarily "substantial." *See Aleo,* 995 N.E.2d at 757 ("While $2,640,000 may be a substantial sum of money by many measures, its significance pales when viewed not as compensation for economic loss or emotional distress but for the loss of a young woman's life."). Moreover, courts recognize that juries may undervalue the lives of prisoners due to their status and lack of economic damages. *See Murphy,* 551 F. Supp. 2d at 685-86 (compensatory damages of $250,000 for prisoner's death was "misleadingly low"); *Morris,* 666 Fed. Appx. at 241 (compensatory damages of $500,000 were "deflated" due to decedent's lack of lost wages). Here, there were no economic damages resulting from Ms. Hill's death, and the jury assessed only $750,000 in damages flowing from her loss of life—an amount that is not particularly substantial. Whether or not the jury undervalued her life as *Murphy* and *Morris* suggest, an 8.7:1 ratio is within constitutional limits.

Finally, while the analysis above assumes that the ratio in this case is 8.7:1, it is closer to 6:1 if the Court includes the award of prevailing party attorneys' fees in calculating the ratio. This is allowed by the Ninth Circuit when fees and costs are part of the statute under which the plaintiff prevails. *See King v. Geico Indem. Co*., 712 Fed. Appx. 649, 650 (9th Cir. 2017). In particular, where fees are recoverable to vindicate civil rights under 42 U.S.C. § 1988, they should be added to the compensatory damages in the ratio calculation. *See Blount v. Stroud*, 915 N.E.2d 925, 943 (Ill. App. Ct. 2009) (noting, in civil rights case, that "the majority of courts

OPPOSITION TO POST-TRIAL MOTIONS - 20
CASE NO. 2:20-cv-00410-MKD

BUDGE◎HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

across the country that have considered this issue have agreed that an award of attorneys' fees should be taken into account as part of the compensatory damages factor in the *Gore* analysis"). *See also Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 237 (3rd Cir. 2005) (holding that statutory fees are "an apt term in the *Gore/Campbell* ratio analysis"); *San Fernando Lenders, LLC v. Compass USA*, No. 2:07-cv-892, 2013 U.S. Dist. LEXIS 108183, at *77-78 (D. Nev. July 30, 2013) (same). Doing so here would reduce the ratio to about 6:1. *See* ECF 256 (motion for fees and costs). Either way, the ratio is squarely within constitutional limits.

### (c)    Comparable Civil Penalties Do Not Shed Light on the *Gore* Analysis.

The third guidepost looks to whether there are civil penalties or fines authorized for similar conduct. Here, the Civil Rights of Institutionalized Persons Act authorizes the Department of Justice to pursue equitable relief against correctional institutions that violate the civil rights of people in their custody, but it does not authorize monetary penalties. *See* 42 U.S.C. § 1997, *et seq.* Therefore, "this guidepost cannot shed any light on the reasonableness and proportionality of the punitive damages." *Allen*, 2014 U.S. Dist. LEXIS 152066, at *110.

NaphCare points to no comparable civil penalty to mitigate the award. Instead, it asks to look at gross awards in other cases. The Supreme Court discourages this:

> Such awards are the product of numerous, and sometimes intangible, factors; a jury imposing a punitive damages award must make a qualitative assessment based on a host of facts and circumstances

BUDGE✦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

1    unique to the particular case before it. Because no two cases are truly
2    identical, meaningful comparisons of such awards are difficult to make.

*Txo Prod. Corp v.* Alliance *Res. Corp.*, 509 U.S. 443, 458 (1993). NaphCare fails to

show that this factor supports remittitur here.

### 3.    NaphCare Cannot Rely on New Evidence to Support Its Motions.

In deciding the above issues, the Court should ignore the new evidence

submitted with NaphCare's post-trial motions. In support of its punitive damages

argument, NaphCare has submitted a new declaration from its CFO (ECF 290) to

complain that the punitive damages impose an undue financial burden, writing at

length about the financial impact on the company. ECF 286 at 36. The glaring defect

in this post-trial effort is that NaphCare put none of this evidence before the jury.

The rule is clear: "The duty . . . is on the defendant to present evidence before the

jury renders its verdict . . . of [its] limited resources if [it] wishes that factor to be

weighed in the calculation of punitive damages." *Provost v. City of Newburgh*, 262

F.3d 146, 163 (2nd Cir. 2001). *See also Schaub v. VonWald*, 638 F.3d 905, 926 n.14

(8th Cir. 2011). In *Thomas v. Cannon*, 289 F. Supp. 3d 1182, 1211 (W.D. Wash.

2018), the Western District of Washington likewise held, "Defendants cannot argue

their inability to pay [punitive damages] at this stage when no evidence on the matter

was introduced during trial. The Court will not second guess the jury by considering

evidence that the jury did not have before it." Nor would it be fair to Plaintiff to

permit new post-trial evidence that has not been subject to any cross-examination.

The Court should disregard Ms. Young's declaration and the arguments based on it.

**C.    NaphCare's Motion for a New Trial Should Also Be Denied.**

At trial, NaphCare focused on defending the reasonableness of Nurse Gubitz's decision-making, arguing that she fully met the standard of care. *See, e.g.,* Tr. 911:3-18. Now NaphCare wants to retry the case so it can try the opposite approach by arguing that "the failure to treat Ms. Hill resulted from the negligent actions of Nurse Gubitz, and not from 'Medical Watch' itself." ECF 286 at 27:20-28:1. There is no basis for a new trial. The Ninth Circuit has emphasized that a new trial should be granted "only . . . in exceptional circumstances in which the evidence weighs heavily against the verdict." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012). And it has cautioned that a court should not substitute its "evaluations for those of the jurors" (*Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003)) and "may not grant a new trial simply because it would have arrived at a different verdict" (*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001)). Applying these legal standards here, NaphCare's request for a new trial, including its arguments based on unobjected-to Instruction 31 and the Court's decision not to bifurcate, should be denied.

**1.    Giving Jury Instruction 31 Was Not Plain Error and Does Not Entitle NaphCare to a New Trial.**

Although NaphCare seeks a new trial based on instructional error, it concedes that it never objected to the Court giving Instruction 31. ECF 286 at 17. "In the Ninth

Circuit, if a party does not object properly to jury instructions at trial, the instructions are reviewable only for plain error." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2017 U.S. Dist. LEXIS 119149, at \*74 (N.D. Cal. July 28, 2017) (citing *C.B. v. City of Sonora*, 769 F.3d 1005, 1016-19 (9th Cir. 2014)).

The plain-error standard is exceedingly high and difficult to satisfy. "Plain error is a highly prejudicial error affecting substantial rights, and is found only in exceptional circumstances." *United States v. Ancheta*, 38 F.3d 1114, 1116 (9th Cir. 1994) (citation omitted). *See also Teixeira v. Town of Coventry*, 882 F.3d 13, 18 (1st Cir. 2018) ("[T]he plain error hurdle is high. Nowhere is this hurdle higher than in instances in which an appellant relies on a claim of instructional error; in such instances, reversals are hen's-teeth rare.") (internal quotation marks and citations omitted) (quoted in *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1074 (9th Cir. 2020)). "[W]hen reviewing civil jury instructions for plain error, [courts] must consider . . . whether (1) there was an error; (2) the error was obvious; and (3) the error affected substantial rights." *C.B.*, 769 F.3d at 1018.  In conducting this analysis, the Court may also consider the cost of correcting an error. *C.B.*, 769 F.3d at 1018. Here, that would mean repeating an entire trial.

NaphCare's motion falls far short of establishing that Instruction 31 was so obviously wrong that it constitutes plain error justifying a new trial. There are two distinct paths to *Monell* liability: an "indirect path," which requires a showing of

deliberate indifference, and a "direct path," which does not. *See Mann v. Cty. of San Diego*, No. 3:11-cv-0708, 2016 U.S. Dist. LEXIS 80035, at *22-25 (S.D. Cal. June 17, 2016) (citing, *inter alia*, *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1142 (9th Cir. 2012); *Long v. Cty. of L.A.*, 442 F.3d 1178 (9th Cir. 2006)), *rev'd in part on other grounds*, 907 F.3d 1154 (9th Cir. 2018). The indirect path involves claims that a municipal entity, through its omissions (such as a failure to adequately train staff), is responsible for the constitutional violation. *See Mann*, 2016 U.S. Dist. LEXIS 80035, at *23. In such a case, the plaintiff must show that "the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." *Id*. (quoting *Gibson*, 290 F.3d at 1186). The direct path, on the other hand, involves affirmative policies (including persistent, widespread practices), which can be found unconstitutional without a showing of deliberate indifference. *See Valenzuela v. City of Anaheim*, Nos. SACV 17-00278, SACV 17-02094, 2020 U.S. Dist. LEXIS 257698, at *29 n.2 (C.D. Cal. March 11, 2020) (denying motion for new trial, in part because defendants "confuse the requirements for finding municipal liability for failure to train with liability for an unlawful official policy, practice, or custom," noting that "[d]eliberate indifference is an element for failure to train, but there is no such requirement for an unlawful policy"). Plaintiff's *Monell* claim in this case involved NaphCare's affirmative practice of relying on medically

untrained jail guards to monitor patients needing medical monitoring by medical professionals. Thus, it did not require a showing of deliberate indifference.

Even if NaphCare could show that Instruction 31 constituted error, it cannot show the error was *obvious*, as it must under the plain-error standard. *C.B.*, 769 F.3d at 1018. While NaphCare claims that *Castro* supports its argument that deliberate indifference is required here (ECF 286 at 16), *Castro* did not explicitly overrule the two-path approach of *Gibson*, *Tsao,* and *Long*, and district courts continue to apply the two-path analysis. *See, e.g.*, *Dees v. Cty. of San Diego*, No. 3:14-cv-0189, 2017 U.S. Dist. LEXIS 6280, at *4 (S.D. Cal. Jan. 17, 2017) ("The focus here is on the County's policy, not its omissions or inaction. Therefore, it is clear that deliberate indifference is not a required element for the type of *Monell* claim that Plaintiffs bring."); *Valenzuela*, 2020 U.S. Dist. LEXIS 257698, at *29 n.2.

Additionally, Ninth Circuit Model Civil Instruction 9.5, which was updated earlier this year and on which Instruction 31 was based, does not include a deliberate indifference element for *Monell* claims based on policies, customs, and practices. (In contrast, Model Instruction 9.8, which applies to *Monell* claims based on inaction or failure to train, *does* include that element.) NaphCare has not cited (and Plaintiff is not aware of) a single case invalidating Model Instruction 9.5 or questioning its accuracy. If failing to include deliberate indifference as an element of a *Monell* claim based on a custom or practice were an obvious omission, the Ninth Circuit Jury

Instructions Committee would have recognized it and modified Model Instruction 9.5 accordingly. And if the lack of a deliberate indifference element in the model instruction was obvious, NaphCare's lawyers would have objected in response to at least one of the *multiple* opportunities provided by the Court. *See* Tr. at 798:11-14 (no objection to draft § 1983 instructions); *id.* at 800:10-13 (no objection to Model Instruction 9.5 being used as basis for *Monell* instruction); *id.* at 827:19-828:17 (no objection to final version of Instruction 31); *id.* at 844:3-17 (no further issue regarding jury instructions). Indeed, NaphCare itself originally proposed an instruction based on Model Instruction 9.5 without any "deliberate indifference" element. ECF 175 at 25. On this record, NaphCare cannot show that relying on the model *Monell* instruction was a plain and obvious error.

Not only does NaphCare fail to establish obvious error, but it also fails to show that relying on Model Instruction 9.5 affected a substantial right. "In the context of plain error review, for an error to affect substantial rights, in most cases it means that the error must have been prejudicial." *United States v. Alghazouli*, 517 F.3d 1179, 1190 (9th Cir. 2008) (internal quotation marks and citation omitted). "For an error to be prejudicial, there must be reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Jaimez*, No. 19-50253, 2022 U.S. App. LEXIS 23504, at *25 (9th Cir. Aug. 23, 2022) (internal quotation marks and citation omitted); *accord United States v. Span*,

970 F.2d 573, 577 (9th Cir. 1992) ("Plain error arises only in exceptional circumstances . . . where it is *highly probable* that the error materially affected the verdict.") (internal quotation marks and citation omitted; emphasis added).

Even if the instruction in this case should have contained a deliberate indifference element, NaphCare cannot show a high probability that it affected the verdict. The jury awarded punitive damages against NaphCare, which required it to find that NaphCare's conduct "reflect[ed] a complete indifference to the person's safety or rights, or [that it acted] in the face of a perceived risk that its actions [would] violate a person's rights under federal law." ECF 236 at 44 (Instruction 34). It is all but certain the jury would have made a similar finding in support of *Monell* liability had it been required to do so. Hence, NaphCare cannot meet its burden to show that it is "highly probable" the verdict would have been different if the *Monell* instruction had contained a deliberate indifference element. For all of these reasons, the Court should deny NaphCare's request for a new trial based on alleged instructional error.

### 2.    The Court's Bifurcation Decision Does Not Warrant a New Trial.

As this Court previously recognized, "Bifurcation is a case-specific inquiry, and district courts have broad discretion over whether to bifurcate. The moving party carries the burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." ECF 147 at 3 (internal quotation marks and citations omitted). The Ninth Circuit allows "broad discretion in declining

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA  98102
TELEPHONE:  (206) 624-3060

to bifurcate [a] *Monell* claim." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 807 (9th Cir. 2018). The Court's bifurcation decision does not warrant a new trial.

According to NaphCare, once the jury learned that the County was liable, it couldn't help but assume NaphCare had also done something wrong. ECF 286 at 29. But NaphCare offers no argument to support that bald assertion. The Court specifically instructed the jury, "The Court's ruling on liability does not apply to NaphCare," and "[y]ou should decide the case as to each defendant separately." ECF 236 at 4, 28. NaphCare now complains that the Court's limiting instruction was "insufficient" (ECF 286 at 31), but it ignores the fact that its own proposed limiting language was virtually identical to the language the Court ultimately used. *Compare* ECF 236 at 3-4 *with* ECF 175 at 38 (last paragraph). The liability instructions required jurors to focus on NaphCare and required proof of the specific elements necessary to hold it separately liable. *See* ECF 236 at 31, 39-41. In order to show unfair prejudice, NaphCare would have to show that the jurors were so overcome by this notion of "guilt by association" that they ignored the instructions, violated their oath, and held it liable without finding the elements of each claim satisfied. NaphCare has offered no basis to believe that that is what occurred. Nor has it overcome the well-established rule that "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citation omitted). Thus, even if NaphCare could establish error, it cannot establish prejudice.

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

NaphCare also complains that because the County's liability was predetermined, "Plaintiff's attorneys were free to aim their full firepower at NaphCare." ECF 286 at 30. However, NaphCare only sought to bifurcate the liability and damages stages of the trial. ECF 115. Even if the Court had granted its request, that would not have prevented Plaintiff from arguing that NaphCare was the more culpable party that should be responsible for the lion's share of Plaintiff's damages.

To the extent NaphCare now suggests that statements in Plaintiff's opening and closing argument were prejudicial, it made no objection at trial and requested no instructional remedy. Moreover, it fails to acknowledge the fact that counsel's closing argument (relating to whether NaphCare should "share in the responsibility") almost exactly tracked the very verdict form to which NaphCare explicitly agreed. *See* ECF 240 at 3 ("If you answered "YES" to Question 1 and/or 2 above, then NaphCare will share the responsibility with Spokane County" for compensatory damages.) Tr. 829 (NaphCare counsel indicating no objection to verdict form).

In short, NaphCare has not shown any procedural error by this Court—either in declining to bifurcate the trial or in instructing the jury—that would warrant a new trial.

### III.    CONCLUSION

NaphCare's post-trial motions should be denied in their entirety.

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

1

Respectfully submitted this 14th day of September, 2022.

2

3
*/s/ Edwin S. Budge*_____
Edwin S. Budge, WSBA #24182
Hank Balson, WSBA #29250
Erik J. Heipt, WSBA #28113
Budge & Heipt, PLLC
808 East Roy Street
Seattle, WA 98102
hank@budgeandheipt.com
ed@budgeandheipt.com
erik@budgeandheipt.com
(206) 624-3060
Attorneys for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

BUDGE❦HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060

# CERTIFICATE OF SERVICE

The undersigned certifies that on the date stated below this document was filed with the Clerk of the Court for the United States District Court for the Eastern District of Washington, via the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Ketia B. Wick, WSBA #27219
Erin E. Ehlert, WSBA #26340
Fain Anderson VanDerhoef Rosendahl
701 Fifth Avenue, Suite 4750
Seattle, WA 98104
ketia@favros.com
erine@favros.com
Attorneys for Defendant NaphCare, Inc.

John E. Justice, WSBA #23042
Law, Lyman, Daniel, Kamerrer &
Bogdanovich, P.S.
PO Box 11880
Olympia WA  98508
jjustice@lldkb.com
(360) 754-3480
Attorney for Defendant Spokane
County

Christopher F. Quirk, *pro hac vice*
Edward J. McNelis, III, *pro hac vice*
Sands Anderson, PC
1111 East Main St.
PO Box 1998
Richmond VA 23218
cquirk@sandsanderson.com
emcnelis@sandsanderson.com
Attorneys for Defendant NaphCare, Inc.

David A. Perez, WSA #43959
Eric B. Wolff, WSBA #43047
Michelle L. Maley, WSBA #51318
Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
DPerez@perkinscoie.com
EWolff@perkinscoie.com
Mmaley@perkinscoie.com
Attorneys for Defendant NaphCare, Inc.

Dated this 14th day of September, 2022.

*/s/ Edwin S. Budge*
Edwin S. Budge

OPPOSITION TO POST-TRIAL MOTIONS - 32
CASE NO. 2:20-cv-00410-MKD

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
808 E. Roy St.
SEATTLE, WA 98102
TELEPHONE: (206) 624-3060